HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KEITH HUNTER, an individual, and
ELAINE HUNTER, an individual,

            Plaintiffs,

v.

BANK OF AMERICA, N.A.;
SPECIALIZED LOAN
SERVICING, LLC, a Delaware
limited liability company;
NATIONSTAR MORTGAGE, LLC,
a Delaware limited liability
company; QUALITY LOAN
SERVICE CORPORATION OF
WASHINGTON, a Washington
corporation;
HSBC BANK USA, N.A., as Trustee
for Merrill Lynch Mortgage
Investors, Inc., Mortgage Pass-
Through Certificates, MANA Series
2007-OAR2;
JOHN DOES NO. 1 - 10,

            Defendants.

CASE NO. C16-1718 RAJ

ORDER

ORDER- 1

This matter comes before the Court on Defendants' Motions to Dismiss. Dkt. ## 5, 20. Plaintiffs oppose the motions. Dkt. ## 16, 21.

## I.  BACKGROUND[1]

Elaine and Donald Hunter signed a promissory note to Countrywide that is secured by a deed of trust concerning the property located at 7022 NE 170th Street in Kenmore, Washington. Dkt. # 1-4 (Amended Complaint) at ¶¶ 1-2. Defendant Bank of America, N.A. ("BANA") acquired Countrywide and began servicing the Hunters' loan. *Id.* at ¶ 21. The Hunters made consistent monthly loan payments to BANA.

Sometime in 2011, BANA began returning the Hunters' mortgage payments without crediting their account. *Id.* at ¶ 25. The Hunters contacted BANA on several occasions to resolve the issue. *Id.* at ¶¶ 28-34. BANA did not give Hunters any clear answers or instructions, and so the Hunters continued to send their payments to BANA. Nevertheless, BANA continued to return the checks without crediting the account. *Id.*

Eventually, the Hunters arranged a meeting with Paul Mills, a vice president and mortgage specialist at BANA. *Id.* at ¶ 35. Mr. Mills advised the Hunters to apply for a loan modification. *Id.* at ¶ 41. Mr. Mills was so confident that BANA would modify the loan that he told the Hunters not to "bother [sending their mortgage payments], you have a new mortgage coming, it's on the underwriter's desk." *Id.* at ¶ 55. When the Hunters attempted to find out why BANA had been returning the payments, Mr. Mills brushed off the issue as "one department not talking to the other department." *Id.* at ¶ 43. Ultimately, BANA sold the note and did not modify the Hunters' loan. *Id.* at ¶¶ 60-61. BANA then characterized the loan as in default. *Id.* at ¶ 63. The Hunters continued to submit monthly mortgage payments in an attempt to pay off the loan. *Id.* at ¶ 64.

---

[1] The Court describes the facts as Plaintiffs allege them in their Amended Complaint, making no comment on the veracity of these allegations.

Nationstar Mortgage, LLC ("Nationstar") began servicing the loan in 2014. *Id.* at ¶ 83. Nationstar stated that it would consider modifying the Hunters' loan. *Id.* at ¶ 85. However, after the parties participated in a foreclosure mediation, Nationstar declined to modify the loan. *Id.* at ¶¶ 92-98. In early 2015, Quality Loan Servicing Corporation of Washington ("QLS") began to initiate foreclosure, identifying HSBC Bank USA N.A. ("HSBC") as the beneficiary. *Id.* at ¶¶ 88, 110. Foreclosure proceedings are currently stayed.

The Hunters filed suit in state court against BANA, Nationstar, and HSBC, among others, for violations of the Deed of Trust Act and Consumer Protection Act, intentional and/or negligent infliction of emotional distress, misrepresentation, and promissory estoppel. Defendants removed the action to this Court and now move the Court to dismiss Plaintiffs' claims.

## II. LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) permits a court to dismiss a complaint for failure to state a claim. The rule requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question. *Marder v.*

*Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). The court may also consider evidence subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## III. DISCUSSION

A. <u>Statute of Limitations on Consumer Protection Act Claims</u>

BANA claims that Plaintiffs are too late in raising their Consumer Protection Act (CPA) claim. Dkt. # 5 at 9-10; RCW 19.86.120. A party must bring a CPA claim within four years after the cause of action accrues. RCW 19.86.120 (establishing a four-year statute of limitations on CPA claims). Claims accrue "when the plaintiff has a complete and present cause of action, . . . that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (internal quotation marks and citations omitted). There are, however, times when a plaintiff will not know that her claim has accrued. In such cases, the "discovery rule" governs, which tolls the statute of limitations until a plaintiff knows or should know the essential elements of her cause of action. *Matter of Estates of Hibbard*, 826 P.2d 690, 694 (Wash. 1992); *see also Pruss v. Bank of Am. NA*, No. C13-1447 MJP, 2013 WL 5913431, at *2 (W.D. Wash. Nov. 1, 2013) ("Under [the "discovery rule"], fraud is considered discovered when, with the exercise of reasonable diligence, it could have been discovered."). The discovery rule applies to CPA claims. *Shepard v. Holmes*, 345 P.3d 786, 790 (Wash. Ct. App. 2014).

In their Amended Complaint, Plaintiffs state that the events giving rise to this lawsuit began in late 2011. Dkt. # 1-4 (Amended Complaint) at ¶ 25. Plaintiffs describe the mitigating efforts they undertook to handle the problem: Plaintiffs spoke with various representatives until finally developing a relationship with Mr. Mills, who discouraged Plaintiffs from paying the balance of their mortgage and assured them that a loan modification was forthcoming. *Id.* at ¶¶ 47, 54, 55. According to their Amended Complaint, Plaintiffs could not have known that they had a CPA claim until August 2012 when Mr. Mills abruptly dropped Plaintiffs' matter and BANA subsequently characterized the loan as in default. *Id.* at ¶¶ 60-63. Prior to this time, Plaintiffs believed

that BANA was modifying their loan, and that the returned mortgage payments were merely the result of internal miscommunications. *Id.* at ¶¶ 43, 55. These allegations, which the Court must accept as true, are sufficient to apply the discovery rule and for the Court to conclude that Plaintiffs' CPA claim is timely.

B. Consumer Protection Act Claims

A CPA claim requires proof of five elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986). "[A] claim under the Washington CPA may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *Klem v. Washington Mut. Bank*, 295 P.3d 1179, 1187 (Wash. 2013). "Failure to satisfy even one of the elements is fatal to a CPA claim." *Sorrel v. Eagle Healthcare*, 110 Wn. App. 290, 298 (2002). Parties initiating suit under the CPA may recover actual damages, costs, and reasonable attorney's fees. RCW 19.86.090.

*1. CPA Claim Against BANA*

BANA argues that Plaintiffs fail to demonstrate an unfair or deceptive practice, whether *per se* or in violation of the public interest. Though Plaintiffs do not specify statutory violations in their Amended Complaint, they do describe practices that have "the *capacity* to deceive a substantial portion of the public." *Bain v. Metro. Mortg. Grp., Inc.*, 285 P.3d 34, 50 (Wash. 2012) (internal citations omitted). By way of example, BANA returned Plaintiffs' mortgage checks without crediting Plaintiffs' account. Dkt. # 1-4 (Amended Complaint) at ¶¶ 25-34. Plaintiffs attempted on several occasions to learn the reasoning behind this practice but were met with competing and circuitous responses. *Id.* When Plaintiffs finally met with a BANA representative, they were told not to worry about the payments. *Id.* at ¶¶ 54-55. Even if the information that BANA provided to

Plaintiffs was accurate, the practice misled Plaintiffs and led to BANA characterizing Plaintiffs' loan as in default. *Id.* at ¶ 63; *see also Bain*, 285 P.3d at 50 ("Even accurate information may be deceptive 'if there is a representation, omission or practice that is likely to mislead.'") (internal citations omitted). Plaintiffs have met their burden at this stage to show an unfair or deceptive act or practice that has a clear public interest impact.

BANA argues that even if Plaintiffs can show an unfair or deceptive practice, they cannot show an injury to their business or property. BANA suggests that Plaintiffs' failure to pay led to the default. Dkt. # 5 at 12. However, Plaintiffs assert in their Amended Complaint that they attempted each month to pay the balance of the loan, and BANA's unexplained rejection of these payments led to the default. Dkt. # 1-4 (Amended Complaint) at ¶¶ 25-63. In this way, Plaintiffs sufficiently pled an unfair or deceptive act or practice leading to an injury—specifically, causing their loan to default. Moreover, Plaintiffs need not show that BANA sold the property to plausibly allege an injury under the CPA. *Frias v. Asset Foreclosure Servs., Inc.*, 334 P.3d 529, 538 (Wash. 2014) (finding that "the business and property injuries compensable under the CPA are relatively expansive."). It is enough at this stage for Plaintiffs to show that BANA mislead them into defaulting on the loan.

Accordingly, the Court **DENIES** BANA's motion to dismiss Plaintiffs' CPA claim. Plaintiffs do not oppose BANA's motion to dismiss the remaining claims. Dkt. # 17. As such, the Court **DISMISSES** Plaintiffs' remaining claims against BANA without prejudice.

*2. CPA Claim Against Nationstar*

Plaintiffs claim that Nationstar violated the CPA by declining to modify their loan without informing Plaintiffs that it never actually intended to modify the loan. Dkt. # 1-4 (Amended Complaint) at ¶¶ 98, 101, 102. Plaintiffs further claim that Nationstar violated the CPA by failing to comply with federal guidelines under the Making Homes Affordable program. *Id.* at ¶ 103. However, Plaintiffs do not address any specific facts

that lead the Court to conclude that Nationstar was unfair or deceptive. Plaintiffs' conclusory allegations that Nationstar never intended to modify the loan or failed to comply with the Making Homes Affordable Program are insufficient, even at this pleading stage. *See Bell*, 550 U.S. at 568; *Manzarek*, 519 F.3d at 1031. Because Plaintiffs cannot point to an unfair or deceptive act, this claim fails as pled against Nationstar.

*3. CPA Claim Against HSBC[2]*

Plaintiffs argue that HSBC is liable under the CPA because it violated the Deed of Trust Act (DTA) by not possessing "a hard copy of the original promissory note." Dkt. ## 1-4 (Amended Complaint) at ¶¶ 111, 21 at 14. Without the physical note, HSBC could not authorize a notice of trustee sale. *Id.* Violations of the DTA may provide a basis for a CPA claim. However, such violations do not lead to *per se* CPA claims; "such claims are governed by ordinary principles applicable to all CPA claims . . . ." *Meyer v. U.S. Bank Nat. Assn*, 530 B.R. 767, 776 (W.D. Wash. 2015), *reh'g denied*, No. 14-00297RSM, 2015 WL 3609238 (W.D. Wash. June 9, 2015). Moreover, "a technical violation of the DTA is not in itself sufficient to constitute an unfair or deceptive practice" without a showing of prejudice. *Id.* at 780. But, at this stage, the Court must defer to Plaintiffs' factual allegations in the Amended Complaint. *Sanders*, 504 F.3d at 910. As such, the Court finds that HSBC acted unfairly or deceptively when acting as the beneficiary to authorize a foreclosure sale without possessing the promissory note. Such actions rise above a mere technicality.

While they have met the first prong, Plaintiffs must also satisfy the remaining four prongs of a CPA claim to carry their burden on this allegation. *Hangman*, 719 P.2d at

---

[2] Plaintiffs argue that HSBC is liable as a third party because it contributed to the servicers' unfair or deceptive acts. Dkt. # 21 at 14. Because the Court did not find that Nationstar acted unfairly or deceptively as a servicer, it cannot find that HSBC acted this way under a third-party liability theory.

535. Plaintiffs fail to carry their burden on the injury and causation prongs. The Amended Complaint does not allege any direct injury that resulted from HSBC's alleged violation of the DTA; there is no pending foreclosure, HSBC was not a party to the loan modification discussions, and any resulting injury from the default appears to be caused by BANA. Accordingly, Plaintiffs have not met their burden to prove a CPA claim against HSBC.

The Court **GRANTS** Defendants Nationstar and HSBC's motion as to these CPA claims.

### C. Deed of Trust Act Claim

To allege a claim under the Deed of Trust Act, a plaintiff must show a completed foreclosure sale. *Frias v. Asset Foreclosure Servs., Inc.*, 334 P.3d 529, 539 (2014) (finding that there is "no independent cause of action under the DTA seeking monetary damages for alleged DTA violations absent a completed foreclosure sale."). Plaintiff has not done so. *See, generally*, Dkt. # 1-4 (Amended Complaint). Therefore, the Court **GRANTS** Defendants Nationstar and HSBC's motion with regard to this claim.

### D. Intentional and/or Negligent Infliction of Emotional Distress

Plaintiffs allege a claim for "intentional and/or negligent infliction of emotional distress" as to Defendant Nationstar. Dkt. # 1-4 (Amended Complaint) at ¶ 133. Plaintiffs must prove three elements to succeed on their claim for intentional infliction of emotional distress: "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress." *Hong Ha v. City of Liberty Lake*, No. CV-08-382-RHW2010, U.S. Dist. LEXIS 110346, *22 (E.D. Wash. 2010), citing *Kloepfel v. Bokor*, 66 P.3d 630 (Wash. 2003). A claim for intentional infliction of emotional distress requires the alleged conduct to be objectively "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*

To support their claim for intentional infliction of emotional distress, Plaintiffs broadly state that Nationstar owed certain duties pursuant to various statutes. Dkt. # 1-4 (Amended Complaint) at ¶ 133. Plaintiffs claim that the breach of these duties "goes beyond all bounds of decency and is otherwise intolerable in a civilized society." *Id.* at ¶ 135. But such conclusory statements that merely recite the elements of a claim are insufficient. *Phillips v. World Pub. Co.*, 822 F.Supp.2d 1114, 1120 (W.D. Wash. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555). As such, the Court **GRANTS** Nationstar's motion as to this claim.

E. Misrepresentation

Plaintiffs allege a claim for misrepresentation against Nationstar. Washington recognizes claims for negligent misrepresentation in foreclosure settings. *See Blair v. Nw. Tr. Servs., Inc.*, 372 P.3d 127, 138, *as amended on denial of reconsideration* (May 12, 2016), *review denied sub nom. Blair v. Nw. Tr. Servs.*, 383 P.3d 1021 (Wash. Ct. App. 2016). A negligent misrepresentation claim requires Plaintiffs to allege six elements:

> (1) the defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in his business transactions, (3) the defendant was negligent in obtaining or communicating the false information, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff damages.

*Ross v. Kirner*, 172 P.3d 701, 704 (Wash. 2007). Plaintiffs do not identify any false or misleading statements or documents supplied by Nationstar. Instead, Plaintiffs state that Nationstar requested multiple iterations of certain documentation, held a foreclosure

mediation, and ultimately declined to modify Plaintiffs' loan. Dkt. # 104 (Amended Complaint) at ¶¶ 92-98. The Court is not convinced that Nationstar's decision not to modify the loan—whether premediated or developed during the course of mediation— amounts to negligent misrepresentation. Accordingly, the Court **GRANTS** Nationstar's motion as to this claim.

### F. Promissory Estoppel

Plaintiffs allege a claim for promissory estoppel against Nationstar. To succeed on this claim, Plaintiffs must show: (1) a promise that (2) the promisor should reasonably expect to cause the promisee to change its position and (3) that does cause the promisee to change its position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise. *Kim v. Dean*, 135 P.3d 978, 983 (Wash. Ct. App. 2006).

Plaintiffs fail at the first prong. According to the Amended Complaint, Nationstar "decided that it would *consider* modifying the loan." Dkt. # 1-4 (Amended Complaint) at ¶ 85 (emphasis added). Nationstar participated in a foreclosure mediation and ultimately decided not to modify the loan. Plaintiffs have not shown that Nationstar made a promise to modify the loan, and therefore the claim for promissory estoppel fails. Accordingly, the Court **GRANTS** Nationstar's motion as to this claim.

### G. Leave to Amend

"The court should freely give leave [to amend pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). To determine whether justice so requires leave to amend, the court considers "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Exp., Inc*., 885 F.2d 531, 538 (9th Cir. 1989).

The Court **GRANTS** Plaintiffs leave to amend their CPA, outrage, misrepresentation, and promissory estoppel claims as alleged against Nationstar and

HSBC.  There is no completed foreclosure sale, making amendment to Plaintiffs' DTA claim futile.  Therefore, the Court **DENIES** Plaintiffs leave to amend this claim.

### IV. CONCLUSION

For all the foregoing reasons, the Court **GRANTS in part and DENIES in part** BANA's motion to dismiss.  Dkt. # 5.  The Court **GRANTS** Nationstar and HSBC's motion to dismiss.  Dkt. # 20.  The Court **GRANTS in part and DENIES in part** Plaintiffs' request for leave to amend.  Plaintiffs have fourteen (14) days from the date of this Order to amend their complaint as instructed above.

Dated this 25th day of May, 2017.

*Richard A. Jones*
The Honorable Richard A. Jones
United States District Judge