HONORABLE RICHARD A. JONES

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

9

KEITH HUNTER, an individual, and ELAINE
HUNTER, an individual,

No. 2:16-cv-01718-RAJ

10

Plaintiffs,

11

v.

12

BANK OF AMERICA, N.A.; NATIONSTAR
MORTGAGE LLC, a Delaware limited
liability company; HSBAC BANK USA, N.A.,
as Trustee for Merrill Lynch Mortgage
Investors, Inc., Mortgage Pass-Through
Certificates, MANA Series 2007-OAR2;
QUALITY LOAN SERVICE
CORPORATION OF WASHINGTON, a
corporation,

OPPOSITION TO MOTION TO DISMISS
THIRD AMENDED COMPLAINT BY
DEFENDANTS NATIONSTAR
MORTGAGE LLC AND HSBC BANK
USA, N.A.

**Note on Motion Calendar:**
June 22, 2018

13
14
15
16
17

Defendants.

18

## I.    INTRODUCTION

19

The Plaintiffs, Keith and Elaine Hunter brought suit against three Defendants: Bank of

20

America, Nationstar, and HSBC.  The suit alleges that the Defendants committed unfair and

21

deceptive acts during the course of servicing the mortgage and initiating foreclosure on the

22

Hunters' home in Kenmore.  After the Hunters filed their Third Amended Complaint, HSBC and

23

Nationstar moved to dismiss under Rule 12(b)(6).  The Court should deny this motion for the

24

same reasons the Court denied Bank of America's motion more than a year ago: the Hunters'

25

complaint alleges sufficient facts to establish plausible, valid claims against HSBC and

26

Nationstar.

27

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

HSBC is the "beneficiary" of the Hunters' promissory note. Nationstar, like the servicers preceding it, including Bank of America, is HSBC's agent. Nationstar initiated a foreclosure against the Hunters based on incorrect calculations of the amount owed. It relied on an excessive interest rate that was nearly double the actual interest rate set forth in the adjustable rate rider attached to the Hunters' promissory note. This is a clear breach of the promissory note and is evident on the face of documents the Hunters attached to the complaint. However, the Hunters' claims are not simply that Nationstar failed to exercise diligence in calculating the amounts owed, but that it actively obstructed the Hunters' efforts to pursue loss mitigation.

During the course of servicing, Nationstar violated RESPA, Regulation X, and Washington's Deed of Trust Act. These laws are designed to ensure homeowners like the Hunters have reasonable opportunities to avoid foreclosure. But Nationstar deprived the Hunters of pursuing these processes by withholding information from mediation and ignoring a loan modification application when servicing transferred from a previous servicer. This delayed the prospect of relief, causing interest to accumulate and compound at an excessive rate, and ultimately forced the Hunters to incur significant costs to prevent a wrongful foreclosure by depositing payments into the Court's registry. These payments, which now total close to $70,000, do not reduce the principal or interest owed on the loan.

The Hunters are not the first to allege that Nationstar's servicing practices caused harm to Washington homeowners. The Washington Supreme Court recently determined that Nationstar's practice of locking borrowers out of their homes before a foreclosure sale violated state law. *See Jordan v. Nationstar Mortg., LLC*, 185 Wn.2d 876 (2016). Servicing abuses occurred here as well. And although Defendant HSBC, as the alleged beneficiary of the Hunters' loan, has the 'power' to remedy its servicers' errors, HSBC has done nothing to remedy misconduct here. The Court should deny the motion to dismiss brought by Nationstar and HSBC.

OPPOSITION TO MOTION TO DISMISS THIRD
AMENDED COMPLAINT- 2
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## II.    ALLEGATIONS OF FACT

**A.    HSBC is the "beneficiary" of the Hunters' loan and the party with the "power" to modify it**

Plaintiff Elaine Hunter is presently 92 years old.  In 1996, along with her now deceased husband Donald, Elaine purchased a home in Kenmore at 7022 Northeast 170th Street.  The property was purchased subject to a promissory note and secured by a residential real estate mortgage.  The Hunters purchased the home for themselves and their son, Plaintiff Keith Hunter.  Keith Hunter was given rights to the property in 2003.  Dkt. No. 51 (Third Amended Complaint or "TAC") at ¶¶ 10-18.

After the purchase, the Hunters assumed responsibility for the home.  They maintained it, made improvements to it, and made sure mortgage payments were sent every month.  Because the Hunters made regular payments on the mortgage, they were able to refinance the property on several occasions.  The most recent occurred in 2006 with Countrywide.  Unfortunately, the product Countrywide sold them had all the hallmarks of a predatory loan.  The initial interest rate was set at 7.25 percent for five years, at most, and then subject to an annual adjustment. Payments during the first five years went only to a portion of interest owed and payments on the remaining interest and all principal were deferred until the loan ballooned to 115 percent or was recast after the initial five years, whatever came first.  TAC at ¶¶ 19-30.

Within a few months of origination, the loan was bundled with a pool of residential mortgages, including approximately 63 from Washington, converted to a mortgage-backed security, and sold on the secondary market to a trust overseen by Defendant HSBC.

HSBC is paid to oversee the trust.  The Hunters allege that HSBC was assigned Countrywide's interest, rights, and responsibilities under the Hunters' note.  This is evident on foreclosure documents, which identify HSBC as the "beneficiary" of the Hunters' loan.[1]  The "beneficiary" to a home loan in Washington is significant.  TAC at ¶¶ 31-42.  As the Washington

---

[1] Declaration of Brendan W. Donckers at **Ex. 1** (Notice of Foreclosure stating the obligation secured by the Hunters' deed of trust "is currently held…by HSBC…the current beneficiary").  *See* TAC at ¶207 (alleging HSBC was identified in notices of trustee's sale as the beneficiary).  The Court may take judicial notice of documents referenced in the complaint.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

OPPOSITION TO MOTION TO DISMISS THIRD
AMENDED COMPLAINT- 3
(No. 2:16-cv-01718-RAJ)

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Supreme Court has observed, the beneficiary is the "holder" of the instrument evidencing obligations secured by the deed of trust and the party with "power" to reach resolution in a dispute, modify the loan, and otherwise avoid foreclosure.[2]  As the beneficiary under Washington law, HSBC assumed ultimate responsibility for the Hunters loan, including servicing it, and approving any decisions regarding a modification and/or foreclosure.  HSBC, however, abdicated these responsibilities.  It relied instead on third-party servicing agents like Defendants Bank of America and Nationstar who were unable to perform the basic duties required of them.

**B.      Bank of America miscalculates amounts owed, causes the loan to default, and does nothing to correct a problem of its own creation**

Defendant Bank of America ("BANA") began servicing the Hunters' loan in 2008.  The Hunters kept the loan current until late 2011, when BANA began refusing to credit the Hunters' mortgage payments.  Even though the Hunters were sending BANA mortgage payments in the particular amount invoiced on their payment coupons, BANA returned their payments and claimed the Hunters had defaulted.  When pressed, BANA could not explain what was going on. For months, and into the middle of 2012, the Hunters tried paying their mortgage in the amounts they were invoiced.  Each of these payments were returned to them.  Eventually, the Hunters were connected with a vice president and mortgage specialist, Paul Mills.  He just told the Hunters not to worry and encouraged them to apply for a loan modification.  They did so.  TAC at ¶¶ 51-65.

While their application was pending, the Hunters received notice that they were eligible to benefit from a settlement BANA had entered into with the Department of Justice.  The program would provide the Hunters with a significant principal and interest reduction as well as a modification to the payment terms.  Paul Mills assured the Hunters that a "new mortgage was coming," but it never did.  While the Hunters were waiting on a decision, loan servicing suddenly transferred.  Paul Mills never explained what internal actions or omissions undertaken by BANA had led to its refusal to accept mortgage payments and send the Hunters into default.  Mills did

---

[2] RCW 61.24.005(2); *Brown v. Dep't of Commerce*, 184 Wn.2d 509, 536 (2015); *Bain v. Metropolitan Mortgage Group, Inc.*, 175 Wn.2d 83, 103 (2012) (beneficiary is the party that has "power" to reach a resolution and avoid foreclosure).

not acknowledge, and may not have been aware, that BANA had failed to adjust the interest rate on the loan as the note required.  He just told the Hunters they would need to talk to the new servicer and that there was nothing more he or BANA could do.  The Hunters were stunned. TAC at ¶¶ 89-124.

Third-party Specialized Loan Servicing ("SLS") began servicing the loan in late 2012. SLS required the Hunters to submit a new loan modification application.  They did.  Following a protracted review process, SLS finally told the Hunters that the application was complete, had been reviewed, and that it would modify their loan.  But again, before an agreement could be executed, the Hunters were told that loan servicing would be transferred elsewhere.  TAC at ¶¶ 139-43.

**C.    Nationstar ignores a loan application submitted to the previous servicer, conducts no diligence in calculating amounts owed, withholds material information from the Hunters at FFA mediation, and initiates foreclosure**

Nationstar began servicing the property in April 2014.  Although it inherited BANA's accounting errors, Nationstar carried those errors forward and then compounded them by doing nothing to facilitate resolution.   For instance, Nationstar did not review the completed loan modification application that the Hunters submitted to SLS, the previous servicer.  It did not advise the Hunters whether their application was complete or whether it needed more information than what had been submitted to SLS.  Nationstar did not even acknowledge that it had received anything from SLS relating to the Hunters' application.  It simply ignored that BANA had wrongly caused the Hunters to default, that they had been trying, for two years, to remedy the default, and instead, required the Hunters to start over.  This resulted in two *more* years of inaction.  TAC at ¶¶ 149-56.

As discussed in detail below, Nationstar's refusal to review the loan application submitted to SLS violates federal law.[3]  This was not a mere oversight; the Hunters alleged that Nationstar had failed to adopt and implement policies and procedures that would ensure its employees

---

[3] RESPA, 12 U.S.C. §§ 2601 et seq. and Regulation X, 12 C.F.R. §§ 1024.30-.41.  *Id.* at ¶ 159.

**BRESKIN** | **JOHNSON** | **TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1   facilitated a smooth transfer of servicing.  Its failure to adopt and implement policies to ensure a

2   smooth transfer of servicing also violates federal law.[4]

3          After demanding the Hunters submit a new loan modification application, Nationstar

4   delayed processing it.  It is unclear whether Nationstar, at the time, knew that it had calculated

5   amounts owed based on an excessive interest rate, but it is clear from its own documents that this

6   was the case.  For instance, a notice of default was sent to the Hunters in June 2015.  The notice

7   reflected incorrect calculations regarding the amount owed for principal, interest, fees, and

8   charges.  It relied on a 7.25 percent interest rate (even though the rate in effect at the time was

9   2.875 percent) and imposed excessive fees.  TAC at ¶¶ 30, 145-48.  Reinstatement quotes and

10  monthly mortgage statements sent to the Hunters show that Nationstar was utilizing an excessive

11  rate on the loan of 7.25 percent, not the rate of 2.875 percent that was in effect at the time.  *See*

12  TAC at ¶¶ 169-175 and **Ex. C** to TAC at p. 1 (identifying an interest rate of "7.25%").

13          Nationstar delayed a decision on the Hunters' loan modification application until 2016.

14  That April, the parties participated in mediation under Washington's Foreclosure Fairness Act

15  ("FFA").  To prepare for FFA mediation, the Hunters submitted financial records and related

16  information showing that they qualified for a loan modification based on a net present value

17  ("NPV") analysis.  TAC at ¶¶ 176-85.  But Nationstar ignored the Hunters' analysis and refused

18  to modify the loan.  It relied on its own incorrect calculations of the amount owed, including the

19  7.25 percent interest rate that was nearly double the interest rate called for under the note at the

20  time.  TAC at ¶¶ 186, 190 and **Ex. D** to TAC at p. 1 (stating "Current Note Rate" of "7.2500%").

21          Although borrowers must be told "with specificity" which loss mitigation options are

22  available to them, Nationstar did not do so.  Nationstar specifically omitted discussion of a

23  program the beneficiary, HSBC, had made available to other borrowers.  For instance, HSBC's

24  Principal Write-Down Modification program ("PWD") was available at the time and would have

25  benefitted the Hunters by writing off principal, reducing the interest rate to a 2% floor, and

26  extending the loan life up to 480 months.  But Nationstar did not evaluate the Hunters under the

27  ---

[4] *Id.* at ¶¶ 157-59 (citing RESPA and Regulation X).

OPPOSITION TO MOTION TO DISMISS THIRD
AMENDED COMPLAINT- 6
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

PWD program or even discuss it with them.  No other modification programs were discussed.  And although Washington's Deed of Trust Act requires a "beneficiary" to participate in mediation, HSBC did not participate in any way.  TAC at ¶¶ 182, 191-99.

After FFA mediation, a foreclosure sale was set for October 14, 2016.  Notice of the trustee's sale was issued in June 2016.  The notice of sale, like the notice of default, relied on incorrect calculations about the amounts owed and interest rate in effect at the time.  Notice was sent even though the beneficiary, HSBC, did not possess a hard copy of the original promissory note.  TAC at ¶¶ 205-210.

**D.      Even after identifying issues with Nationstar's accounting practices, Nationstar continued imposing excessive interest on the loan, a clear breach of the terms of the promissory note**

After the notice of trustee's sale was issued, the Hunters' obtained counsel.  The foreclosure trustee, Defendant QLS, agreed to postpone the foreclosure sale.  The sale was later enjoined subject to a December 5, 2016 order from the Court that requires the Hunters to make monthly payments into the Court's registry of $3,226.72.  *See* Dkt. Nos. 15 and 18.  Since entry of the order, the Hunters have made regular payments into the Court's registry.  TAC at ¶ 216.  As of the date of this pleading, the Hunters have paid close to $70,000 into the registry.

Under the terms of the Hunters' note, the loan would have been "recast" no later than February of 2017.  Once recast, the monthly mortgage statements would have reflected an adjusted interest rate and payment amount that included both interest and principal.  But Nationstar did not recast the loan.  It simply continued imposing excessive interest, fees, and charges to calculate the amounts owed.  TAC at ¶¶ 217-223 and **Ex. E** at p. 1 (identifying interest rate of "7.250%").  These actions continued even *after* Nationstar was told by the Hunters' counsel and expert that the interest rate was wrong.  Dkt. No. 49 at ¶6.[5]  Nationstar refused to change even the appearance of the Hunters' mortgage statements until *after* the Hunters filed a

---

[5] The Court may take judicial notice of publicly available documents.  *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064, n.7 (9th Cir. 2008) (allowing judicial notice of publicly available financial documents).

motion with this Court raising issue with the practice.  *Id*. at **Ex. 1** (mortgage statement dated 2/20/18 showing an interest rate of 4.25 percent).

## III.   ARGUMENT

### A.   Standard of review

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be denied where the complaint states a "plausible" claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible when there is factual content that allows the Court to draw a reasonable inference that the defendant is liable for misconduct.  *Id*.  Plausibility does not mean probability, it only "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*. (internal citation omitted).  Detailed factual allegations are not necessary but the standard demands more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id*. (internal citations omitted).

Factual allegations in the complaint are taken as true.  *Iqbal*, 556 U.S. at 678.  Where a claim has been stated, it may be supported by any set of facts, including hypothetical facts, consistent with the allegations in the complaint.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007) (internal citations omitted).

The Hunters' complaint is not "unadorned."  It includes more than 227 paragraphs of factual allegations and four separate causes of action.  *See* TAC at ¶¶ 1-290.  Attached to the complaint are five exhibits, several of which show a breach of the terms of the Hunters' promissory note on their face.  *Id*. at **Ex. A** through **Ex. E**.  The facts alleged allow the Court to infer, with more than a "sheer possibility," that Nationstar failed to properly service Hunters' loan and that HSBC, as the beneficiary, is liable for the misconduct of its servicing agents (Nationstar and BANA).

### B.   The allegations are sufficient to establish unfair and deceptive practices that caused injury to the Hunters under the CPA

A plaintiff alleging a CPA claim must allege facts to support five elements: (1) the defendant committed an unfair or deceptive act or practice; (2) the act or practice occurred in trade or commerce; (3) there was an effect on the public interest; (4) the plaintiff(s) suffered

OPPOSITION TO MOTION TO DISMISS THIRD
AMENDED COMPLAINT- 8
(No. 2:16-cv-01718-RAJ)

**BRESKIN | JOHNSON | TOWNSEND** PLLC
**1000 Second Avenue, Suite 3670**
**Seattle, Washington 98104  Tel: 206-652-8660**

injury in business or property; and (5) the injury was proximately caused by the defendant's

conduct.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co*., 105 Wn.2d 778, 785

(1986).  The application of the CPA to conduct relating to mortgage servicing and the nonjudicial

foreclosure process is well established.  *See Lyons v. U.S. Bank Nat'l Ass'n*, 181 Wn.2d 775, 785

(2014) (citing cases).  The CPA is to be "liberally construed" to further its purposes.  *Id*. at 785 at

n. 3 (*citing* RCW 19.86.920).

The Defendants motion challenges only whether the Hunters were injured by an unfair

and deceptive practice.  *See* Dkt. No. 56 ("Motion") at 5-10 (elements 1, 4, and 5).

1. <u>Unfair and deceptive practices under the CPA</u>

It is "impossible" to frame definitions which embrace "*all* unfair practices."  *Panag v.*

*Famers Ins. Co. of Wash*., 166 Wn.2d 27, 48 (2009) (internal citation omitted) (emphasis added).

Determining whether an act or practice is unfair depends on "the facts and circumstances in

specific cases."  *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 786-87 (2013).  A practice may be

unfair if it violates a statute, regulation, or is otherwise "within at least the penumbra of some

common-law, statutory, or other established concept of unfairness[.]"  *Magney v. Lincoln Mut.*

*Sav. Bank*, 34 Wn. App. 45, 57 (1983) (cited with approval in *Klem*, 176 Wn.2d at 786) *see also*

*Mellon v. Reg'l Tr. Servs. Corp*., 182 Wn. App. 476, 490 (2014) (a practice is unfair if it "offends

public policy as established by 'statutes [or] the common law' or is 'unethical, oppressive, or

unscrupulous, among other things'") (internal citation omitted).

A violation of laws regulating the mortgage industry, including the Real Estate Settlement

Procedures Act, the Truth in Lending Act, and Washington's Deed of Trust Act support a CPA

claim.  *See Anderson v. Wells Fargo Home Mortgage, Inc*., 259 F.Supp.2d 1143 (W.D.Wash.

2003); *Mellon v. Reg'l Tr. Servs. Corp*., 182 Wn. App. 476 (2014).  But an "unfair" or

"deceptive" act need not violate a statute or other law.  False or misleading leading statements are

also unfair and deceptive under the CPA.  *See State v. Heckel*, 143 Wn.2d 824 (2001); *Valasco v.*

*Discovery Mortgage Co*., 2015 Wash. App. LEXIS 773 (April 14, 2015); *Walker v. Quality Loan*

*Serv. Corp*., 176 Wn. App. 294, 318 (2013).  Neither intent to deceive nor actual deception is

OPPOSITION TO MOTION TO DISMISS THIRD
AMENDED COMPLAINT- 9
(No. 2:16-cv-01718-RAJ)

**BRESKIN | JOHNSON | TOWNSEND** PLLC
**1000 Second Avenue, Suite 3670**
**Seattle, Washington 98104  Tel: 206-652-8660**

required to prove a deceptive act.  *Bain v. Metro. Mortgage Group Inc.*, 175 Wn.2d 83, 115

(2012).  Accurate information may be deceptive if a representation, omission, or practice is likely

to mislead.  *Id.*

2. The injury element of a CPA claim

Injury under the CPA is established where a plaintiff's property interest or money is

diminished because of the unlawful conduct.  *Panag*, 166 Wn.2d at 58-59.  Injury is incurred

even if expenses are minimal.  *Id.*  Injury to business or property is an expansive term.  *Frias v.*

*Asset Foreclosure Servs., Inc.*, 181 Wn.2d 412, 431. (2014).  For instance, injury may include

pecuniary loss occasioned by inconvenience, including out-of-pocket expenses or loss of business

profits and income incurred as a result of investigating and/or responding to an unfair or

deceptive act.  *Panag* at 60-64 (internal citations omitted).  Illegal fees added to a debt are injury.

*Frias* at 432.  Injury may only be minimal and temporary.  *Id.* at 431.

Monetary damages need not be proved to establish injury either.  Unquantifiable damages

may suffice.  For instance, injury can be based on an unlawful collection practice even if there is

no dispute as to the validity of an underlying debt or injury can be based on the allegation that an

unfair or deceptive act cut short a homeowner's opportunity to close on a home with a private

purchaser instead of selling it for less through a foreclosure.  *Klem*, 176 Wn.2d at 795.  Injury can

also occur when "a lender or trustee engages in an unfair or deceptive practice in the nonjudicial

foreclosure context," for instance if the plaintiff alleges he was denied the chance to obtain a

reasonable loan modification but for a lender's bad faith in mediation.  *Frias*, 181 Wn.2d at 430-

31.

3. The allegations to support the claim that the Defendants' unfair and deceptive
practices caused the Hunters injury are ample

The Defendants claim that the Hunters have not shown an unfair or deceptive act and have

not shown injury.  This is clearly false.  The Hunters have suffered injury as a result of several

unfair and/or deceptive acts.

### a. Nationstar committed an unfair and deceptive practice that injured the Hunters when it imposed an excessive interest rate, demanded payments for amounts not owed, and then initiated foreclosure based on incorrect calculations

Nationstar inherited a loan whose payment terms and amounts owed had been miscalculated by BANA.  But Nationstar did nothing to correct BANA's errors, and it initiated a foreclosure based on inaccurate calculations that simply accumulated and compounded excessive interest and other fees and charges.  Even after being told by the Hunters' counsel and expert that its calculations were wrong, Nationstar carried forward its calculations, including the excessive interest rate of 7.25 percent.  Nationstar refused to acknowledge the falsity of its assertions until the Hunters raised the issue with this Court in a prior pleading.  Dkt No. 49 at ¶ 6, **Ex. 1** (mortgage statement dated 2/20/18 showing interest at 4.25 percent).

Failing to provide accurate information about a mortgage loan violates TILA and RESPA.[6]  And clearly, false and misleading statements are unfair and deceptive under the CPA.[7]  Washington courts have also found foreclosures improper where they were initiated on incorrect calculations, including excessive interest rates.[8]  The imposition of excessive interest, fees, and charges is injury under the CPA.  The Hunters were also injured by the initiation of a foreclosure based on incorrect calculations.  Nationstar's conduct has required the Hunters to make monthly payments into the Court's registry to prevent consummation of a wrongful foreclosure.  These payments, nearing a total of $70,000, neither reduce the principal nor interest on the loan.  The Hunters have also incurred out-of-pocket expenses investigating and responding to the foreclosure, including retaining a professional housing counselor, and they have lost income and

---

[6] *See* 15 U.S.C. §1638(f) (periodic statements must identify the principal and "current interest rate in effect for the loan"); 12 CFR §1024.38(b)(1)(i) (servicers must "provide accurate and timely disclosures to a borrower"); 12 CFR § 1026.41(d)(7) (periodic statements must identify the principal and "current interest rate in effect for the mortgage loan.").

[7] *State v. Heckel*, 143 Wn.2d 824 (2001) (CPA prohibits use of false and misleading information in subject line on emails to consumers); *State Farm Fire & Cas. Co. v. Quang Huynh*, 92 Wn. App. 454 (1998) (false billing statements caused injury where plaintiff incurred expenses investigating them); *Edmonds v. Scott Real Estate*, 87 Wn. App. 834 (1997) (presenting false information on a property disclosure form violated the CPA); *see also Chavers v. GMAC Mortg.*, 2012 U.S. Dist. LEXIS 85505, *19-20 (N.D.Cal. June 20, 2012) (faulty calculations precipitating a foreclosure sale were "unfair" under California's consumer protection statute).

[8] *See Davis v. Blackstone Corp.*, 2015 Wash. App. LEXIS 466 (Mar. 2, 2015) (finding that excessive interest and charges in violation of usury laws is a proper basis to restrain foreclosure sale).

OPPOSITION TO MOTION TO DISMISS THIRD
AMENDED COMPLAINT- 11
(No. 2:16-cv-01718-RAJ)

**BRESKIN** | **JOHNSON** | **TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

profits for having to spend time trying to remedy improper practices instead of growing their business.  The reporting of false information to third parties like credit bureaus has further caused injury to the Hunters because it has impaired their ability to obtain additional credit or an alternative loan product.  *See* TAC at ¶¶ 139-40; 225-27; 254(a)-(h).

> **b.  Nationstar committed an unfair practice that injured the Hunters when it ignored the loan modification application that had been submitted to a previous servicer and required the Hunters to start over**

RESPA and Regulation X contain loan servicing requirements.  *See* 12 C.F.R. §§ 1024.30-.41.  Several provisions are relevant here, including those applying where a loan is transferred from one servicer (the transferor servicer) to another (the transferee servicer).

As a transferee servicer, Nationstar was required to "identify necessary documents or information that may not have been transferred by a transferor servicer and obtain such documents from the transferor servicer."  12 C.F.R. 1024.38(b)(4)(ii).  It was required to take actions and adopt and implement policies to "[f]acilitate the sharing of accurate and current information regarding the status of any evaluation of a borrower's loss mitigation application[.]"  12 C.F.R. 1024.38(b)(3)(iii).  Indeed, under Regulation X, it "shall" exercise diligence in obtaining documents and information to complete a loss mitigation application.  12 C.F.R. 1024.41(b)(1).  It also "shall" evaluate the borrower for "all" loss mitigation options that are available.  12 C.F.R. 1024.41(c)(1)(i).  These regulations are referenced in the complaint, went into effect before Nationstar began servicing the loan, and they are mandatory.  TAC at ¶¶ 159, 231, and 237.

One year earlier, the Consumer Finance Protection Bureau issued a policy bulletin notifying servicers that the CFPB intended to increase scrutiny of servicer conduct.  TAC at ¶¶ 231, 237; *see also* Dkt. No. 35-1 (Exhibit 1 to Response, CFPB's Policy Bulletin 2013-01).  The bulletin states that transferee servicers could expect the CFPB to focus on how the servicer "handles the files transferred to it," including the level of diligence the transferee performs, the procedures the transferee had in place to identify loss mitigation in process, the training the

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

transferee conducts to ensure that staff are able to "interpret, operate, manage, access, and utilize the transferred loan information,' and what post-transfer audits the transferee servicer conducts to confirm all data was properly transferred. Dkt. No. 35-1 at p.4 at 2(a)-(e). With respect to loss mitigation in process, "e.g., pending loss mitigation applications," the CFPB told transferee servicers that they need to ensure they received information detailing which loans are in "any state of loss mitigation" and documents supporting mitigation, like the borrower's application and financial documents. *Id.* at pp. 4-5 at 3(a)-(f). These requirements were further enhanced in 2014. Dkt. No. 35-2 (Exhibit 2 to Response) at pp.7-8. Both of these policy bulletins are referenced in the complaint. TAC at ¶¶ 171, 177.

Despite these rules and regulations, Nationstar did not review the loan modification application the Hunters had submitted to SLS. It did not tell the Hunters that it had their application, that it was complete, or that it was missing information. It did not tell the Hunters that there were certain steps that needed to be taken for Nationstar to review the application. Nationstar not even acknowledge that it had received it. And it took no steps to reach out to the prior servicer to even determine what it did or not have on file. Indeed, the Hunters allege that Nationstar did absolutely nothing with respect to their prior loan modification application. *See* TAC at ¶¶ 149-60.

Nationstar's conduct is unfair and deceptive under the CPA because it violated RESPA. Under authority from this district and the Ninth Circuit, a violation of RESPA and Regulation X can support a per se claim under the CPA.[9] Even if the Court were to find that there is no per se

---

[9] *Pierce v. NovaStar Mortg., Inc.*, 238 F.R.D. 624, 629 (W.D.Wash. Oct. 31, 2006) ("plaintiffs have sufficiently alleged that [defendant] committed a per se violation of the CPA by failing to comply with…RESPA"); *Anderson v. Wells Fargo Home Mortg., Inc.*, 259 F.Supp.2d 1143, 1147 (W.D.Wash. Apr. 30, 2003) (determining as a matter of law that a RESPA violation was a proper basis for the 'unfair and deceptive act' prong under the CPA.); *see also Smith v. Specialized Loan Servicing, LLC*, 2017 U.S. Dist. LEXIS 67782, *27-28 (S.D.Cal. May 3, 2017 ("Plaintiff's allegations that SLS's practices on processing loss mitigation applications violate the public policy underlying RESPA…[s]pecifically, the policy is tethered to Regulation X…Plaintiff has sufficiently stated a claim under the unfair prong of the [California Unfair Competition Law] as she has asserted a violation of public policy that is tethered to Regulation X and RESPA"). Other district courts in the Ninth Circuit have ruled similarly. *See also Frank v. J.P. Morgan Chase Bank, N.A.*, 2016 U.S. Dist. LEXIS 70879, *15-24 (N.D.Cal. May 31, 2016) (denying motion to dismiss an unfair practice claim under California consumer protection statute that was "tethered" to RESPA's Regulation X); *Joussett v. Bank of America, N.A.*, 2016 U.S. Dist. LEXIS 138912 (E.D. Penn. Oct. 6, 2016) (in case alleging servicing violations of Regulation X, court does not "disagree" that state-law

OPPOSITION TO MOTION TO DISMISS THIRD
AMENDED COMPLAINT- 13
(No. 2:16-cv-01718-RAJ)

**BRESKIN** | **JOHNSON** | **TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1    violation, Nationstar's conduct clearly violates public policy as promulgated and explained by the

2    CFPB.  It is well within "the penumbra" of some common-law, statutory, or other established

3    concept of unfairness as contemplated in *Magney v. Lincoln Mut. Sav. Bank*.  *See* 34 Wn. App.

4    45, 57 (1983) (cited with approval in *Klem*, 176 Wn.2d at 786).

5          Nationstar has characterized this conduct as a "simple mistake,"  Dkt No. 36 at p.36, but it

6    was not a "simple" mistake to the Hunters.  It delayed the prospect of relief for two more years,

7    until April 2016, while interest and other charges and fees continued to accumulate and

8    compound.  Nationstar forced the Hunters to start over, obtain additional assistance from a

9    housing counselor, and take time away from their home business, all while interest, fees, fines

10   and charges continued to increase.  TAC at ¶¶ 139-40, 161-62, 154(a)-(h).  These are injuries

11   under the CPA.  *Panag*, 166 Wn.2d at 52 (injuries include actual damages as well as any

12   expenses incurred responding to unfair and deceptive practices); *Sign-O Lite Signs v. Delaurenti*

13   *Florists*, 64 Wn. App. 553, 564 (1992) (self-employed and sole owner of business was unable to

14   tend her store the way she would have due to unfair and deceptive acts).

15         Moreover, depriving a homeowner of the right to a fair and reasonable loss mitigation

16   review process is injury under the CPA.  *Velasco*, 2015 Wash. App. LEXIS 783 at *17

17   (compelling homeowners to endure a drawn-out loan modification application process when no

18   loan modification was intended supports an unfair practice claim); *Frias v*, 181 Wn.2d at 430-31

19   (2014) (injury may include denial of the right to obtain a reasonable loan modification); *see also*

20   *Compton v. Countrywide Financial Corp.*, 761 F.3d 1046 (9th Cir. 2014) (forcing homeowner to

21   endure a lengthy two-year delay constituted an unfair or deceptive practice under Hawaii's

22   consumer protection statute).

23

24

25

26   unfair and deceptive practice claims can be brought where rooted in federal laws); *Rouleau v. US Bank, N.A.*, 2015
     U.S. Dist. LEXIS 50969 (D.N.H. April 17, 2015) (denying dismissal of a cause of action for violating servicing
27   requirements set forth in Regulation X).

OPPOSITION TO MOTION TO DISMISS THIRD                    **BRESKIN** | **JOHNSON** | **TOWNSEND** PLLC
AMENDED COMPLAINT- 14                                    **1000 Second Avenue, Suite 3670**
(No. 2:16-cv-01718-RAJ)                                  **Seattle, Washington 98104  Tel: 206-652-8660**

### c.  Nationstar and HSBC committed an unfair practice that injured the Hunters when it refused to participate in FFA mediation in good faith violates the CPA

Regulation X and the Washington Foreclosure Fairness Act require beneficiaries and loan servicers to work with borrowers to determine whether a loan can be modified.  These laws do not require a modification, but they do require a process that gives borrowers a reasonable opportunity to avoid foreclosure.  For instance, Regulation X states that a servicer "shall" evaluate the borrower for "all" loss mitigation options available to the borrower. 12 C.F.R. 1024.41(c)(1)(i).  Regulation X also requires servicers to provider borrowers with "accurate information regarding loss mitigation options available to a borrower" and to identify "with specificity" all loss mitigation options for which borrowers may be eligible under the loan owner's requirements.  12 C.F.R. 1024.38(b)(2)(i) and (ii).

Washington's FFA requires a beneficiary and any agents to participate in FFA mediation in "good faith."  RCW 61.24.163.  This includes the requirement to review any net present value analysis undertaken by a borrower, provide an explanation with detail for a reasonable person to understand any denial for a loan modification or other alternative to foreclosure, produce information relating to any "investor restrictions" (like any applicable to HSBC) and identify efforts undertaken by the beneficiary to obtain a waiver of any such restrictions.  *See* RCW 61.24.163(5)(a)-(j).  The FFA makes it a per se unfair and deceptive practice to "[v]iolate the duty of good faith under RCW 61.24.163."  RCW 61.24.135.

The Hunters alleged that Nationstar did not participate in mediation in good faith because Nationstar did not provide the Hunters with accurate information regarding which loss options were available to them, did not identify "with specificity" which options the Hunters were eligible for, and did not evaluate the Hunters for loss mitigation options that the Hunters later learned the beneficiary had made available to other borrowers. SAC at ¶¶142-46.  The Hunters learned after the mediation that HSBC had implemented a principal write-down program that was never investigated or discussed at mediation.  In fact no loan modification was discussed.  Nationstar simply proposed that the Hunters double their monthly payments and submit a balloon payment

without modifying the loan.  TAC at ¶¶ 186-88.  A refusal to discuss all options that were available to the Hunters, and withholding a specific option that the beneficiary had made available to others, violates Regulation X and the good faith requirement of the FFA.

Moreover, the demand that the Hunters agree to temporarily double their payments is a violation of TILA.  *See* 15 U.S.C. §1639(e) (high cost mortgages like the Hunters cannot "contain a scheduled payment that is more than twice as large as the average of earlier scheduled payments.").  This supports the Hunters' CPA claim.  TAC at ¶¶ 231, 237.  Washington courts have similarly concluded that proposing "higher payments than those originally defaulted upon, plus a balloon payment of over $10,000" is improper.  In *Mellon v. Reg'l Tr. Servs. Corp.*, 182 Wn. App. 476, 490 (2014), the trial court dismissed the homeowner's CPA claim alleging bad faith.  The Washington Court of Appeals reversed, stating that the allegation of bad faith, when supported by factual allegations, "is a summary judgment question, not a CR 12(b)(6) question" because at the 12(b)(6) stage, "this hypothetical situation, if proved, would justify CPA relief for the [plaintiffs]."  *Id*. at 490-91.  "Therefore, the trial court erroneously concluded the [plaintiffs] did not state a cognizable claim."  *Id*. at 491.

The Hunters alleged a similar fact pattern regarding Nationstar's proposal.  This is in addition to the allegation that Nationstar withheld discussion of a better option, HSBC's PWD program.  TAC at ¶¶ 184-200.  This conduct amounts to bad faith and the courts have concluded that where a defendant is alleged to have taken action to prevent a homeowner from obtaining a reasonable loan modification, the plaintiff suffers injury under the CPA.  *See Frias*, 181 Wn.2d at 430-31 (injury may include denial of the right to obtain a reasonable loan modification); *see also Wells v. Chase Home Fin., LLC*, 2010 U.S. Dist. LEXIS 127854, *26-27 (W.D.Wash. Nov. 19, 2010) (CPA claim sufficiently pled where customer service representative misrepresented processing and outcome of plaintiff's loan modification applications).  The Hunters' bad faith claim against Nationstar and HSBC is plausible.

OPPOSITION TO MOTION TO DISMISS THIRD
AMENDED COMPLAINT- 16
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

### d. HSBC's failure to possess the promissory note when initiating foreclosure caused the Hunters injury

The Hunters alleged that HSBC did not possess a hard copy of the original promissory note when it authorized notices of trustee's sale to be issued in 2015 and 2016.  TAC at ¶¶ 208-09.  This renders the foreclosure proceedings improper under the Deed of Trust Act.  *Id.*; *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d at 103.

The Court previously dismissed this claim because a previous pleading failed to articulate sufficient injury.  Dkt. No. 27 at 7-8.  The Hunters' TAC clarified the type of injuries suffered from the initiation of foreclosure.  They incurred investigative costs and expenses as a result of stopping the wrongful foreclosure and lost business income and profits for having to respond it and misconduct leading up to it.  TAC at ¶ 254(f)-(g).  They suffered injury by having to make monthly payments into the Court's registry to prevent the Defendants from completing the wrongful foreclosure.  *Id.* at ¶ 254(h).  These payments do not reduce principal or interest on the loan.  All of these injuries are compensable under the CPA, when the primary claim is that the beneficiary did not physically possess the note while initiating foreclosure.  *See Walker v. Quality Loan Serv. Corp. of Wash*, 176 Wn. App. 294, 320 (2013) (plaintiff alleged that the beneficiary did not possess the note and incurred investigative expenses, taking time off work, and travel expenses).  Under *Walker*, the Hunters suffered injury as a result of initiating a wrongful foreclosure.

### e. As the beneficiary, HSBC is liable for the acts of its servicing agents

HSBC's contention that the Hunters somehow lack standing to pursue claims against it misunderstands the Hunters' allegations.  The Hunters alleged that HSBC was assigned some or all of Countrywide's interests, rights, and responsibilities set forth in the note.  TAC at ¶ 37.  The assignment was apparently effective because HSBC has claimed that it is the beneficiary of the note.  *Id.* at ¶ 36; Donckers decl. at **Ex. 1** (Notice of Foreclosure).  As the beneficiary under Washington law, HSBC must then have the "power" to reach resolution in a dispute, modify the loan, and otherwise avoid foreclosure.  *Bain*, 175 Wn.2d at 103.

OPPOSITION TO MOTION TO DISMISS THIRD
AMENDED COMPLAINT- 17
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

But even if HSBC were not the beneficiary, the Hunters do not need to prove a separate

standing requirement under the CPA.  *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 38

(2009) ("We will not adopt a sixth element, requiring proof of a consumer transaction between

the parties, under the guise of a separate standing inquiry.").  The Defendants' reliance on

decisions from bankruptcy courts in Pennsylvania and Massachusetts to support their insistence

that the Hunters cannot seek relief from HSBC is inapposite.  Motion at 9 (citing *In re Walker*

and *In re Correia*).  Those cases do *not* hold that consumers like the Hunters who sue

beneficiaries lack standing.  The plaintiffs in *Walker* and *Correia* challenged the trustee's

assignment of a promissory note to another party.  *In re Walker*, 466 B.R. 271, 285 (Bankr.

E.D.Pa. 2012); *In re Correia*, 452 B.R. 319, 324 (1st Cir. 2011).  The Hunters have not

challenged any assignment of their note and are not aware of any having been effectuated.  Even

if they had, HSBC's status as a distant investor does not preclude claims against HSBC so long as

its actions caused the Hunters' harm.  Indeed, if such an assignment caused the Hunters harm,

decisions from this district indicate that a claim against HSBC would be appropriate.  *See also*

*Borowski v. BNC Mortg., Inc.*, 2013 U.S. Dist. LEXIS 122104, *13 (W.D.Wash. Aug. 27, 2013)

("borrowers…cannot mount a challenge to the chain of assignments *unless* a borrower has a

genuine claim that they are at risk of paying the same debt twice if the assignment stands.")

(emphasis added).  Here, of course, the Hunters' have alleged that HSBC's actions and omissions

caused them harm.  The Court should not let HSBC off the hook for its servicers' conduct.

**C.     The Hunters alleged facts to support each element of their breach of contract claim**

The Hunters alleged that Defendants BANA, Nationstar, and HSBC breached the terms of

their promissory note and adjustable rider.  The present motion was brought only by Nationstar

and HSBC; BANA has already answered.  *See* Dkt. No. 57.

A breach of contract claim requires allegations of fact showing the following: (1) the

existence of a valid contract; (2) breach; and (3) resulting damage.  *Lehrer v. DSHS*, 101 Wn.

App. 509, 516 (2000).  Nationstar and HSBC appear to concede the existence of a valid contract,

OPPOSITION TO MOTION TO DISMISS THIRD
AMENDED COMPLAINT- 18
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

the promissory note, and that the Hunters alleged breach of the terms of the note's adjustable rate rider. *See* Motion at 11 (Nationstar "did not properly adjust the interest rate."). The Hunters also alleged that Nationstar failed to recast the loan in 2017. TAC at ¶¶ 217-23.

Nationstar and HSBC contend, however, that any breach did not cause the Hunters' damages. But the Hunters' clearly alleged that they were damaged and that the Defendants' conduct deprived them of the benefit of the bargain. TAC at ¶¶ 264-65. They allege that they were paying their mortgage but those payments were not credited to their account and BANA caused them to default. They alleged that when Nationstar began servicing the property, it simply carried prior servicers' miscalculations forward, accumulating and compounding interest on the loan. TAC at ¶¶ 147-48, 190. They alleged that the Defendants' conduct and false reporting prevented the Hunters from achieving any solution that would allow them to keep their home and also impaired their ability to obtain credit or any other alternative products on the market. *Id*. at ¶¶ 225-27. No more specificity is required at this stage. *See Regal West Corp. v. Grapecity, Inc.*, 2011 U.S.Dist. LEXIS 103993, *3 (allegations regarding contract nature of breach and "resulting damages" sufficient to defeat Rule 12(b)(6) motiion); *Microsoft Corp. v. Motorola, Inc.*, 2011 U.S.Dist. LEXIS 73827, *13 (W.D.Wash. June 1, 2011) (allegation that demand for royalty payment caused damage was "sufficient to state a claim for breach of contract") (citations omitted).[10]

Consistent with the allegations in the complaint, district courts in the Ninth Circuit have found allegations regarding damages to be sufficient where the complainant simply alleges damages and harm to credit or increased interest. *See Hard v. Bank of N.Y. Mellon*, 2016 U.S. Dist. LEXIS 60097 *16 (E.D.Cal. May 4, 2016) (alleged damage and harm to credit); *Vincent v.*

---

[10] *See also Love v. Western Union Fin. Servs.*, 2016 U.S. Dist. LEXIS 190144, *11 (D.Ariz. May 6, 2016) (allegations specifying nature of breach claim and that harm was suffered therefrom are sufficient under *Twombly*); *Ossman v. CitiMortgage*, 2012 Bankr. LEXIS 326, *20-21 (Bankr.C.D.Cal. Jan. 31, 2012) (allegations that loss of a permanent loan modification deprived plaintiff of "benefit of his bargain" were adequate to defeat Rule 12(b)(6) motion); *Kasramehr v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 158425, * (C.D.Cal. May 18, 2011) (plaintiff alleged defendant initiated foreclosure and failed to credit payments made); *Velazquez v. GMAC Mortg. Corp.*, 605 F.Supp.2d 1049, 1071 (C.D.Cal. 2008) (allegation that defendants improperly increased interest rate on loan and caused damage sufficient to defeat Rule 12(b)(6) motion).

OPPOSITION TO MOTION TO DISMISS THIRD
AMENDED COMPLAINT- 19
(No. 2:16-cv-01718-RAJ)

**BRESKIN** | **JOHNSON** | **TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

*PNC Mortg. Inc.*, 2014 U.S. Dist. LEXIS 83680, *16 (E.D.Cal. June 17, 2014) (harm to credit and increased interest and arrears).  Again, the Hunters have done so and are entitled to seek damages based on their "expectation interest" so that they can obtain "the benefit of their bargain."  *Brotherson v. Prof'l Basketball Club, L.L.C.*, 604 F.Supp.2d 1276 (W.D.Wash. 2009) (internal citation omitted).  In an apparent effort to limit its principal's exposure, Nationstar asks the Court to take judicial notice of a deed of trust, which obligates Nationstar – not HSBC – to continue servicing the note.  The Court should decline to limit the liability of any Defendant at this stage, especially HSBC, the "beneficiary" with "power" to modify the loan and cancel foreclosure proceedings.

Last, the Defendants claim that since Keith Hunter did not sign the note, he cannot maintain an action for breach, only his mother, 92-year old Elaine can.  But Keith Hunter is a third party beneficiary under the note.  TAC at ¶ 257.  His parents give him rights to the property in 2003.  *Id*. at ¶ 16.  Last year, the Hunters recorded an instrument confirming that Elaine's interest in the property will transfer to Keith upon her death.  Donckers decl. at **Ex. 2**.[11]  Keith has resided on and maintained the property for nearly 20 years and, along with his mother, Keith has made mortgage payments on the property.  *Id*. at ¶¶ 14-17.  Since his father died, Keith has been helping Elaine attempt to resolve the underlying subject of this dispute since it started 7 years ago.  The Court should allow Keith to pursue relief along with his mother for breach without prejudicing his interests by requiring him to seek relief under Rule 25 to be substituted in the event she passes while litigation is pending.

**D.   The Hunters alleged sufficient facts to support their breach of covenant of good faith and fair dealing**

As with the Hunters' breach of contract claim, they alleged that BANA, Nationstar, and HSBC are liable for the breach.  The motion challenges the Hunters' claim only against Nationstar and HSBC, who assert that the breach of the covenant of good faith and fair dealing

---

[11] The Court may take judicial notice of publicly available documents.  *Metzler Inv. GMBH v. Corinthian Colleges, Inc*., 540 F.3d 1049, 1064, n.7 (9th Cir. 2008).

OPPOSITION TO MOTION TO DISMISS THIRD
AMENDED COMPLAINT- 20
(No. 2:16-cv-01718-RAJ)

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

claim is insufficiently pled.  They claim the complaint lacks "even a single allegation of fact to support the recitation" of "legal conclusions."  Motion at 13.  But this requires ignoring the 227 paragraphs of factual allegations in the complaint.

The duty of good faith and fair dealing is implied in every contract and obligates the parties to "cooperate with each other so that each may obtain the full benefit of performance." *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569 (1991) (internal citations omitted).  The duty requires the parties "perform in good faith the obligations imposed by their agreement." *Id*.  In determining whether the duty of good faith and fair dealing was breached, courts may consider a variety of factors, including: (1) whether conduct was contrary to reasonable and justified expectations of other parties to the contract; (2) whether conduct frustrates the purposes of the contract; (3) whether conduct was commercially reasonable; (4) whether and to what extent the defendant's conduct conformed with industry custom or practice; (5) whether the contract gave the defendant discretion; and (6) subjective factors. *See Microsoft Corp. v. Motorola, Inc*., 963 F.Supp.2d 1176, 1185 (W.D.Wash. 2013).

Nationstar and HSBC, the alleged beneficiary of the note, have not performed their obligations under the agreement in good faith.  The factors outlined in *Microsoft Corp*., supra, support the Hunters.  Nationstar failed to conduct even basic diligence when it started servicing the note.  It did not exercise diligence when it prepared for mediation under the FFA or when it decided to foreclose on the property.  It ignored the Hunters' counsel and expert when it was told that Nationstar's accounting on the loan was wrong, until the issue was raised with the Court.  Then, Nationstar changed its the reference to an incorrect interest rate on its monthly mortgage statements.  Dkt No. 49 at ¶ 6 and **Ex. 1** (mortgage statement dated 2/20/18 showing interest at 4.25 percent).  But this simple act took *four years*.  And the underlying accounting remains incorrect.  Nationstar's conduct is contrary to what can be reasonably expected, and it frustrated the purpose of the adjustable rate rider.  Its conduct is contrary to what was expected of it under the plain language of the note and mortgage servicing laws.  The Hunters' allegations are sufficient to show that Nationstar breached the implied duty of good faith.

OPPOSITION TO MOTION TO DISMISS THIRD
AMENDED COMPLAINT- 21
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

HSBC is liable because it was assigned some or all of Countrywide's interest in the loan and although it assumed responsibilities as the "beneficiary" to the note with "power" to modify the loan, it has done nothing.  The Hunters are not, as Nationstar and HSBC claim, asking the Court to impose a 'free-floating' duty that injects new terms into the Hunters' promissory note. The claim against them is that, from the date Nationstar began servicing the mortgage, it failed to properly apply the loan terms and calculate amounts owed.  Nationstar refused to even address its own errors until the issue was raised in a pleading before this Court.

**E.      The facts alleged support jury consideration of the Hunters' infliction of emotional distress claims**

Finally, the Defendants claim that the Hunters' allegations do not show either that the Defendants' conduct was sufficiently outrageous or that it caused sufficiently severe damages. Courts take a "case-by-case" approach to define the limits of such conduct.  *Grimsby v. Samson*, 85 Wn.2d 52, 59 (1975).  While the claim does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," *id.*, that is not what we have here.

The Hunters have alleged that Nationstar, for four *years*, has actively obstructed their efforts to remedy a default that BANA caused.  Nationstar has withheld information from the Hunters about loss mitigation and moved forward with a foreclosure that even basic diligence would have demonstrated relied on incorrect amounts owed.  The focus, when evaluating claims for infliction of emotional distress, is on "the conduct rather than the degree of distress which primarily limits claims for intentional infliction of emotional distress."  *Kloepfel v. Bokor*, 149 Wn.2d 192, 202 (2003).[12]

The duration and insistent refusal to conduct the most basic of duties renders Nationstar's conduct egregious.  Both Keith and Elaine should be permitted to submit their claims of infliction

---

[12] Defendants' citations to *Womack v. Rardon*, 133 Wn. App. 254 (2006) and *Strong v. Terrell*, 147 Wn. App. 376 (2008) are inapposite. While *Womack* affirmed dismissal of an infliction of emotional distress claim at summary judgment, there is no indication from the opinion what evidence the plaintiff submitted to support her emotional distress claim at summary judgment. 133 Wn. App. at 261.  In *Strong*, the court merely affirmed dismissal of a negligent infliction of an emotional distress claim based on its conclusion that verbal insults at work fell into the category of indignities, annoyances, petty oppressions, and other "trivialities."  147 Wn. App. at 386.

OPPOSITION TO MOTION TO DISMISS THIRD
AMENDED COMPLAINT- 22
(No. 2:16-cv-01718-RAJ)

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

of emotional distress to a jury.  *See Grimsby*, 85 Wn.2d at 60 (the tort extends to "immediate" family members of the person who is the object of the defendant's actions).  The extent and scope of their damages, including the severity of distress, are issues to be considered by them.  *See Woodward v. Steele*, 32 Wn. App. 152, 155-57 (1982) (requiring no specific allegation regarding the severity of such distress in jury instructions and focusing on the nature of the Defendant's conduct).

## IV.    CONCLUSION

For the reasons stated herein, the Court should deny the motion to dismiss filed by Nationstar and HSBC.

DATED: June 18, 2018.

BRESKIN JOHNSON TOWNSEND, PLLC

By:      *s/Brendan W. Donckers*
         Brendan W. Donckers, WSBA #39406
         1000 Second Avenue, Suite 3670
         Seattle, WA 98104
         Tel:  (206)652-8660
         bdonckers@bjtlegal.com

         Roger Townsend, WSBA #25525
         1000 Second Avenue, Suite 3670
         Seattle, WA 98104
         Tel:  (206)652-8660
         rtownsend@bjtlegal.com
         *Attorneys for Plaintiffs*

OPPOSITION TO MOTION TO DISMISS THIRD
AMENDED COMPLAINT- 23
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

CERTIFICATE OF SERVICE

I hereby certify that on this date I filed the foregoing document with the Clerk of the Court using the court's ECF filing system which will automatically serve the filing on registered ECF users:

Christopher G. Varallo
cgv@witherspoonkelley.com
Steven J. Dixon
sjd@witherspoonkelley.com
Witherspoon Kelley
*Attorneys for Bank of America*

Robert W. McDonald
rmcdonald@qualityloan.com
*In-House Counsel for Quality Loan Service Corporation*

David J. Elkanich
david.elkanich@hklaw.com
Holland & Knight LLP
*Attorneys for Nationstar Mortgage LLC and HSBC Bank USA, N.A.*

DATED June 18, 2018, at Seattle, Washington.

_s/Leslie Boston_____
Leslie Boston

OPPOSITION TO MOTION TO DISMISS THIRD
AMENDED COMPLAINT- 24
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660