HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KEITH HUNTER, an individual, and
ELAINE HUNTER, an individual,

Plaintiffs,

v.

BANK OF AMERICA, N.A., et al.,

Defendants.

CASE NO. C16-1718 RAJ

ORDER

This matter comes before the Court on Defendants Nationstar Mortgage LLC ("Nationstar") and HSBC Bank USA, N.A.'s ("HSBC") (collectively, "Defendants") Motion to Dismiss Plaintiff's Third Amended Complaint ("Motion to Dismiss"). Dkt. # 56. Plaintiffs oppose the Motion to Dismiss, and Defendants have filed a Reply. Dkt. ## 58, 60. For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss.[1]

---

[1] At the outset, the Court notes that the parties' briefs are replete with footnoted legal citations. The Court strongly disfavors footnoted legal citations. Footnoted citations serve as an end-run around page limits and formatting requirements dictated by the Local Rules. *See* Local Rules W.D. Wash. LCR 7(e). Moreover, several courts have observed that "citations are highly relevant in a legal brief" and including them in footnotes "makes brief-reading difficult." *Wichansky v. Zowine*, No. CV-13-01208-PHX-DGC, 2014 WL 289924, at *1 (D. Ariz. Jan. 24, 2014). The Court strongly discourages the parties from footnoting their legal citations in any future submissions. *See Kano v. Nat'l Consumer Co-op Bank*, 22 F.3d 899-900 (9th Cir. 1994).

ORDER- 1

## I. BACKGROUND[2]

Elaine and Donald Hunter signed a promissory note to Countrywide that is secured by a deed of trust concerning the property located at 7022 NE 170th Street in Kenmore, Washington. Dkt. # 51 at ¶¶ 10-18. The Hunters purchased the home for themselves and their son, Plaintiff Keith Hunter. Plaintiffs claim that that the property was purchased for Keith Hunter, who began living on the property soon after it was purchased and made payments. *Id*. Plaintiffs allege that under the terms of the note, the initial interest rate was set at 7.25 percent for five years, at most, and then subject to an annual adjustment. *Id*. at ¶¶ 19-30. Plaintiffs allege that payments during the first five years were to go to only to a portion of interest owed and payments on the remaining interest and all principal were deferred until the loan ballooned to 115% or was recast after the initial five years, whatever came first. *Id*.; *see also Id*. at Ex. A. Plaintiffs allege that within a few months of origination, the loan was bundled with a pool of residential mortgages, including approximately 63 from Washington, converted to a mortgage-backed security, and sold on the secondary market to a trust overseen by Defendant HSBC. *Id*. at ¶¶ 31-50.

Defendant Bank of America, N.A. ("BANA") acquired Countrywide and began servicing the Hunters' loan. Dkt. # 51 at ¶¶ 51-55. Plaintiffs allege they made consistent monthly loan payments to BANA. *Id*. Sometime in 2011, BANA began returning Plaintiffs' mortgage payments without crediting their account. *Id*. at ¶¶ 56-58. Plaintiffs contacted BANA on several occasions to resolve the issue. *Id.* at ¶¶ 59-65. Plaintiffs contend that BANA did not give any clear answers or instructions, and so Plaintiffs continued to send their payments to BANA. Nevertheless, BANA continued to return the checks without crediting the account. *Id.*

---

[2] The Court describes the facts as Plaintiffs allege them in their Third Amended Complaint, making no comment on the veracity of these allegations.

Eventually, Plaintiffs arranged a meeting with Paul Mills, a vice president and mortgage specialist at BANA. Dkt. # 51 at ¶ 77. Mr. Mills advised the Hunters to apply for a loan modification. *Id.* at ¶¶ 82-85. Mr. Mills was so confident that BANA would modify the loan that he told the Hunters not to "bother [sending their mortgage payments], you have a new mortgage coming, it's on the underwriter's desk." *Id.* at ¶ 116. When the Hunters attempted to find out why BANA had been returning the payments, Mr. Mills allegedly brushed off the issue as "one hand not talking to the other." *Id .*at ¶ 119.

Ultimately, BANA sold the note and did not modify the Hunters' loan. *Id.* at ¶¶ 122-23. BANA then characterized the loan as in default. *Id.* at ¶ 125. The Hunters continued to submit monthly mortgage payments in an attempt to pay off the loan. *Id.* at ¶ 126. Nationstar Mortgage, LLC ("Nationstar") began servicing the loan in 2014. *Id.* at ¶ 144. In early 2015, Quality Loan Servicing Corporation of Washington ("QLS") began to initiate foreclosure, identifying HSBC Bank USA N.A. ("HSBC") as the beneficiary. *Id.* at ¶ 168. Foreclosure proceedings are currently stayed.

The Hunters filed suit in state court against BANA, Nationstar, and HSBC, among others. Dkt. # 1-1. Defendants removed the action to this Court and moved the Court to dismiss Plaintiffs' claims. Dkt. ## 5, 20. On May 25, 2017, this Court granted in part and denied in part Defendants' initial motion to dismiss. Dkt. # 27. The Court dismissed Plaintiffs' claims as to Nationstar and HSBC, finding that they had failed to allege claims against these Defendants under the Washington Consumer Protection Act ("CPA"), Deed of Trust Act ("DTA"), Intentional and/or Negligent Infliction of Emotional Distress, Misrepresentation, and Promissory Estoppel. *Id*. The Court granted Plaintiffs leave to amend their Complaint to state CPA, outrage, misrepresentation, and promissory estoppel claims against Nationstar and HSBC. *Id.* at 10-11.

Plaintiffs filed a Second Amended Complaint on June 8, 2017, which Nationstar and HSBC moved to dismiss on July 13, 2017. Dkt. ## 28, 32. While this motion was

pending, Plaintiffs moved for leave to file a Third Amended Complaint, adding factual allegations against Nationstar and HSBC with additional details learned through discovery, which the Court granted on April 24, 2018. Dkt. ## 43, 50.

Plaintiffs then filed their Third Amended Complaint on May 4, 2018. Dkt. # 51. This Complaint added a number of new factual allegations against both Nationstar and HSBC. For instance, Plaintiffs allege that after Nationstar began servicing the loan in 2014, Nationstar carried forward an improper calculation of Plaintiffs' interest rate (7.25%), even though the terms of the note dictated should have been adjusted no later than February 1, 2012 to a much smaller interest rate until 2017. *See, e.g.*, Dkt. # 51 at ¶¶ 145-48; 165. Plaintiffs allege that Nationstar failed to review a completed loan modification application submitted to the previous servicer, and failed to implement policies to facilitate the transferring of such service, allegedly in violation of the Real Estate Settlement Procedure Act, 12 U.S.C. §§ 2601 *et seq*. and Regulation X, 12 C.F.R. §§ 1024.30-.41. *Id*. at ¶¶ 149-60. Plaintiffs allege these failures caused significant delays, accrual of inaccurate interest, and forced them to start the loss mitigation process all over again. *Id*. Plaintiffs contend that Nationstar required them to submit another loan modification application, but delayed processing it. *Id*. at ¶¶ 161-62. Plaintiffs allege that Nationstar sent a notice of default in 2015 that reflected the incorrect interest rate, and continued sending reinstatement quotes and monthly mortgage statements that maintained this incorrect 7.25% rate. *Id*. at ¶¶ 186, 190; Ex. D.

Plaintiffs also allege misconduct by Nationstar during the parties' foreclosure mediation, which was continued several times because Nationstar claimed more documentation was necessary. *Id*. at ¶¶ 176–81. Plaintiffs allege Nationstar participated in bad faith in these proceedings by (1) not informing Plaintiffs of the loss mitigation options available, including HSBC's Principal Write-Down Modification program ("PWD") program which would have helped Plaintiffs write down principal instead of interest; (2) not considering Plaintiffs for these additional loss mitigation programs; (3)

declining to modify Plaintiff's loan or fix the incorrect interest rate; and (4) demanding a doubling of Plaintiffs' monthly payments and a lump sum "contribution" of $15,000. *Id*. at ¶¶ 176-201.[3]

Plaintiffs then argue that after the mediation failed, QLS set a foreclosure sale for July 2015, noting the beneficiary as HSBC; this sale was the re-set twice, once to July 2015 and then again to June 2016. Dkt. # 51 at ¶¶ 207-12. Plaintiffs allege that HSBC did not own the Note during these proceedings. *Id*. Plaintiffs then allege that the sale was re-set for October 2016, but this sale was postponed after Plaintiffs retained counsel and stipulated to the entry of a preliminary injunction enjoining the sale subject to monthly payments of $3,226.72 into the Court registry. *Id*. at 211-16; *see also* Dkt. ## 15, 18.

Finally, Plaintiffs allege that under the terms of the note, Plaintiffs' loan would have been "recast" no later than February 2017, which would reflect an adjusted interest rate and payment amount that included both interest and principal. Dkt. # 51 at ¶¶ 217-18. Plaintiffs contend that Nationstar did not recast their loan, and instead continued demanding payments based on an incorrect interest rate and for interest only, and included "excessive and inaccurate amounts for fees, charges, escrow and allegedly overdue payments." *Id*. at ¶¶ 219-23.

Defendants Nationstar and HSBC moved to dismiss Plaintiff's Third Amended Complaint, which alleges claims against these Defendants for violations of the CPA, breach of contract, breach of the covenant of good faith and fair dealing, and intentional and/or negligent infliction of emotional distress. Dkt. # 56. Defendants' Motion to Dismiss is now before this Court.

---

[3] Plaintiffs contend that HSBC did not participate in this mediation. Dkt. # 51, ¶ 182. Plaintiffs generally allege that HSBC is vicariously liable for the actions of BANA and HSBC. *Id*. at ¶ 236.

ORDER- 5

## II. LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) permits a court to dismiss a complaint for failure to state a claim. The rule requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). The court may also consider evidence subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## III. DISCUSSION

A. Judicial Notice

Defendants ask the Court to take judicial notice of the Deed of Trust, attached as Exhibit A to their Motion to Dismiss. Dkt. # 56 at 12. "Generally, on a 12(b)(6) motion, the District Court should consider only the pleadings." *Shaver v. Operating Engineers Local 428 Pension Trust Fund,* 332 F.3d 1198, 1201 (9th Cir. 2003). The court, however, "may also consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Northstar Fin. Advisors Inc. v. Schwab Investments,* 779 F.3d 1036, 1043 (9th Cir. 2015) (alteration in original) (quoting *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th

Cir. 2005)). Courts sometimes refer to this as the doctrine of "incorporation by reference." *Id.*

Additionally, when considering a motion to dismiss, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Federal Rule of Evidence 201 permits the court to "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Consistent with that rule, the court may take judicial notice of undisputed matters of public record, such as documents on file in federal or state courts. *Carlson v. Wells Fargo Bank, N.A.,* C15-0109JLR, 2015 WL 2062394, at *4 (W.D. Wash. May 4, 2015).

No party has challenged the authenticity of the Deed of Trust submitted by Defendants, and the Court agrees that it is a matter of public record. *See Northstar,* 779 F.3d at 1043; Fed. R. Evid. 201. Having so found, the court takes judicial notice of this document.

B. Consumer Protection Act Claims

*1. CPA Claim Against Nationstar*

A CPA claim requires proof of five elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531, 533 (1986). "[A] claim under the Washington CPA may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *Klem v. Washington Mut. Bank*, 176 Wn.2d 771, 786, 295 P.3d 1179, 1187 (2013). "Failure to satisfy even one of the elements is fatal to a CPA claim." *Sorrel v. Eagle Healthcare, Inc.*, 110 Wn. App. 290, 298, 38 P.3d 1024, 1027 (2002).

Parties initiating suit under the CPA may recover actual damages, costs, and reasonable attorney's fees. RCW 19.86.090.

In its previous Order, the Court dismissed Plaintiffs' CPA claim as to Nationstar because Plaintiffs did not address "any specific facts that lead the Court to conclude that Nationstar was unfair or deceptive" in declining to modify Plaintiffs' loan. Dkt. # 27 at 6-7. In the Third Amended Complaint, Plaintiffs claim that Nationstar violated the CPA by (1) failing to participate in the mediation in "good faith" in violation of Washington's Fair Foreclosure Act ("FFA"), RCW 61.24.163; and (2) providing inaccurate calculations of Plaintiffs' interest rates and acting on these incorrect interest rates (including initiating foreclosure) in violation of RESPA and Regulation X; and (3) ignoring Plaintiffs' loan modification applications in violation of RESPA. Dkt. # 51 at ¶¶ 144-200.

The Court finds that at this stage, Plaintiff has plausibly alleged that Nationstar engaged in unfair or deceptive conduct, such as by not participating in the foreclosure mediation process in good faith. The FFA requires that parties engaged in a foreclosure mediation mediate in "good faith." RCW. 61.24.163(10). The FFA also states, in relevant part, that "[i]t is an unfair or deceptive act in trade or commerce and an unfair method of competition in violation of the [CPA] . . . for any person or entity to: (a) [v]iolate the duty of good faith under RCW 61.24.163." RCW 61.24.135. The Court thus concludes that violation of this statute would constitute a *per se* violation of the CPA. Here, Plaintiffs allege that Nationstar did not participate in mediation in good faith because Nationstar (1) did not provide Plaintiffs with accurate information regarding which loss options were available to them; (2) did not identify which options Plaintiffs were eligible for; and (3) did not evaluate, discuss, or offer the loss mitigation options that were actually available to Plaintiffs; and (4) proposed instead that Plaintiffs double their monthly payments and pay a large "balloon payment" contribution. Dkt. # 51 at ¶¶142-46; Dkt. # 58 at 15. At this stage, the Court finds that these allegations, accepted as

true, adequately set forth a violation of the duty of good faith under RCW 61.24.163, and thus adequately plead an "unfair or deceptive act" under the CPA.

Moreover, the Court finds that Plaintiff has adequately plead violations of federal laws, which could serve as the basis for a CPA claim. For instance, Plaintiffs allege that Nationstar "did not review" their requests for loan modifications, in contravention to 12 C.F.R. 1024.41(c)(1)(i)'s requirement that loan servicers evaluate all such applications. Dkt. # 51 at ¶ 159. Additionally, Plaintiff alleges that repeatedly seeking loan payments based on an incorrectly calculated intertest rate, even when Nationstar allegedly knew of this falsity, violates several federal regulations that could serve as the basis for the "unfair or deceptive" prong of the CPA. Dkt. # 58 at 11-12 (citing regulations). Previously, this Court has found that violations of RESPA could serve as the basis for a CPA violation. *See, e.g.*, *Pierce v. NovaStar Mortg., Inc.*, 238 F.R.D. 624, 629 (W.D. Wash. Oct. 31, 2006) (holding that "plaintiffs have sufficiently alleged that [defendant] committed a per se violation of the CPA by failing to comply with written disclosure requirements under the CLA, TILA, and RESPA"). At this point, Plaintiffs have provided sufficient detail to plead the first prong of a CPA claim.[4]

Nationstar contends that even if Nationstar's conduct was unfair or deceptive, Plaintiffs do not adequately plead causation and injury. Dkt. # 56 at 6-8. The Court disagrees, especially in light of the "expansive" construction of CPA damages in Washington. *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wn.2d 412, 431–32, 334 P.3d 529, 538 (2014) (finding that "the business and property injuries compensable under the CPA are relatively expansive."). Considerations of what qualifies as compensable injury under the CPA under Washington law are broad and can include economic damages incurred in the "time and money communicating with" an entity servicing a loan, like

---

[4] There seems to be little dispute and analysis from the parties as to whether Plaintiffs have adequately plead the "public interest" prong of the CPA analysis.

Nationstar. *See, e.g., Patrick v. Wells Fargo Bank, N.A.*, 196 Wn. App. 398, 408, 385 P.3d 165, 171 (2016) ("The Patricks suffered an injury to business or property when the trustee sold their home. They also spent time and money communicating with Wells Fargo"). Specifically, the Washington Supreme Court explains that denials of a chance to obtain a reasonable loan modification through mediation may result in compensable CPA injuries:

> Here, Frias alleges she was denied the chance to obtain a reasonable loan modification because U.S. Bank refused to participate in mediation in good faith. Where a more favorable loan modification would have been granted but for bad faith in mediation, the borrower may have suffered an injury to property within the meaning of the CPA.

*Frias*, 181 Wn.2d at 431–32. Here, Plaintiffs cite specifically to an HSBC program, the PWD program, that Defendants offered to others but did not offer to Plaintiffs, despite the availability of this program to Plaintiffs. Dkt. # 51 at ¶¶ 191-98, 225. Plaintiffs contend that this program would have provided Plaintiffs with a more favorable loan modification, including the writing off of principal, reducing the interest rate, and extending the term. *Id.* at ¶ 195. Under *Frias*, the Court finds that these allegations could set forth a cognizable CPA injury. Moreover, Plaintiff contends that Nationstar caused injury in demanding payments based on a knowing miscalculation of the appropriate interest rate. Although Defendants argue that no injury exists because Plaintiffs did not make any payments to Nationstar, where a business demands payment not lawfully due, the consumer can claim injury for expenses he or she incurred in responding, even if the consumer did not remit the payment demanded. *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 62, 204 P.3d 885, 902 (2009). The injury element can be met even where the injury alleged is both minimal and temporary. *Mason v. Mortg. Am., Inc.*, 114 Wn.2d 842, 854, 792 P.2d 142 (1990). At this stage, these allegations suffice to plead a cognizable injury under the CPA.

*2. CPA Claim Against HSBC*

The Court previously dismissed Plaintiffs' CPA claim against HSBC due to their failure to carry their burden on the injury and causation prongs, but found that HSBC "acted unfairly or deceptively when acting as the beneficiary to authorize a foreclosure sale without possessing the promissory note." Dkt. # 27 at 7. Here, Plaintiffs again assert that HSBC is liable under the CPA because it violated the Deed of Trust Act by not possessing "a hard copy of the original promissory note." Dkt. # 51 at ¶¶ 208-10. Without the physical note, HSBC could not authorize a notice of trustee sale. *Id.* Violations of the DTA may provide a basis for a CPA claim. However, such violations do not lead to *per se* CPA claims, as "such claims are governed by ordinary principles applicable to all CPA claims . . . ." *Meyer v. U.S. Bank Nat. Ass'n*, 530 B.R. 767, 776 (W.D. Wash. 2015), *reh'g denied*, No. 14-00297-RSM, 2015 WL 3609238 (W.D. Wash. June 9, 2015). Moreover, "a technical violation of the DTA is not in itself sufficient to constitute an unfair or deceptive practice" without a showing of prejudice. *Id.* at 780.

Again, at this stage, the Court must defer to Plaintiffs' factual allegations in the Third Amended Complaint. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). As such, as it previously did, the Court again finds that HSBC acted unfairly or deceptively when acting as the beneficiary to authorize a foreclosure sale without possessing the promissory note. Dkt. # 27 at 7-8. As for the remaining prongs of the CPA claim, the Court finds that Plaintiff's Third Amended Complaint adequately alleges injury and causation cognizable under the CPA as to its claim against HSBC. A plaintiff can satisfy the injury element by showing that the plaintiff's "property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal." *Panag*, 166 Wn.2d at 57 (quoting *Mason v. Mortg. Am., Inc.*, 114 Wn.2d 842, 854, 792 P.2d 142 (1990)). This can include "[i]nvestigative expenses, taking time off from work, travel expenses, and attorney fees." *Walker v. Quality Loan Serv. Corp. of Wash.*, 176 Wn. App. 294, 320, 308 P.3d 716 (2013).

This Court previously considered a similar issue in *Knecht v. Fidelity Nat'l Title Ins. Co.*, C12–1575 RAJ, 2014 WL 4057148, at *9 (W.D. Wash. Aug.14, 2014) (noting that "[i]f a jury concludes that DB had no authority to foreclose, then a trier of fact could infer that the cause of [plaintiff's] need to investigate was DB's wrongfully-initiated foreclosure proceedings"). In *Knecht*, this Court found that investigative expenses were an injury under the CPA despite the defendants' argument that "the cause of Mr. Knecht's injury was his default, not their wrongdoing." *Id*. Here, Plaintiffs have pleaded that as a result of HSBC's alleged wrongfully-initiated foreclosure, they incurred investigation expenses, lost business income and profits, and incurred attorney fees, among other items. Dkt. # 51 at ¶ 254. At this stage, these allegations are sufficient to plausibly allege injury and causation under the CPA.

The Court thus finds that Plaintiff's Third Amended Complaint adequately pleads CPA claims against Nationstar and HSBC. Accordingly, the Court **DENIES** Defendants Nationstar and HSBC's Motion to Dismiss as to Plaintiffs' CPA claims.

C. Breach of Contract and Duty of Good Faith and Fair Dealing Claims

Plaintiffs allege claims against Nationstar and HSBC for breach of contract and breach of the duty of good faith and fair dealing. Dkt. # 51 at ¶¶ 255-76. In Washington, to establish a breach of contract claim, Plaintiff must prove: (1) the existence of a contract, (2) a material breach of that contract, and (3) resulting damage. *St. John Med. Ctr. v. State ex rel. Dep't of Soc. & Health Servs.*, 110 Wn. App. 51, 64, 38 P.3d 383, 390 (2002). Moreover, "[t]here is in every contract an implied duty of good faith and fair dealing," which "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991). "[T]he duty arises only in connection with terms agreed to by the parties." *Id.; see also Donald B. Murphy Contractors, Inc. v. King Cty.,* 112 Wn. App. 192, 197, 49 P.3d 912 (2002) ("A duty of good faith and fair dealing is deemed to exist in every contract, but it arises only in connection with the performance of specific contract

obligations. If no contractual duty exists, there is nothing that must be performed in good faith.").

Here, Plaintiffs contend that Defendants breached a contract (the promissory note) by failing to adjust the interest rate and monthly payments on the note and failing to recast Plaintiff's loan in 2017. Dkt. # 51 at ¶¶ 255-65. Defendants contend that even if a breach did occur, Plaintiffs have not alleged that they suffered any damages, emphasizing that Plaintiffs have not made any payments to Nationstar or HSBC, and thus have not been damaged as a result of miscalculated intertest rates. Dkt. # 56 at 10-14. While this may ultimately prove to be true, it is not clear to this Court that this fact would mean that Plaintiffs cannot state a breach of contract claim, at least as to Nationstar. Plaintiffs allege other damages in connection with Nationstar's alleged breach, including (1) causing interest to be accumulated and compounded on Plaintiffs' loan at an incorrect interest rate; (2) preventing Plaintiffs from obtaining loan modifications or other solutions to keep their home; and (3) impairing Plaintiffs' ability to obtain credit. *Id*. at ¶¶ 147-48, 190, 225-27. Plaintiffs persuasively allege that these allegations appear reflect Plaintiffs' "expectation" damages, and Defendants offer little reason to deviate from this conclusion. *Brotherson v. Prof'l Basketball Club, L.L.C.*, 604 F. Supp. 2d 1276, 1292 (W.D. Wash. 2009). At this stage, these allegations suffice to plead damages associated with Plaintiffs' breach of contract and duty of good faith and fair dealing claims at this stage in litigation. As for Plaintiff Elaine Hunter's breach of contract and covenant of good faith and fair dealing claims against Nationstar and HSBC, Defendants' Motion to Dismiss is **DENIED**.

Defendants raise an issue as to Plaintiff Keith Hunter, arguing that because Keith Hunter is not a party to the note, he cannot allege claims against Defendants for breach of the promises contained in the note. Dkt. # 56 at 10. Defendants are correct in that Plaintiffs' Third Amended Complaint fails to allege that Plaintiff Keith Hunter is a party to the loan documents, addressing his status solely with a one-line legal conclusion that

Keith Hunter is a third-party beneficiary. Dkt. # 51 at ¶ 257. To determine whether a party is a third-party beneficiary, the contract must be examined, and "both contracting parties must intend that a third-party beneficiary contract be created." *See, e.g., Postlewait Constr. Inc. v. Great Amer. Ins. Companies*, 106 Wash.2d 96, 99, 720 P.2d 805 (1986). Although Plaintiffs argue that they purchased the property with the intention of ultimately giving it to Keith Hunter upon the death of Elaine Hunter, and that Keith Hunter lives on the property and made mortgage payments, these allegations do not necessarily make Keith Hunter a third-party beneficiary with standing to assert these claims against Nationstar and HSBC. Plaintiffs make no allegation that the contract in question (the note) was intended by *both* parties to benefit Keith Hunter. Without such an allegation as to *both* parties' intent, Plaintiffs' argument that Keith Hunter is a third-party beneficiary fails. The Court will thus **GRANT** Defendants' Motion to Dismiss on this point, and **DISMISS** Plaintiff Keith Hunter's breach of contract and covenant of good faith and fair dealing claims against Nationstar and HSBC.

Defendants also argues that HSBC did not breach any contract because it was not a party to a contract with Plaintiff, and that it had nothing to do with the alleged miscalculations of interest serving as the basis for Plaintiffs' claim. Dkt. # 56 at 11-12; Dkt. # 60 at 11. The Court agrees. Both parties appear to agree that it was the responsibility of Nationstar, Plaintiffs' loan servicer, to service the loan and apply the correct interest rate. It is unclear, at this stage, what contractual duties HSBC owed to Plaintiffs, and how HSBC breached these duties. Plaintiffs urge the Court to "decline to limit the liability of any Defendant at this stage, especially HSBC, the 'beneficiary' with 'power' to modify the loan and cancel foreclosure proceedings." Dkt. # 58 at 20. Unfortunately, Plaintiff cites no authority to support this proposition, and does not address the provision of the Deed of Trust that seemingly places the responsibility of servicing the loan solely with Nationstar, and not HSBC. Dkt. # 56, Ex. A at ¶ 20 ("If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the

purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note Purchaser."). Plaintiffs also do not identify any legal theory that would permit the Court to hold HSBC accountable for specific contractual duties owed solely by Nationstar. By failing to identify which terms of the note give rise to their claims against HSBC, Plaintiffs have failed to state a cognizable legal claim for either breach of contract or breach of the duty of good faith and fair dealing against HSBC. *See e.g., Titus v. Wells Fargo Bank,* 2016 WL 807806, at *6 (W.D. Wash. Mar. 2, 2016) (holding defendant had not breached a duty of good faith and fair dealing because plaintiff had "not sufficiently articulated the contractual basis from which the duties of good faith and fair dealing flow"); *Chapel v. BAC Home Loans Serv., LP*, No–C11–5882-BHS, 2012 WL 727135, *4 (W.D. Wash. Mar.6, 2012) (dismissing claim "based on [Plaintiff's] failure to show which terms of the contract give rise to a claim for breach of the duty of good faith and fair dealing").

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss on these points. The Court **DENIES** Defendants' Motion to Dismiss the breach of contract and breach of duty of good faith and fair dealing claims of Elaine Hunter as to Nationstar. The Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiff Keith Hunter, and from both Plaintiffs against HSBC, on these claims.

D. <u>Intentional and/or Negligent Infliction of Emotional Distress</u>

Plaintiffs allege a claim for "intentional and/or negligent infliction of emotional distress" as to Defendant Nationstar. Dkt. # 51 at ¶¶ 277-87. Plaintiffs must prove three elements to succeed on their claim for intentional infliction of emotional distress: "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress." *Lyons v. U.S. Bank Nat. Ass'n,* 181 Wn.2d 775, 792, 336 P.3d 1142, 1151 (2014) (citing *Kloepfel v. Bokor,* 149 Wn.2d 192, 195, 66 P.3d 630 (2003)). A claim for intentional infliction of

emotional distress, or "outrage," requires the alleged conduct to be objectively "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*

Plaintiffs' outrage claim generally restates the allegations from Plaintiffs' other claims. Dkt. # 51 at ¶¶ 277-87. However, simply because actions may violate other provisions such as the CPA does not necessarily mean they support a claim of outrage. *Lyons*, 181 Wn.2d at 792 ("While perhaps the actions might have violated the DTA and could support a claim under the CPA, the acts are not sufficiently outrageous to support a claim for outrage."). Plaintiffs fail to connect these other alleged violations to the elements of an outrage claim. Moreover, Plaintiffs do not allege any damages in the form of emotional distress. As it did in its first iteration, Plaintiffs' outrage claim again fails; to the extent they exist, Plaintiffs' allegations under this claim are mere "formulaic recitation of the elements of a cause of action," and in the absence of factual detail are wholly insufficient to state a claim. *Twombly,* 550 U.S. at 555.

As such, the Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiffs' outrage claim.

### E. Leave to Amend

"The court should freely give leave [to amend pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). To determine whether justice so requires leave to amend, the court considers "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Exp., Inc*., 885 F.2d 531, 538 (9th Cir. 1989).

The Court will grant Plaintiffs leave to amend their breach of contract and breach of covenant of good faith and fair dealings claims as alleged against HSBC. Although this is Plaintiffs' Third Amended Complaint, the Court had not yet analyzed these claims

before this Order. However, as to Plaintiffs' outrage claim, the Court finds that this claim suffers from substantially the same defects as Plaintiff's previous outrage claim, which this Court dismissed. The Court will not allow endless amendments of this claim when Plaintiffs have failed to show, even after undertaking discovery, that they cannot plead an outrage claim on these facts. When a party repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed pro se plaintiff regarding deficiencies in prior order dismissing claim with leave to amend). Further, "[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

Accordingly, the Court will not permit Plaintiffs to amend their intentional infliction of emotional distress claim and **DISMISSES** this claim **WITH PREJUDICE**. **Within fourteen (14) days of this Order, Plaintiffs may file an amended pleading as to their breach of contract and breach of covenant of good faith and fair dealing claims**. If Plaintiffs fail to do so, this Court will dismiss with prejudice these claims (1) to the extent they are asserted by Plaintiff Keith Hunter; and (2) against HSBC.

### IV. CONCLUSION

For all the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss. Dkt. # 56.

Dated this 11th day of March, 2019.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge