Honorable Richard A. Jones

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KEITH HUNTER, an individual, and ELAINE HUNTER, an individual,

        Plaintiffs,

    v.

BANK OF AMERICA, N.A.; SPECIALIZED LOAN SERVICING, LLC, a Delaware limited liability company; NATIONSTAR MORTGAGE, LLC, a Delaware limited liability company; QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, a Washington corporation; HSBC BANK USA, N.A., as Trustee for Merrill Lynch Mortgage Investors, Inc., Mortgage Pass-Through Certificates, MANA Series 2007-OAR2; JOHN DOES NO. 1-10,

        Defendants.

Case No. 2:16-cv-01718 RAJ

**NATIONSTAR MORTGAGE LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

**ORAL ARGUMENT REQUESTED**

NOTE ON MOTION CALENDAR:
Plaintiffs MSJ: July 17, 2020
Cross Motion: July 17, 2020

**Holland & Knight LLP**
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................1

II.     UNDISPUTED FACTS .........................................................................3

        A.      THE LOAN .................................................................................3

        B.      SERVICING OF THE LOAN BY SLS AND DENIAL OF LOAN
                MODIFICATION .........................................................................4

        C.      SERVICING TRANSFER TO NATIONSTAR AND ONBOARDING OF THE
                LOAN ..........................................................................................4

        D.      NATIONSTAR REVIEWS THE LOAN FOR A MODIFICATION .................5

        E.      NATIONSTAR MEDIATES WITH KEITH AND ELAINE HUNTER AND
                OFFERS A LOAN MODIFICATION, WHICH MS. HUNTER DECLINES ..........6

III.    LEGAL STANDARD ............................................................................7

IV.     ARGUMENT .......................................................................................8

        A.      NATIONSTAR HAS NOT VIOLATED THE CPA ...................................9

                1.      NATIONSTAR DID NOT COMMIT AN UNFAIR OR
                        DECEPTIVE ACT ...............................................................9

                2.      PLAINTIFFS CANNOT DEMONSTRATE AN INJURY
                        UNDER THE CPA .............................................................20

                3.      PLAINTIFFS CANNOT DEMONSTRATE CAUSATION
                        UNDER THE CPA .............................................................20

        B.      KEITH HUNTER HAS NO STANDING TO ASSERT CPA CLAIMS...............21

        C.      NATIONSTAR IS ENTITLED TO SUMMARY JUDGMENT ON THE
                BREACH OF CONTRACT AND DUTY OF GOOD FAITH AND FAIR
                DEALING CLAIMS.........................................................................22

V.      CONCLUSION ...................................................................................23

NATIONSTAR'S OPPOSITION TO AND CROSS MOTION
FOR SUMMARY JUDGMENT: Case No. 2:16-cv-01718 RAJ -
Page ii

#75516968_v1

**Holland & Knight LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

# TABLE OF AUTHORITIES

**Cases**             **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................8

*Badgett v. Sec. State Bank*,
   116 Wn.2d 563 (1991) ...........................................................................22

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................7, 8

*Fair Housing Council of Riverside County, Inc. v. Riverside Two*,
   249 F.3d 1132 (9th Cir. 2001) ..............................................................8

*Frias v. Asset Foreclosure Servs., Inc.*,
   181 Wn.2d 412 (2014) .............................................................................9

*Golbeck v. Johnson Blumberg & Assocs.*,
   LLC, No. 16-CV-6788, 2017 WL 3070868 (N.D. Ill. July 19, 2017) ....................10

*Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*,
   150 Wn.2d 791 (2004) ...........................................................................21

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
   105 Wn.2d 778 (1986) .............................................................................9

*Leingang v. Pierce County Med. Bureau, Inc.*,
   131 Wn.2d 133 (1997) .............................................................................9

*Lisson v. Wells Fargo Bank, N.A.*,
   No. 50909-1-II, 2019 WL 3577859 (Wash. Ct. App. Aug. 6, 2019) ...............17, 19

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) .................................................................................8

*Necak v. Select Portfolio Servicing, Inc.*,
   No. 1:17 CV 1473, 2019 WL 1877174 (N.D. Ohio Apr. 26, 2019) .....................10

NATIONSTAR'S OPPOSITION TO AND CROSS MOTION
FOR SUMMARY JUDGMENT: Case No. 2:16-cv-01718 RAJ -
Page iii

#75516968_v1

**Holland & Knight LLP**
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*,
   210 F.3d 1099 (9th Cir. 2000) ............................................................................7

*Panag v. Farmers Ins. Co. of Washington*,
   166 Wn. 2d 27 (2009) ...................................................................................20

*Peterson v. Citibank, N.A.*,
   170 Wn. App. 1035 (2012) (unpublished) ..........................................................21

*Reeves v. Sanderson Plumbing Prods.*,
   530 U.S. 133 (2000) ........................................................................................8

*Rulison v. Yogurt Play, LLC*,
   C13-0454RSL, 2014 WL 868783 (W.D. Wash. Mar. 5, 2014)................................12

*Schnall v. AT&T Wireless Servs., Inc.*,
   171 Wn.2d 260 (2011) ..................................................................................9, 20

*Sorrel v. Eagle Healthcare, Inc.*,
   110 Wn. App. 290 (2002) ..............................................................................9, 21

*St. John Med. Ctr. v. State ex rel. Dep't of Soc. & Health Servs.*,
   110 Wn. App. 51 (2002) ..................................................................................22

*T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n*,
   809 F.2d 626 (9th Cir. 1987) ............................................................................8

*Thomas v. Specialized Loan Servicing, LLC*,
   76644-9-I, 2018 WL 3853877 (Wash. Ct. App. Aug. 13, 2018) ............................20

*Triton Energy Corp. v. Square D Co.*,
   68 F.3d 1216 (9th Cir. 1995) ............................................................................8

*Villiarimo v. Aloha Island Air, Inc.*,
   281 F.3d 1054 (9th Cir. 2002) ..........................................................................8

*Zetwick v. Cty. of Yolo*,
   850 F.3d 436 (9th Cir. 2017) ............................................................................8

NATIONSTAR'S OPPOSITION TO AND CROSS MOTION
FOR SUMMARY JUDGMENT: Case No. 2:16-cv-01718 RAJ -
Page iv

#75516968_v1

**Holland & Knight LLP**
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300

**Statutes**

RCW 61.24.135 ...........................................................................................17

RCW 61.24.163 ...............................................................................16, 17, 21

**Regulations**

12 C.F.R. § 1024.38 .......................................................................11, 15, 21

12 C.F.R. § 1024.40 .......................................................................10, 15, 21

**Federal Rules**

Fed. R. Civ. P. 56.................................................................................1, 7

Fed. R. Ev. 801 ...................................................................................12

Fed. R. Ev. 803 ...................................................................................12

Fed. R. Ev. 804 ...................................................................................12

NATIONSTAR'S OPPOSITION TO AND CROSS MOTION
FOR SUMMARY JUDGMENT: Case No. 2:16-cv-01718 RAJ -
Page v

#75516968_v1

**Holland & Knight LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

## DECLARATION OF COMPLIANCE WITH STANDING ORDER

The undersigned counsel certifies that a conference was held with counsel for Plaintiffs Keith and Elaine Hunter ("Plaintiffs") regarding this motion, but that the parties were not able to resolve the matters in dispute. A conference was scheduled by email correspondence to discuss the parties' motions and contemplated cross-motions, and took place by telephone on May 26, 2020. The undersigned counsel further followed up with a voicemail on June 12, 2020 to Plaintiffs' counsel to confirm that the parties had conferred and that further conferral would not be likely to lead to a resolution.[1]

## OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT

Defendant Nationstar Mortgage LLC ("Nationstar"), by and through the undersigned counsel, moves the court under Fed. R. Civ. P. 56 for an order granting summary judgment in its favor on Plaintiffs' claims for violation of the Washington Consumer Protection Act ("CPA"), breach of contract, and violation of the duty of good faith and fair dealing.

## I.     INTRODUCTION

This action presents three claims against Nationstar: (1) a claim for violation of the CPA; (2) a claim for breach of contract; and (3) a claim for breach of the duty of good faith and fair dealing. Each claim fails as a matter of law. Plaintiffs' Motion For Partial Summary Judgment on the CPA claim should be denied, and Nationstar's Cross-Motion For Summary Judgment on all claims should be granted. The undisputed facts of this matter show not only that Plaintiffs cannot meet their burden to establish any claims against Nationstar, but further establish that Nationstar is entitled to judgment as a matter of law.

First, Nationstar's involvement in Ms. Hunter's mortgage loan arose only in April 2014, long after any alleged problems with servicing occurred, and after Ms. Hunter's loan was in

---

[1] On May 14, 2020, Plaintiffs filed a Motion for Summary Judgment as to HSBC and others. Dkt. 76. Plaintiffs did not confer with counsel for HSBC before filing that motion. Declaration of Garrett S. Garfield in Support of Motion For Summary Judgment ("Garfield Decl.") ¶ 2. Nor do Plaintiffs certify that such a conferral occurred. Dkt. 76.

NATIONSTAR'S OPPOSITION TO AND CROSS-MOTION FOR SUMMARY JUDGMENT: CASE NO. 2:16-cv-01718 RAJ - PAGE 1

#75516968_v1

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

default. Servicing of the loan successfully transferred to Nationstar from the prior servicer, and there is no evidence that any documents or information were omitted during the service-transfer. Moreover, after the service-transfer, Nationstar continued to review a pending loan modification application that Ms. Hunter had submitted, which was then denied because she did not submit the necessary information. Plaintiffs' allegations that there were any improprieties in the service-transfer are not supported in the record, and their CPA claim fails to the extent it is based on such allegations.

Second, when Nationstar and Ms. Hunter engaged in foreclosure mediation in 2016, the record shows that Nationstar offered a favorable loan modification that would have brought the long-delinquent loan current. Ms. Hunter declined the modification. Moreover, the foreclosure mediator certified that Nationstar acted in good faith in the mediation. Again, Plaintiffs' allegations that Nationstar's conduct in the foreclosure mediation was improper in any way are not merely unsupported by the record—they are contradicted. Plaintiffs' CPA claim fails to the extent it is based in allegations that Nationstar did not properly participate in foreclosure mediation.

Third, Plaintiff Keith Hunter is not a party to the loan and has no standing to assert any claims arising from servicing of the loan. To the extent Mr. Hunter purports to advance any claims on his own behalf, the claims fail as a matter of law, and Nationstar is entitled to judgment.

Fourth, Nationstar is entitled to summary judgment on Ms. Hunter's further claims for breach of contract and breach of the duty of good faith and fair dealing. The undisputed evidence shows that Nationstar properly adjusted the interest rate on Ms. Hunter's loan at all times. That evidence further shows that Nationstar did not fail to "recast" the loan in 2017; rather, the monthly mortgage statements reflect the fact that the loan remains due for the November 2011 payment. Ms. Hunter's contract-based claims against Nationstar fail as a matter of law.

For all these reasons, and as set out in detail below, this court should deny Plaintiffs' motion for partial summary judgment, and should grant Nationstar's motion for summary judgment on each of Plaintiffs' claims.

NATIONSTAR'S OPPOSITION TO AND CROSS-MOTION FOR SUMMARY JUDGMENT: CASE NO. 2:16-cv-01718 RAJ - PAGE 2

#75516968_v1

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300

## II.    UNDISPUTED FACTS

### A.    The Loan

In 2006, Plaintiff Elaine Hunter signed a promissory note (the "Note") to Countrywide, secured by a deed of trust ("Deed of Trust") (together, the "Loan") concerning the property located at 7022 NE 170th Street in Kenmore, Washington (the "Property"). Dkt. # 51 at ¶¶ 10–18; Declaration of Simon C. Ward Brown in Support of Motion For Summary Judgment ("Nationstar Decl.") Ex. 1.  The Note is payable to HSBC Bank USA, N.A., as Trustee for Merrill Lynch Mortgage Investors, Inc., Mortgage Pass-Through Certificates, MANA Series 2007-OAR2 ("HSBC") and is currently serviced by Nationstar.  Nationstar Decl. Ex. 1 at 23; ¶ 2.  Plaintiff Keith Hunter resides in the Property, but is not a party either to the Note or the Deed of Trust. Dkt. # 51 at ¶ 17; Nationstar Decl. Ex. 1.

The Note is a negative amortizing note.  Nationstar Decl. Ex. 1. Under the terms of the Note, Ms. Hunter had the option to make a "minimum payment" during the first five years of the Loan, or until the Loan reached the maximum negative amortization cap.  *Id.* Ex. 1 at 20. The minimum payment was less than the total interest due, so the unpaid interest was added to the principal amount upon each such payment. *Id.*  The terms of the Note permitted such minimum payments only until the unpaid principal balance reached 115% of the principal amount originally borrowed, termed the Maximum Negative Amortization Cap.  *Id.* Ex. 1 at 19.  Once the Loan reached the Maximum Negative Amortization Cap, the Note required Ms. Hunter to make at least the total monthly interest due as the minimum payment.  *Id.* Ex. 1 at 20.

The Loan also included a recast provision.  Nationstar Decl. Ex. 1 at 20.  Once the Loan reached the recast date, the minimum payment would be recalculated to the monthly amount necessary to pay the Loan off in full by the maturity date of the note in substantially equal payments based on then-current interest rates.  Id. Ex. 1 at 20. The Loan also included an adjustable interest rate which was set at 7.250% for the first five years of the Loan term, and then adjusted on February

NATIONSTAR'S OPPOSITION TO AND CROSS-MOTION
FOR SUMMARY JUDGMENT: CASE NO. 2:16-cv-01718 RAJ -
PAGE 3
#75516968_v1

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

1, 2012, and every twelfth month thereafter, in accordance with the Libor index. Nationstar Decl. Ex. 1 at 19–20.

Ms. Hunter made the minimum payment on the Loan until it reached the Maximum Negative Amortization Cap in 2011 (before Nationstar began servicing the Loan). Nationstar Decl. Ex. 2; Declaration of Garrett S. Garfield in Support of Motion For Summary Judgment ("Garfield Decl.") Ex. 1 ("Brown Dep."), at 48:11–49:17. Thus, for each minimum payment, the amount of unpaid interest was added to the principal balance. Nationstar Decl. Ex. 2. The Loan remains due for the November 2011 payment. *Id*. ¶ 10.

**B.**      **Servicing of the Loan By SLS and Denial Of Loan Modification**

Specialized Loan Servicing LLC ("SLS") serviced the Loan before servicing transferred to Nationstar on April 1, 2014. Nationstar Decl. ¶ 3. The materials in the Loan file show that SLS denied a Loan modification application submitted by Ms. Hunter. Specifically, on or about February 10, 2014, SLS sent Ms. Hunter a letter stating that it was evaluating her request for a modification, but that certain documents were missing. *Id*. Ex. 3. SLS requested missing documentation by February, 25, 2014. *Id*. On or about February 27, 2014, SLS sent Ms. Hunter a letter explaining that it was not able to evaluate her Loan for a modification because requested documents were not provided. *Id*. Ex. 4. On or about March 9, 2014, Plaintiffs submitted another modification application to SLS. *Id*. Ex. 5.

**C.**      **Servicing Transfer to Nationstar and Onboarding of the Loan**

Nationstar began servicing the Loan on or about April 1, 2014, at which time the total amount due on the Loan was $140,843.36. Nationstar Decl. Ex. 6. Nationstar continues to service the Loan to this day. *Id*. ¶ 2. Ms. Hunter has not made any payments on the Loan while Nationstar has serviced the Loan. *Id*. ¶ 10.

When Nationstar began servicing, it onboarded the Loan pursuant to its rigorous onboarding process. Nationstar Decl. ¶ 3. It also located the March 9, 2014 modification application and determined that it had not been denied by SLS before transfer of servicing. *Id*. ¶ 9.

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300

1  Nationstar received data showing a complete Loan transaction history from SLS and verified the

2  amount that was due and owing on the Loan.  Nationstar Decl.  ¶ 3.  Nationstar confirmed its

3  understanding of the amount due and owing with Ms. Hunter in an April 14, 2014 correspondence.

4  *Id*. Ex. 6.  Ms. Hunter did not dispute the amount stated as due and owing in the April 14, 2014

5  correspondence.  *Id*. ¶ 10.

6         **D.      Nationstar Reviews the Loan for a Modification**

7         In or about May 2014, Nationstar determined that it needed an updated profit and loss

8  statement for 2014 (the profit and loss statement previously submitted was from 2013) and a 2013

9  tax extension form, so that it could consider the Loan for a modification.  *Id*. ¶ 11.  On or about

10 May 23, 2014, Ms. Hunter or her representative sent a message to Nationstar through its online

11 message portal asking about the status of the request for a loan modification.  *Id*. Ex. 7.  That same

12 day, Nationstar responded by directing the inquirer to the place in the online portal listing the status

13 of the Loan modification.  *Id*.  It is Nationstar's regular practice to also note in that part of the web

14 portal the additional or updated documents that are needed for a modification review, which would

15 have notified the Hunters that an updated profit and loss statement for 2014 and a 2013 tax

16 extension form were missing from their modification application.  *Id*. ¶ 11.

17        On or about June 14, 2014, Nationstar sent Ms. Hunter a letter explaining that it was not

18 able to offer her a modification.  Nationstar Decl. Ex. 8 at 1.  The letter indicated that the Loan

19 had been evaluated for three types of modifications.  *Id*. First, the Loan was evaluated for a HAMP

20 Tier I modification, but the Loan was declined because the unpaid principal balance was higher

21 than the program limit.  *Id*.  The unpaid principal balance as of April 14, 2014 was $1,147,279.62.

22 *Id*. Ex. 6 at 2.  In order to qualify for a HAMP Tier I modification, the unpaid principal balance

23 could not exceed $729,750.  Nationstar Decl. Ex. 8 at 1.  Because the unpaid principal balance was

24 $1,147,279.62, the Loan was not eligible for a HAMP Tier I modification.

25        The Loan was also evaluated for a HAMP Tier II modification, but the Loan was ineligible

26 for the same reason: in order to qualify for HAMP Tier II, the unpaid principal balance could not

NATIONSTAR'S OPPOSITION TO AND CROSS-MOTION
FOR SUMMARY JUDGMENT: CASE NO. 2:16-cv-01718 RAJ -
PAGE 5
#75516968_v1

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

exceed $729,750.  Nationstar Decl. Ex. 8 at 1.  Finally, the Loan was evaluated for a standard modification, but declined because Ms. Hunter did not provide the necessary materials, including the profit and loss statement for 2014 and a 2013 tax extension form.  *Id.*

During the course of servicing the Loan, Nationstar adjusted the interest rate on March 1, 2015, and every March 1st thereafter while it has serviced the Loan.  Nationstar Decl. Ex. 9.

**E.     Nationstar Mediates with Keith and Elaine Hunter and Offers a Loan Modification, Which Ms. Hunter Declines**

Because the Loan was in longstanding default, Nationstar began nonjudicial foreclosure proceedings in 2015. Nationstar Decl. ¶ 14.  In 2016, Nationstar engaged in foreclosure mediation with Ms. Hunter in accordance with Washington law. Nationstar participated in three separate mediation sessions with Ms. Hunter, as follows: on January 11, 2016, March 28, 2016, and April 20, 2016.  *Id.* Ex. 10.  Nationstar participated in foreclosure mediation on behalf of HSBC as its attorney in fact.  *Id.* ¶ 15; Ex. 11.

After the first mediation session, Nationstar offered Ms. Hunter a loan modification (on or about February 10, 2016).  Nationstar Dec. Ex. 12.  Nationstar performed a Net Present Value test in advance of offering the modification; the Net Present Value test does not itself affect the terms of a potential loan modification, rather it informs the underwriter whether the loan is eligible for a loan modification review.  *Id.* ¶ 14.

The terms of Nationstar's offer were as follows: Ms. Hunter was required to make a qualifying payment of $16,338.39 (which would be applied to outstanding fees and charges on the Loan), certain outstanding amounts on the Loan would be capitalized and added to the unpaid principal balance, and the interest rate would be lowered to 2.000% from February 1, 2016 through January 31, 2018.  Nationstar Decl. Ex. 12 at 1, 6.  The amount of the monthly payment would also be lowered to $6,685.85.  *Id.* Ex. 12 at 6.  Beginning on February 1, 2018, the Loan would revert to the payment terms under the Note.  *Id.*  Under the terms of the Note, the interest rate adjusts every March 1st based on the current LIBOR rate, plus 2.25%.  *Id.* Ex. 1 at 19, Ex. 9.  At

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

the time Nationstar made the modification offer in February 2016, it was not possible to determine what the interest would adjust to on March 1, 2018. *Id*. ¶ 16. However, the interest rate on the Loan was 2.875% at the time the modification was offered, and was set to increase to 3.375% for the payment due on March 1, 2016. *Id*. Ex. 9 at 3.

Those terms were consistent with the terms approved by Wells Fargo, the master servicer. In an email to Nationstar, Wells Fargo authorized a two-year fixed interest rate, after which the interest rate would revert to the adjustable rate under the Note. Nationstar Decl. Ex. 13. Wells Fargo indicated that the offer was for a temporary fixed rate modification in the "Modified/New column" where it indicates that the "Product Type" is "ARM (temp fixed to arm)."[2] *Id*. Ex. 13 at 1. Because the 2018 rate could not be determined two years in advance, Wells Fargo simply indicated the adjustable rate currently in effect as the rate for the third year of the modification to indicate that the Loan would revert to the adjustable rate in 2018. *Id*. ¶ 17; Ex. 13 at 2.

To accept the offer, Ms. Hunter needed to sign and return the modification agreement by March 1, 2016. Nationstar Dec. Ex. 12. Ms. Hunter did not accept the Loan modification offer. Nationstar Decl. ¶ 16. No agreement was reached as a result of the further mediation sessions. *Id*. Ex. 10. The mediator certified that both parties had mediated in good faith. *Id*.

## III. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact that would preclude judgment as a matter of law. FRCP 56(a). The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party does not bear the burden at trial, it can carry its initial burden by presenting evidence that negates an essential element of the nonmoving party's case, or by establishing that the non-movant lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

---

[2] ARM stands for "adjustable rate mortgage." Nationstar Decl. ¶ 17.

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300

If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and identify "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. A "material" fact is one that is (1) "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and (2) the materiality of which is "determined by the substantive law governing the claim." *T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). "The proper question … is whether, viewing the facts in the non-moving party's favor, summary judgment for the moving party is appropriate." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp.*, 477 U.S. at 323–24.

Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Also, uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Conclusory, nonspecific statements in affidavits are also not sufficient, and missing facts cannot be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990). In short, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1220 (9th Cir. 1995). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150–51 (2000). When parties file cross-motions for summary judgment each motion "must be considered on its own merits." *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

IV.  **ARGUMENT**

Plaintiffs' CPA claim requires them to prove of five elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in

NATIONSTAR'S OPPOSITION TO AND CROSS-MOTION
FOR SUMMARY JUDGMENT: CASE NO. 2:16-cv-01718 RAJ -
PAGE 8

#75516968_v1

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300

his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986). "Failure to satisfy even one of the elements is fatal to a CPA claim." *Sorrel v. Eagle Healthcare, Inc.*, 110 Wn. App. 290, 298 (2002).

Whether a particular act or practice is "unfair or deceptive" is a question of law. *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 150 (1997). The CPA limits compensable injuries to "'injury to [the] plaintiff in his or her business or property.'" *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wn.2d 412, 430 (2014) (alteration in original) (quoting *Hangman Ridge*, 105 Wn.2d at 780). A plaintiff must show that the alleged injury would not have occurred "but for" the defendant's unlawful acts. *Schnall v. AT&T Wireless Servs., Inc.*, 171 Wn.2d 260, 278 (2011) (citation omitted).

## A. Nationstar Has Not Violated the CPA

Plaintiffs' CPA claim against Nationstar is premised in two theories, both of which are contradicted by the evidence. First, Plaintiffs contend that Nationstar did not properly onboard the Loan in 2014. Second, Plaintiffs contend that Nationstar did not participate in foreclosure mediation in good faith. The claim fails as a matter of law because the record discloses that neither theory is correct. In fact the record establishes that Plaintiffs cannot satisfy at least three of the elements of their CPA claim against Nationstar: unfair or deceptive act, injury, and causation. Because the evidence shows that the elements of Plaintiffs' CPA claim cannot be met, the court should deny Plaintiffs' Motion For Partial Summary Judgment, and should grant Nationstar's Cross-Motion For Summary Judgment.

### 1. Nationstar Did Not Commit an Unfair or Deceptive Act

Plaintiffs' claim fails for the basic reason that they cannot show any unfair or deceptive act on Nationstar's part. Plaintiffs lob numerous theories against the wall, but none of them stick when viewed in light of the evidence. Each will be addressed in turn.

NATIONSTAR'S OPPOSITION TO AND CROSS-MOTION FOR SUMMARY JUDGMENT: CASE NO. 2:16-cv-01718 RAJ - PAGE 9

#75516968_v1

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300

1                               *a)*           *Nationstar Properly Onboarded the Loan*

Plaintiffs' onboarding claim is based on the assertion that federal regulations direct servicers to (1) "look for and identify missing documents in the transfer and to ensure that a complete servicing file was obtained from the prior servicer[, including] any loan modification applications, and any other loss mitigation efforts undertaken with the prior servicer, as well as any information that had been submitted in support of an application," (2) "continue processing the already-submitted application," and (3) "to identify with 'specificity' the options available, and to evaluate the borrower for 'all' of them."  Dkt. 76 at 14 (citing 12 C.F.R. § 1024.38(b)-(c) and 12 C.F.R. § 1024.40(b)).

As an initial matter, Plaintiffs claim fails because it relies on a misinterpretation of 12 C.F.R. § 1024.38(b)-(c) and 12 C.F.R. § 1024.40(b). Section 1024.38(b), as relevant here, requires servicers to *maintain policies and procedures* that are reasonably designed to provide accurate and timely information to borrowers about their loan, loss mitigation options, identify documents or information that may not have been transferred by a prior servicers.  12 C.F.R. § 1024.38(b)(1), (2), (4).  The consensus in district courts across the country is that there is no private right of action under § 1024.38, which consensus naturally follows because the regulation does not apply to actions taken with respect to individual borrowers.  *See Golbeck v. Johnson Blumberg & Assocs.*, LLC, No. 16-CV-6788, 2017 WL 3070868, at *9 (N.D. Ill. July 19, 2017) (collecting cases re section 1024.38).  And 12 C.F.R. § 1024.40(b), as relevant here, requires servicers to *maintain policies and procedures* that are reasonably designed to inform the borrower about loss mitigation options, actions the borrower must take to be evaluated for loss mitigation options, and the status of submitted loss mitigation options.  There is also no private right of action under § 1024.40, which also makes sense because the regulation also does not apply to actions taken with respect to individual borrowers.  *Necak v. Select Portfolio Servicing, Inc.*, No. 1:17 CV 1473, 2019 WL 1877174, at *6 (N.D. Ohio Apr. 26, 2019) (no private right of action).  Section 1024.38(c) pertains to documents a servicer is required to maintain on each loan in its file, and for how long and does

NATIONSTAR'S OPPOSITION TO AND CROSS-MOTION
FOR SUMMARY JUDGMENT: CASE NO. 2:16-cv-01718 RAJ -
PAGE 10

#75516968_v1

HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

not appear to be relevant to Plaintiffs' claims. There do not appear to be any cases in any federal district recognizing a private right of action under § 1024.38.

Plaintiffs' claim thus amounts to an unfounded attempt to shoehorn a CPA violation based on regulations for which there is no recognized private right of action. But even if violation of federal regulations could properly be considered in support of a CPA claim, Plaintiffs have nonetheless failed to present any evidence that Nationstar failed to properly maintain policies and procedures in compliance with all applicable regulations.

Turning to Plaintiffs' allegations themselves, the record evidence contradicts each of Plaintiffs' assertions. Plaintiffs first argue that Nationstar failed to properly onboard the Loan and to take action with respect to the pending loan modification application submitted to the previous servicer. *See* Dkt 76 at 14. The argument suffers from two fatal deficiencies. First, there is no evidence whatsoever that Nationstar did not properly acquire the Loan file from the prior servicer, and Plaintiffs do not point to any. Second, there is similarly no admissible evidence that the prior servicer had approved a loan modification, or that Nationstar otherwise did not properly review any pending application.

              (1)    <u>Nationstar properly obtained all information from the prior servicer</u>

First, the evidence shows that Nationstar has a rigorous onboarding process that was used to onboard the Loan. Nationstar Decl. ¶ 3. The materials received in the onboarding process show that SLS had denied Ms. Hunter's application for a loan modification shortly before transferring service via a February 27, 2014 letter explaining that SLS was not able to evaluate the Loan for a modification because requested documents were not provided. *Id*. Ex. 4. On or about March 9, 2014, Plaintiffs submitted another loan modification application to SLS which was not expressly denied before the Loan service-transferred. Nationstar Decl. Ex. 5.

Plaintiffs fail to identify any admissible evidence demonstrating that they provided the missing documents to SLS before the Loan service-transferred, that SLS had approved a

NATIONSTAR'S OPPOSITION TO AND CROSS-MOTION
FOR SUMMARY JUDGMENT: CASE NO. 2:16-cv-01718 RAJ -
PAGE 11
#75516968_v1

HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300

modification, or that the file was otherwise complete at SLS, but incomplete at Nationstar. Rather, Plaintiffs point only to an inadmissible hearsay statement purportedly made to Plaintiffs' representative. However, even that statement confirms that SLS did not actually offer Plaintiffs a loan modification at any point. *See* Declaration of Brian Carl, Dkt. 78 ¶ 5 ("my contact at SLS informed me that she had received approval for a loan modification. But she informed me that the investor was transferring servicing and because of this, the loan modification *could not be approved by SLS.*") (emphasis added). There is no indication in the business records Nationstar obtained in the service-transfer that a loan modification had been approved, and no other admissible evidence to that effect whatsoever. Moreover, Carl's statement is hearsay, and is not admissible to support Plaintiffs' claim. FRE 801(a), (c); *Rulison v. Yogurt Play, LLC*, C13-0454RSL, 2014 WL 868783, at *2 (W.D. Wash. Mar. 5, 2014) ("Hearsay is inadmissible unless it falls within a hearsay exception under FRE 803, 804, or 807.").

In further attempts to support this claim, Plaintiffs misinterpret Nationstar's deposition testimony. Plaintiffs assert incorrectly that "Nationstar admitted it did not follow [Consumer Financial Protection Bureau] guidelines and that its practice was to rely on borrowers for information because it was easier than talking to another large organization. Donckers decl. at Ex. 21 at 74:18-20." Dkt. 76 at 25. But that is not what Nationstar's representative said. To the contrary, the testimony in fact shows that Nationstar needed updated information, not that any information had failed to transfer:

> 22 Q. Does someone from loss mitigation department at
> 23 Nationstar, you know, when they're looking to see that
> 24 there's an active application, can they call, email SLS?
> 25 A. Why would they call SLS?
> Page 74
> 1 Q. If something looks like it's missing. If they
> 2 send two pages out of 40 pages, it says Page 1 of 40 and
> 3 2 of 40 and then nothing else?
> 4 A. They certainly could, but that didn't happen in
> 5 this case. The documentation that was being requested
> 6 was -- at least the core financial documentation was

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300

7 merely outdated.
8 Q. The P&L?
9 A. Correct.
10 Q. I think you said Proof of Occupancy was the
11 other.
12 I guess my question is, and <u>I don't know this to</u>
13 <u>be the case, but if the Hunters had sent a 2014 Profit</u>
14 <u>and Loss to SLS, does Nationstar have the ability to</u>
15 <u>say, listen, it looks like this should be in here, SLS,</u>
16 <u>give it to us?</u>
17 A. I don't see why that would necessarily be the
18 route. Instead of dealing with another large
19 organization, why not just send the request out to the
20 customer directly. If they do have the updated Profit
21 and Loss, I'm sure they kept it for their records
22 because they're working on a loan modification. Pretty
23 easy just to fax or send that in.

Brown Dep. 73:22–74:23. Nor is there any evidence in the record that SLS actually had the out-of-date records at issue in any case.  In short, Plaintiffs fail to identify any "missing" documents from SLS, or any other discrepancy in the service-transfer from SLS.

Plaintiffs next similarly state that Nationstar "admitted that it did not know what SLS, the prior servicer, had reviewed for the Hunters even though Nationstar did know that they had applied for a loan modification and a review was underway. *Id*. at 43:20-21, 45:10-11, 75:6-8."  Dkt. 76 at 25.  Again, Plaintiffs misstate Nationstar's testimony.  Nationstar testified that it understood that the principal reduction program via the DOJ settlement with other servicers was designed for borrowers who were significantly underwater with their mortgage, a criteria Ms. Hunter's Loan did not fit. More to the point, SLS' business records indicated that the Loan was not eligible for the program:

13 * * *. But from
14 my experience with any program that offered principal

15 forgiveness, it had to do with people that were well
16 underwater or they owed much more than what their house
17 was worth, and it was going to take them years and years
18 to ever come back to a break even on that.
19 I don't see that this loan was ever really
20 in that position. And I can't speak to what SLS

NATIONSTAR'S OPPOSITION TO AND CROSS-MOTION
FOR SUMMARY JUDGMENT: CASE NO. 2:16-cv-01718 RAJ -
PAGE 13

#75516968_v1

21 reviewed with respect to that. All I know is that in
22 their notes they addressed that this particular loan was
23 not eligible under the DOJ.

Brown Dep. 43:13–23. Plaintiffs also argue that "Nationstar admitted that it did not even know where a payment of $4,390.35 had come from. *Id*. at 99:9-12." Dkt. 76 at 25. However, Nationstar actually testified simply that it could not recall the source of a $4,390.35 payment held in a suspense account, but that it could determine that if necessary. Brown Dep. 99:6–22. But on top of all this, nothing about any of this testimony shows any failing on Nationstar's part whatsoever, let alone an unfair or deceptive act for purposes of the CPA.

> b) *Nationstar properly considered Ms. Hunters' application for loan modification*

Plaintiffs also assert that Nationstar was required to, but did not, continue processing their already-submitted modification application upon service transfer. Dkt. 76 at 14. That contention is contradicted by the record—in fact, Nationstar attempted to evaluate the Loan for a modification shortly after the service-transfer, but was unable to offer a modification because Ms. Hunter did not qualify for certain programs, and did not provide updated information. Nationstar Decl. Ex. 8.

Despite the undisputed fact that Nationstar did review the Loan for modification after the service-transfer, Plaintiffs nonetheless attempt to point to the June 14, 2014 letter Nationstar sent to Ms. Hunter denying a loan modification at that time. Plaintiffs assert that the letter falsely stated that documents had been requested and were missing, but that argument is also contradicted by the record. On or about May 23, 2014, Ms. Hunter or her representative sent a message to Nationstar through its online message portal asking about the status of the request for a loan modification. Nationstar Decl. Ex. 7 at 2. That same day, Nationstar responded by directing the inquirer to the place in the online portal listing the status of the loan modification. Nationstar Decl. Ex. 7 at 3. It is Nationstar's regular practice to also note in that part of the web portal the additional or updated documents that are needed for a modification review, which would have notified the Hunters that an updated profit and loss statement for 2014 and a 2013 tax extension form were missing from

NATIONSTAR'S OPPOSITION TO AND CROSS-MOTION
FOR SUMMARY JUDGMENT: CASE NO. 2:16-cv-01718 RAJ -
PAGE 14

#75516968_v1

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300

their application.  *Id*. ¶ 11.  Ms. Hunter never provided updated documents, and the modification

was denied.  *Id*. 8.[3]

Plaintiffs further assert that Nationstar did not acknowledge whether any other programs

were available such as the "the DOJ loan modification" or programs from HSBC, or Wells Fargo

(the master servicer).  First, the argument fails as a matter of law because there are no legal

requirements for Nationstar to acknowledge consideration of any such programs.  *See* 12 C.F.R.

§§ 1024.38(b), (c); 12 C.F.R. § 1024.40(b).

Second, even if there were a legal obligation to acknowledge particular "programs" in a

loan modification letter, Plaintiffs cannot meet their burden of proof with vague allegations of

unspecified "programs."  To the extent Plaintiffs contend that the Loan qualified for a program not

addressed by Nationstar, Plaintiffs bear the burden to (1) identify the program, (2) demonstrate

that Nationstar could have offered that program, and (3) demonstrate that Ms. Hunter's Loan was

eligible.  They have not done so. For example, Plaintiffs' Motion For Partial Summary Judgment

refers to a "DOJ Settlement," but fails to explain in any way that the Loan was eligible or that

Nationstar had any ability to offer such a program.

Indeed, Plaintiffs' own evidence confirms that the "DOJ Settlement" has no bearing on any

claims relating to Nationstar. In response to written discovery requests on this topic, Plaintiffs

directed      Nationstar      to      http://www.nationalmortgagesettlement.com/national-mortgage-

settlement.html for the "material terms" of the "DOJ Global Settlement."  Garfield Decl. Ex. 2 at

2–3; Ex. 3.  However, review of those terms discloses that (1) the settlement was administered by

the parties to the settlement (GMAC, Bank of America, Citi, JPMorgan Chase, and Wells Fargo)

and a settlement administrator, (2) notices were sent to eligible borrowers in 2012 and 2013, and

(3) the deadline for filing a claim was in January and September 2013.  Garfield Decl. Ex. 3.  Here,

---

[3] Moreover, immediately after the Loan was denied for a modification, Keith Hunter requested an in-person meeting to discuss loan modification options. Nationstar Decl. Ex. 7 at 4.  That meeting occurred on or about August 22, 2014, at which time Nationstar discussed modification guidelines with Mr. Hunter.  *Id*. Ex. 7 at 6.  Mr. Hunter stated he would provide a financial packet within five days.  *Id*.  However, no such financial package was provided until August 2015, nearly a year later.  *Id*. ¶ 12.

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

Nationstar was not a party to that settlement and did not begin servicing the Loan until April 2014. *Id.*; Nationstar Decl. ¶ 3.  The evidence in the record thus can only show that Nationstar had no obligation or even ability to consider a modification under the program at any time.

Plaintiffs have similarly failed to identify any other putative "program" for which the Loan was allegedly eligible. Garfield Decl. Ex. 2 at 3–7. Nor is there any other evidence of the existence of any such programs, let alone that the Loan would have qualified or that Nationstar would have been able to offer them.

For all these reasons, Plaintiffs fail to identify any evidence to show that Nationstar's servicing fell short of the mark in any way. There is no evidence to show any violation of federal regulations governing loan servicing, no evidence to show violation of the CPA, and no evidence of any wrongdoing at all. Nationstar is thus entitled to summary judgment to the extent Plaintiffs' CPA claim relates to onboarding of the Loan or review of loan modification applications.

*c) Nationstar's Conduct at the FFA Mediation Did not Violate the CPA*

Nationstar participated in three mediation sessions with Plaintiffs in 2016, in accordance with Washington law requiring mediation in connection with foreclosures. Nationstar Decl. Ex. 10; RCW 61.24.163.  In connection with the mediation, Plaintiffs submitted a complete package of financial information necessary to complete a review. *Id.* ¶ 14.  Nationstar reviewed the information and offered a loan modification, although Ms. Hunter declined it. *Id.* Ex. 10. The foreclosure mediator then certified that both parties had participated in good faith.  *Id.*

On these undisputed facts, the portion of Plaintiffs' CPA claim arising from the foreclosure mediation fails as matter of law.  Before the mediation, Washington law requires the servicer to provide an itemized set of documents to the mediator and borrower that will assist in the mediation (*e.g.*, the payment history, arrearage, Net Present Value inputs, etc.). RCW 61.24.163(5). During mediation, participants must "address the issues of foreclosure that may enable the borrower and the beneficiary to reach a resolution, including but not limited to reinstatement, modification of the loan, restructuring of the debt, or some other workout plan." RCW 61.24.163(9).  Thus,

NATIONSTAR'S OPPOSITION TO AND CROSS-MOTION
FOR SUMMARY JUDGMENT: CASE NO. 2:16-cv-01718 RAJ -
PAGE 16

#75516968_v1

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

Washington law does not require the offer of a loan modification. Failure to mediate in good faith is an unfair or deceptive act under the CPA, RCW 61.24.135(2)(a), and may include failure to (1) timely participate in mediation without good cause, (2) provide required documentation, or (3) send a representative with settlement authority. RCW 61.24.163(10). "A mediator's certification that the beneficiary or its agent participated in good faith has 'binding legal effects.'" *Lisson v. Wells Fargo Bank, N.A.*, No. 50909-1-II, 2019 WL 3577859, at *10 (Wash. Ct. App. Aug. 6, 2019) (unreported) (citing *Brown v. Washington State Dep't of Commerce*, 184 Wn.2d 509, 518 (2015).

Plaintiffs fail to show that Nationstar did not mediate in good faith, or that it otherwise violated the CPA in any way. As an initial matter, the mediator's certificate is binding on this issue. *Lisson*, No. 50909-1-II, 2019 WL 3577859, at *10. The mediator did not find that Nationstar mediated in bad faith, which is conclusive. Nationstar Decl. Ex. 10. Each of Plaintiffs' further unsupported contentions is also addressed in turn.

Next, Plaintiffs fail to support their contention that Nationstar was "unwilling to discuss and explain the range of alternatives to foreclosure that were available" at the FFA mediation. Dkt. 76 at 26. As explained above, Plaintiffs have failed to identify a single putative "program" that was an "available" alternative to foreclosure. Garfield Decl. Ex. 2 at 2–7. Specifically, Plaintiffs fail to point to any evidence in the record that identifies any loan modification program for which Ms. Hunter's Loan was eligible and that Nationstar had the ability to offer. Plaintiffs refer obliquely to the "DOJ Settlement," but as explained above, Plaintiffs' own evidence shows that the DOJ Settlement was not available at the time of the mediation, nor was Nationstar a party to such settlement in any case. Plaintiffs further refer vaguely to an HSBC "principal write-down" program, but fail to identify any evidence to show that such a program exists, what its terms and eligibility requirements are, or how such a program would have been applicable to Ms. Hunter's Loan. Perhaps more to the point, Nationstar did in fact offer a loan modification with favorable terms to Ms. Hunter, but the modification was rejected. The record thus can only show that

NATIONSTAR'S OPPOSITION TO AND CROSS-MOTION
FOR SUMMARY JUDGMENT: CASE NO. 2:16-cv-01718 RAJ -
PAGE 17

#75516968_v1

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300

1   Nationstar did consider Ms. Hunter for all available options, but that she was simply unwilling to

2   accept what was available.

3       Nor is there any support for Plaintiffs' contention that the modification Nationstar offered

4   was less generous than the one approved by the master servicer, Wells Fargo.  Dkt. 76 at 16.

5   Instead, the evidence shows only that the terms of the offered modification were completely

6   consistent.  Nationstar Decl.  ¶ 17.  Plaintiffs argue that Wells Fargo offered a three-year

7   modification "under which the Hunters would be charged interest at 2 percent in 2016 and 2017

8   and then adjusted to 3.375% in 2018."  Dkt. 76 at 16.  Plaintiffs are incorrect.  Wells Fargo

9   authorized a temporary, two-year fixed interest rate, after which the interest rate would revert back

10  to the adjustable rate under the Note.  Nationstar Ex. 13.  Because the rate that would be in effect

11  two years in the future could not be predicted, Wells Fargo simply indicated the adjustable rate

12  currently in effect as the rate after the temporary fixed rate period ended. *Id*. ¶ 17; Ex. 13.  The

13  email from Wells Fargo states this in the "Modified/New column" where it indicates that the

14  "Product Type" is "ARM (temp fixed to arm)."  *Id*. Ex. 13. The modification that Nationstar

15  offered—which would have locked in a 2.0% rate for two years before reverting to the adjustable

16  rate—is precisely consistent with the approval received from Wells Fargo.

17      Plaintiffs' remaining contentions likewise fail. The argument that "Nationstar utilized the

18  incorrect interest rate in its [Net Present Value] analysis" is both incorrect and immaterial.  First,

19  the interest rate listed in the Net Present Value ("NPV") analysis is accurately listed as 7.250%

20  because that is the interest rate for the next payment due (the November 1, 2011 payment), as

21  Nationstar explained in its deposition testimony:

22      19 * * *. One of them says
        20 Original Note Rate, 7.25, Current Note Rate,
23      21 7.25 percent. Is that accurate?
        22 A. It is because it's reverting back to the payment
24      23 that's due on the account for November of 2011 which was
        24 still 7.25 percent until March of 2012.
25

26

NATIONSTAR'S OPPOSITION TO AND CROSS-MOTION
FOR SUMMARY JUDGMENT: CASE NO. 2:16-cv-01718 RAJ -
PAGE 18
#75516968_v1

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

Brown Dep. 150:19–24. The designation of the interest rate as 7.250% simply reflects the fact that the rate on an adjustable rate loan necessarily fluctuates over time, but that the NPV form only reflects the rate in effect for the currently-due payment. As explained above, however, Nationstar's actual calculations of interest used the correct, adjusted rate at all times. Nationstar Ex. 9. In other words, the underlying mathematics relating to interest calculations are correct, and Plaintiffs do not and cannot show otherwise.

Second, the NPV analysis is simply used to determine eligibility for a loan modification, and does not bear on the terms that are actually offered. Nationstar Decl. ¶ 14. Here, Nationstar did determine that the Loan was eligible for modification, and did offer a modification. *Id*. Ex. 12. The precise calculations used in this case would thus be immaterial even if there were any evidence to show that they were inaccurate. For the same reasons, Plaintiffs' contention that Nationstar should have obtained a full appraisal or broker price opinion rather than an automated valuation cannot support their CPA claim. Plaintiffs point to no evidence showing that a different valuation method could have resulted in a different NPV, or otherwise affected the terms of the loan modification that were in fact offered.[4]

Finally, Plaintiffs assert without further support that Nationstar's purported failures amounted to bad faith conduct in the foreclosure mediation, and thus to a CPA violation. The evidence in the record is to the contrary. The foreclosure mediator expressly certified the results of the mediation as required by Washington law, and made no finding of bad faith by either party, which is binding. Nationstar Decl. Ex. 10; *Lisson*, No. 50909-1-II, 2019 WL 3577859, at *10. On top of this, the fact remains that Nationstar offered Ms. Hunter a favorable loan modification that she declined to accept. There is thus no evidence whatsoever to support Plaintiffs' CPA claim as it relates to foreclosure mediation, and Nationstar is entitled to summary judgment.

---

[4] Indeed, it is a common misconception among borrowers that an increased valuation figure increases the chances of a loan modification. In fact, an increased valuation *increases* the value to the lender of foreclosure, making it more likely that a given property will fail an NPV test. Brown Dep. at 146:11–147:5.

NATIONSTAR'S OPPOSITION TO AND CROSS-MOTION FOR SUMMARY JUDGMENT: CASE NO. 2:16-cv-01718 RAJ - PAGE 19
#75516968_v1

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300

### 2. *Plaintiffs Cannot Demonstrate an Injury Under the CPA*

As explained above, Plaintiffs' cannot show that Nationstar committed an unfair or deceptive act for purposes of the CPA. Plaintiffs' CPA claim further fails for the independently-sufficient reason that Plaintiffs cannot demonstrate any injury for purposes of the CPA. Plaintiffs bear the burden of proving at trial that they suffered injury, which presents a separate inquiry from damages. *Panag v. Farmers Ins. Co. of Washington*, 166 Wn. 2d 27, 58 (2009) ("Injury is distinct from damages.") (internal quotations omitted).

In this regard, Plaintiffs argue that Nationstar's alleged failures with the service-transfer and foreclosure mediation caused interest and charges on the Loan to accumulate and compound. Dkt. 76 at 27. Plaintiffs also argue without citation to evidence that they spent significant time communicating with Nationstar to no avail. *Id*. These contentions are insufficient as a matter of law. Interest and charges were accumulating long before Nationstar received servicing of the Loan, and continued to do so under the terms of the Loan afterward. Plaintiffs do not and cannot show that any such amounts are inconsistent with the Loan terms. Plaintiffs further do not provide any *evidence* to demonstrate that they suffered any other type of injury by communicating with Nationstar. Because Plaintiffs cannot establish injury, their CPA claim necessarily fails.

### 3. *Plaintiffs Cannot Demonstrate Causation Under the CPA*

Finally, Plaintiffs also fail to establish the causation element required by the CPA. Specifically, Plaintiffs must show that any alleged injury to their business or property would not have occurred but for Nationstar's alleged failure to prepare for mediation and/or ensure it received a complete file from SLS. *Schnall*, 171 Wn.2d at 278 (plaintiff must show alleged injury would not have occurred "but for" unlawful acts). As described above, any interest or charges on the Loan are the result of Ms. Hunter's default on the Loan years before Nationstar took over servicing. Nationstar's conduct is not the "but for" cause of any of those fees. *See, e.g.*, *Thomas v. Specialized Loan Servicing, LLC*, 76644-9-I, 2018 WL 3853877, at *4 (Wash. Ct. App. Aug. 13, 2018) (unpublished), *review denied*, 192 Wn.2d 1018 (2019) (plaintiff failed to show causal link between

NATIONSTAR'S OPPOSITION TO AND CROSS-MOTION FOR SUMMARY JUDGMENT: CASE NO. 2:16-cv-01718 RAJ - PAGE 20

#75516968_v1

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300

1  alleged unfair/deceptive practice (misrepresentation of foreclosure sale) and injury (loss of home

2  and attorney fees) because plaintiff had defaulted on the Loan payments and did not cure the

3  default; Plaintiffs' "default, and not any misrepresentation as to the sale date, was the "but for"

4  cause of the loss of [Plaintiffs'] home.")"; *Peterson v. Citibank, N.A.*, 170 Wn. App. 1035, *4 (2012)

5  (unpublished) (borrowers' own default caused foreclosure proceedings "regardless of MERS's

6  conduct as the beneficiary under the deed of trust"). There simply is no evidence of any injury

7  connected to Nationstar's conduct.  Plaintiffs' failure to establish causation "is fatal to a CPA

8  claim." *Sorrel*, 110 Wn. App. at 298.

9       **B.      Keith Hunter has No Standing to Assert CPA Claims**

10      Plaintiff Keith Hunter is not a party to the Loan that is at the heart of this case.  Although

11  Mr. Hunter lives in the Property, the CPA claim directed against Nationstar arises solely from

12  Nationstar's obligations to Ms. Hunter stemming from the Loan itself.  Mr. Hunter, a non-party to

13  the Loan, would have no basis to complain about Nationstar's Loan servicing even if there were

14  any evidence that the servicing had been improper in some way.

15      Washington has a two-part test for determining whether a party has standing to bring a

16  particular action. *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 802

17  (2004).  First, the court should consider whether the interest asserted is arguably within the zone

18  of interests to be protected by the statute in question. *Id*. Second, the court should consider whether

19  the party seeking standing has suffered from an injury in fact, economic or otherwise. *Id*. Both

20  tests must be met. *Id*. Here, Mr. Hunter lacks standing because he is not within the zone of interests

21  to be protected by the various statues cited in support of the CPA claim (the FFA (RCW 61.24.163)

22  or Regulation X (12 C.F.R. §§ 1024.38(b), (c), 12 C.F.R. § 1024.40(b)), nor has he suffered an

23  injury in fact. First, each statutory scheme is expressly designed to protect *borrowers* who enter

24  into residential mortgage loan transactions. Mr. Hunter is not a borrower here and has no

25  contractual or other relationship with Nationstar. Although he may purport to represent his mother

26  with respect to the Loan, that does not make him a party to the Loan or grant him standing.

NATIONSTAR'S OPPOSITION TO AND CROSS-MOTION
FOR SUMMARY JUDGMENT: CASE NO. 2:16-cv-01718 RAJ -
PAGE 21
#75516968_v1

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

Similarly, Mr. Hunter cannot point to any injury that would be distinct in from any hypothetical injury suffered by the borrower. Nationstar is accordingly entitled to summary judgment on the CPA claim to the extent it is asserted by Mr. Hunter as opposed to Ms. Hunter.

### C. Nationstar is Entitled to Summary Judgment on the Breach of Contract and Duty of Good Faith and Fair Dealing Claims

Nationstar is further entitled to summary judgment on Ms. Hunter's two remaining claims for breach of contract and breach of the duty of good faith and fair dealing.[5] Ms. Hunter alleges that Nationstar breached the terms of the Note by failing to adjust properly the interest rate and monthly payments and failing to recast the Loan in 2017. Dkt. # 51 at ¶¶ 255–65. These claims fail because the evidence establishes that Nationstar did properly adjust the Loan's interest rate at all times, and because there is no evidence in this record that the Loan did not properly recast.

For a breach of contract claim, Plaintiffs must prove: (1) the existence of a contract, (2) a material breach, and (3) resulting damage. *St. John Med. Ctr. v. State ex rel. Dep't of Soc. & Health Servs.*, 110 Wn. App. 51, 64 (2002). In addition, "[t]here is in every contract an implied duty of good faith and fair dealing," which "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569 (1991). "[T]he duty arises only in connection with terms agreed to by the parties." *Id.*

The undisputed evidence establishes that Nationstar properly adjusted the interest rate and monthly payments on each March 1st from 2015 to the present, as provided for under the Note. Nationstar Decl. Ex. 1 at 14. Nationstar notified Ms. Hunter of these adjustments each year in correspondence. Nationstar Decl. Ex. Ex. 9.[6] There is no issue of material fact: Nationstar properly adjusted the interest rate pursuant to the terms of the Note. Brown Dep. 84:25–85:20; 86:9–11; 95:16–23; 95:25–97:8.

---

[5] Ms. Hunter has not moved for summary judgment on these particular claims.

[6] Those adjustments are also shown in reinstatement quotes generated on the Loan, which show, for instance, the principal and interest payment adjusting, on March 1, 2015 to reflect the new interest rate. Nationstar Decl. Ex. 14; *see also* Brown Dep. 101:22–104:17.

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300

1     Next, there is no evidence in this record that the Loan did not recast pursuant to the terms

2  of the Note.   Plaintiffs complain that the Loan did not recast because Nationstar's monthly

3  mortgage statements stated that the interest rate was 7.25% and requested interest-only payments.

4  Dkt. 51 at 20.  The Loan remains due for the November 2011 payment when the interest rate was

5  7.25 percent, and Nationstar's monthly mortgage statements reflect that reality.   Nationstar

6  Decl. ¶ 10.  If Plaintiffs had made regular monthly payments to the present, the monthly mortgage

7  statements would have reflected the recasting of the Loan pursuant to the terms of the Note. *Id*.

8  But because the Loan remains due for the November 2011 payment, the monthly mortgage

9  statements reflect that status of the Loan. *Id*.  Accordingly, Nationstar did fail to recast the Loan.

10    For these reasons, Nationstar is entitled to summary judgment on the contract-based claims.

11  **V.     CONCLUSION**

12    For all the foregoing reasons, Nationstar respectfully requests that the court deny Plaintiffs'

13  Partial Motion for Summary Judgment and instead grant its Cross-Motion for Summary Judgment

14  as to the CPA, breach of contract, and duty of good faith and fair dealing claims.

15    DATED:  June 22, 2020.

    HOLLAND & KNIGHT LLP

16

17

18    By:  *s/ Garrett S. Garfield*
        David J. Elkanich, WSBA No. 35956
19       E-mail: david.elkanich@hklaw.com
        Garrett S. Garfield, WSBA No. 48375
20       E-mail: garrett.garfield@hklaw.com
        Nellie Q. Barnard, WSBA No. 50587
21       E-mail: nellie.barnard@hklaw.com
        601 SW Second Avenue, Suite 1800
22       Portland, OR 97204
        Telephone:  503.243.2300
23       Fax:  503.241.8014

24       *Of Attorneys for Nationstar Mortgage LLC &*
        *HSBC Bank USA, N.A. as Trustee for Merrill*
25       *Lynch Mortgage Investors, Inc., Mortgage*
        *Pass-Through Certificates, MANA Series 2007-*
26       *OAR2*

NATIONSTAR'S OPPOSITION TO AND CROSS-MOTION
FOR SUMMARY JUDGMENT: CASE NO. 2:16-cv-01718 RAJ -
PAGE 23
#75516968_v1

**HOLLAND & KNIGHT LLP**
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300