HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| KEITH HUNTER, an individual, and ELAINE HUNTER, an individual, <br><br>                    Plaintiffs, <br><br>    v. <br><br>BANK OF AMERICA, N.A.; NATIONSTAR MORTGAGE LLC, a Delaware limited liability company; HSBAC BANK USA, N.A., as Trustee for Merrill Lynch Mortgage Investors, Inc., Mortgage Pass-Through Certificates, MANA Series 2007-OAR2; QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, a corporation, <br><br>                    Defendants. | No. 2:16-cv-01718-RAJ <br><br>PLAINTIFF'S CONSOLIDATED REPLY AND OPPOSITION RE: SUMMARY JUDGMENT ON CLAIMS AGAINST NATIONSTAR AND HSBC <br><br>**Note on Motion Calendar:** <br><br>**July 17, 2020** |

PLAINTIFF'S CONSOLIDATED REPLY AND
OPPOSITION RE: SUMMARY JUDGMENT ON CLAIMS
AGAINST NATIONSTAR AND HSBC
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.     PERTINENT FACTS IN RESPONSE AND REPLY ............................................ 1

        A.      Nationstar and HSBC violated the Court's meet and confer requirement
        before moving for summary judgment ....................................................................... 1

        B.      There is no genuine dispute that Nationstar failed to obtain a complete
        servicing file from the prior servicer. ....................................................................... 3

III.    ARGUMENT ........................................................................................................ 4

        A.      Undisputed facts establish that Nationstar violated the CPA. ...................... 4

        1. Nationstar failed to obtain all documents from SLS. ...................................... 4

        2. Nationstar ignored the Hunters' pending loan modification application. .......... 6

        3. Nationstar failed to identify and consider the Hunters for other modifications
        that were available. ...................................................................................................... 8

        4. Nationstar failed to prepare for and participate in FFA mediation in good faith
        and as required by the DTA. .......................................................................................... 11

        5. The FFA mediator did not find Nationstar mediated in good faith; his failure to
        find bad faith does not establish good faith under the law, or in this Court. ..... 14

        6. Nationstar committed other servicing abuses ............................................... 15

        B.      Nationstar's other arguments raise legal issues that have already been
        rejected by this Court and others. ............................................................................. 16

        1. This Court and others have determined that violations of federal servicing
        regulations may establish the unfair or deceptive practice prong of the CPA. . 16

        2. Nationstar cannot defeat causation and injury. ............................................. 17

        C.      Nationstar breached the Note and its duties of good faith and fair dealing.
                20

        D.      Undisputed facts establish the HSBC violated the CPA ............................ 21

        1. HSBC committed unfair and deceptive acts and practices ......................... 21

        2. There is no separate 'standing' element under the CPA .............................. 23

        E.      HSBC is vicariously liable for its servicers' misconduct. ............................ 23

IV.     CONCLUSION ................................................................................. 24

PLAINTIFF'S CONSOLIDATED REPLY AND
OPPOSITION RE: SUMMARY JUDGMENT ON CLAIMS
AGAINST NATIONSTAR AND HSBC
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

## I.   INTRODUCTION

In an effort to reduce materials before the Court, Plaintiffs have consolidated their briefing in reply on summary judgment with their responses in opposition to both motions brought by Defendants Nationstar and HSBC.

Plaintiffs' motion for partial summary judgment should be granted against both Defendants because material facts are not in dispute.  Nationstar did not obtain a complete loan file from the prior servicer, did not communicate with the Plaintiffs about what it had, and ignore the loan modification that was pending when servicing transferred, only to deny it, summarily, and without explanation, months later.  There also is no material dispute of fact that Nationstar, and the beneficiary, HSBC, failed to prepare for and participate in mediation as required by the FFA.  Other servicing abuses and issues are addressed below.  The Defendants' cross-motions should be denied because they rely on facts that are contrary to the record or unsupported by it.

## II.   PERTINENT FACTS IN RESPONSE AND REPLY

### A.   Nationstar and HSBC violated the Court's meet and confer requirement before moving for summary judgment

On November 22, 2016, the Court entered a standing order requiring the parties to meet and confer before filing any motion. Dkt. No. 13 at ¶5. On May 13, 2020, Plaintiffs contacted Defendants Nationstar and HSBC Bank by telephone. Dkt. No. 77 at ¶44. Plaintiffs told Nationstar and HSBC that Plaintiffs intended to move for summary judgment, that basic facts in support of Plaintiffs' CPA claims against Nationstar and HSBC are undisputed, and the motion presented an opportunity to narrow the issues before the Court for trial. *Id.*  The following day, Plaintiffs filed their motion for partial summary judgment.  Dkt. No. 76.

In their response and cross-motions, Nationstar and HSBC allege that Plaintiffs did not confer with Defendants as required by the Court's standing order.  Dkt. No. 91 (NSM's Motion) at 1 and Dkt. No. 93 (HSBC's Motion) at 1.  Defendants fail to

PLAINTIFF'S CONSOLIDATED REPLY AND
OPPOSITION RE: SUMMARY JUDGMENT ON CLAIMS
AGAINST NATIONSTAR AND HSBC - 1
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1  acknowledge the meet and confer that occurred by telephone on May 13, 2020 and the

2  certification attesting to it, plainly stated in the declaration of Plaintiffs' counsel

3  accompanying Plaintiffs' Motion.  *See* Dkt. No. 77 at ¶44.

4        Defendants also fail to acknowledge that their counsel, on May 13, welcomed

5  the motion because it presented an opportunity to narrow the issues for trial.

6  Declaration of Brendan W. Donckers at ¶2. Defendants have apparently forgotten that

7  their lawyer reiterated this position during the parties' conference with the Court on

8  June 3, agreeing that the briefing would narrow the issues before the Court.  *Id.*

9        Leading with accusations that are so clearly and demonstrably false is striking

10  because it is Nationstar and HSBC that failed to meet the requirements of the Court's

11  standing order.  There has been no conference among counsel discussing the

12  substance and possible narrowing of issues in Defendants' motions.  Donckers decl. at

13  ¶3.  While it is true that all counsel met and conferred on May 26 to discuss the timing

14  and scheduling of all parties' briefs, none of the Defendants even mentioned any

15  substance underlying the motions they intended to file.  *Id.*  Counsel for Nationstar and

16  HSBC was so circumspect that it was unclear whether both of his clients intended to

17  move or only one of them.  *Id.*

18        Counsel for Nationstar and HSBC alleges that he "followed up with a voicemail"

19  on June 12, but Plaintiffs' counsel did not receive any such message.  Donckers decl.

20  at ¶4.  It is unclear, if Defendants' counsel intended to comply with the Court's standing

21  order, why he did not follow the parties' practice of emailing opposing counsel to

22  schedule a specific time to talk by phone.  *Id.*  The failure to do so here is significant

23  not simply because it violates the Court's order, but it ignores Plaintiffs' specific request

24  to do so. During a phone conference with HSBC on January 31, 2020, Plaintiffs asked

25  HSBC to confer with Plaintiffs before filing a dispositive motion because Plaintiffs would

26  consider voluntarily narrowing the issues before the Court.  *Id.*  Counsel's failure to

27  follow the Court's order prevented this discussion from ever occurring.  *Id.*

PLAINTIFF'S CONSOLIDATED REPLY AND
OPPOSITION RE: SUMMARY JUDGMENT ON CLAIMS
AGAINST NATIONSTAR AND HSBC - 2
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

**B.      There is no genuine dispute that Nationstar failed to obtain a complete servicing file from the prior servicer.**

There is no question that, contrary to Nationstar's assertions, it never obtained the complete files on the Hunters' loan when it took over servicing from the prior servicer, SLS.  On January 10, 2020, Plaintiffs served a document subpoena on SLS for all documents related to the Hunters' loan.  Donckers decl. at **Ex. 1**. SLS did not object to the subpoena and did not timely respond.  *Id.* at ¶5.  Three months later, on April 13, counsel for Nationstar (and HSBC) emailed Plaintiffs' counsel and stated that his law firm was retained to "assist with" responding to the subpoena.  *Id.* at ¶6.

On May 22, after Plaintiffs' had filed their motion for partial summary judgment, a lawyer from that firm produced 1,536 pages of documents from SLS.  *Id.* at ¶6.  After reviewing the production, Plaintiffs' counsel identified several categories of missing documents and met and conferred with SLS's counsel. *Id.* Several hundred additional pages were produced in early June, but many are still being collected. *Id.* However, the production already shows there were broad categories of documents and information in SLS's file that Nationstar never obtained when it took over the loan 2014.  *Id.*

For example, SLS produced monthly mortgage statements, escrow statements, credit reports, property valuations, broker price opinions, accounting information, servicing notes, and even general communications with Plaintiffs, all of which Nationstar never had.  A sample of this is attached.  *See e.g.*, Donckers decl. at **Ex. 2**.

Critically, Nationstar did not produce a "full loan transaction history" from SLS. Dkt. No. 77-2 at Ex. 2 (Cipollone Report) at p. 22  "Without having, at the very least, the entire life of loan transaction history, Nationstar does not have the ability to attest to the accuracy of the amounts claimed to be due."  *Id.* at p. 23.  As discussed below, this has bearing on Plaintiffs' claims against Nationstar and its principal, HSBC.

PLAINTIFF'S CONSOLIDATED REPLY AND OPPOSITION RE: SUMMARY JUDGMENT ON CLAIMS AGAINST NATIONSTAR AND HSBC - 3 (No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

### III.    ARGUMENT

**A.    Undisputed facts establish that Nationstar violated the CPA.**

Plaintiffs moved for summary judgment against Nationstar under the CPA because it: (1) failed to obtain a complete file from the prior servicer and failed to communicate clearly with the borrower about the information it had; (2) ignored the Hunters' pending application for a loan modification; (3) failed to identify and consider alternative loss mitigation options; (4) failed to prepare for FFA mediation and failed to participate in mediation in good faith; and (5) committed other servicing abuses.  Dkt. No. 76 at pp. 8-13, 18-21.  The material facts in support of these claims are not genuinely disputed and Nationstar's other, legal arguments are contrary to clear authority.  Plaintiffs are entitled to partial summary judgment on liability.

**1.    Nationstar failed to obtain all documents from SLS.**

When a mortgage loan servicer takes over a loan from another servicer, it must take prompt, affirmative action to ensure it obtained a complete file from the prior servicer, and must communicate clearly with a borrower about the information it gets. 12 C.F.R. §§ 1024.38(b)(1)-(4) and (c)(1)-(2); 12 C.F.R. § 1024.40(b)(1)-(4). Nationstar was obligated to follow up with SLS to ensure it had everything from SLS. *Id.*; *see also* Cipollone Report at 22 and Declaration of Diane Cipollone at ¶3.

Plaintiffs' servicing practices and loss mitigation expert concluded that Nationstar did *not* have a "full loan transaction history" from SLS.  Cipollone Report at p. 22; *see also* Cipollone decl. at ¶¶3-6.  Ms. Cipollone's report identified categories of documents that would need to be included in a servicing file "at a minimum:" all mortgage statements, escrowed items and analysis, fees, all correspondence, including letters and notices, and logs and notes of conversations with borrowers. Cipollone Report at 10.  If the borrower had, like the Hunters, submitted an application for loss mitigation, the file would also need to include all loss mitigation notes and all analyses of the borrower's eligibility pursuant to specific investor's criteria, and

PLAINTIFF'S CONSOLIDATED REPLY AND OPPOSITION RE: SUMMARY JUDGMENT ON CLAIMS AGAINST NATIONSTAR AND HSBC - 4 (No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

available options for every evaluation conducted.  *Id.* at 11.  Nationstar does not respond to Ms. Cipollone's report but insists that it has a "rigorous onboard process" that yielded "all" information from SLS.  Dkt. No. 91 at 11-14.  The production of documents from SLS shows that assertion to be completely false.

SLS, produced 1,536 pages of documents in its initial production and several hundred more pages in early June.  Donckers decl. at ¶6.  Numerous categories of basic information identified in Ms. Cipollone's report were not obtained Nationstar when the loan transferred, including information about the payment history.  Cipollone decl. at ¶¶4-6.  This includes monthly mortgage statements that show charges on Plaintiffs' property, escrow statements that also include information about charges assessed against Plaintiffs, credit reports, valuations that were undertaken on the property, including broker price opinions, accounting information, servicing notes, and even general communications SLS sent to Plaintiffs.  *See e.g.* Donckers decl. at **Ex. 2**.

Nationstar's characterization of its onboarding process as "rigorous" and its insistence that it obtained "all" information from SLS despite evidence showing the opposite only shows that Nationstar, years *after* onboarding the loan, still has no clue what actions SLS did or did not take while servicing Plaintiffs' mortgage.  This includes the Hunters' pending loan modification application and a $4,390.35 payment the Hunters made that Nationstar refused to credit because it does not know where it came from or when it was made.  Dkt. No. 77-5 at **Ex. 21** at 74:18-20.  Nationstar does not attempt to explain this in its response, stating only that it could make the determination "if necessary."  Dkt. No. 91 at 14.  Its failures violate federal regulations, including those that require transferee servicers to "identify necessary documents or information that may not have been transferred" and "obtain such documents from the transferor servicer," as well as maintain all "notes created by servicer personnel reflecting communications with the borrower" and providing borrowers with "accurate" information about the "loss mitigation options available," actions that must be taken, and the status

PLAINTIFF'S CONSOLIDATED REPLY AND
OPPOSITION RE: SUMMARY JUDGMENT ON CLAIMS
AGAINST NATIONSTAR AND HSBC - 5
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

of any applications.  *See* Cipollone Report at pp. 21-23; *see also* 12 C.F.R. §§ 1024.38(b)(2)(i)-(v); 1024.38(b)(4)(ii); and 1024.38(c)(2)(iii); 12 C.F.R. § 1024.40(b)(1)-(2); 12 C.F.R. §1024.41(b)-(c).

Nationstar's attempts to create a dispute of material fact on this issue are unavailing.  In fact, the evidence is consistent with what other states investigating Nationstar's servicing practices have found.  *See* Cipollone decl. at ¶9 (California regulators found that Nationstar had "inadequate policies and procedures" to ensure its employees contacted prior servicers when issues had arisen with those servicers).

### 2.   Nationstar ignored the Hunters' pending loan modification application.

Nationstar now *admits* that the March 9, 2012 loan modification application Plaintiffs submitted to SLS was pending when servicing transferred, but questions whether the application was approved or even complete before servicing transferred. Dkt. No. 91 at 10-12.[1]  But these questions are not material to Plaintiffs' claims. Nationstar is liable under the CPA because it did not *know* whether SLS had approved the application and it then made no effort to find out.  Nationstar did not know what the Hunters provided to SLS and did not know what SLS did with it because, as discussed above, it did not receive the entire loan file and did not follow up with SLS to get it.

Records from SLS show that Nationstar knew or had reason to know that the March 9 application was complete.  One document Nationstar possessed was an email from SLS to an underwriter stating "Please see if UW can finally be completed for this file.  If you need any Exceptions – Let me know – I will have Mike M add them." Donckers decl. at **Ex. 3**.  Loss mitigation notes from SLS show that it was adding documents to Plaintiffs' file and continuing to process information throughout March.

---

[1] Nationstar objects to a statement as hearsay from Plaintiffs' housing counselor, Brian Carl, where he recalls that SLS told him that it had approved the Hunters' loan modification.  Dkt. No. 91 at 12.  This recollection is not material to Plaintiffs' motion and in any case, all statements from SLS, a non-party to this case, are hearsay.  Moreover, Nationstar also relies on hearsay from SLS.  *Id.* at 4.  Plaintiffs are still in the process of obtaining documents from SLS, will depose SLS, and, if necessary, will require its witness(es) to testify at trial.

PLAINTIFF'S CONSOLIDATED REPLY AND OPPOSITION RE: SUMMARY JUDGMENT ON CLAIMS AGAINST NATIONSTAR AND HSBC - 6 (No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1  Although heavily redacted, the information produced includes entries on March 14,

2  March 19, and March 26.  Donckers decl. at **Ex. 2** at HUNTER1533-35.  As Nationstar

3  candidly admits, it did not receive any records to indicate that a modification had been

4  approved.  Dkt. No. 91 at 12.  This is because it never followed up with SLS.  This is

5  confirmed by Nationstar's own representative: "I can't speak to what SLS reviewed with

6  respect to that…I don't know because I don't know what SLS specifically did and

7  whether or not they submitted to Wells Fargo as the master servicer."  Donckers decl.

8  at **Ex. 4** at 43:20-21, 45:10-12.

9        Regardless of whether the application was complete or incomplete, Nationstar

10  was under a duty to "promptly review the application" and provide notice "in writing

11  within 5 days" after receiving the loss mitigation application of whether the application

12  was complete or incomplete.  12 C.F.R. § 1024.41(b)(2)(i)(A)-(B); *see also* Cipollone

13  decl. at ¶13.  The facts before the Court are that Nationstar did neither and instead was

14  following its policy of relying on *borrowers* to identify any issues with their loans.  It

15  does not offer facts to dispute this policy and practice either.  Nationstar merely quotes

16  its own representative's statement, "Instead of dealing with another large organization,

17  why not just send the request out to the customer directly…Pretty easy just to fax or

18  send that in."  Dkt. No. 91 at 13.  Nationstar does not explain away this admission.

19        Nationstar cites a query from the Hunters' housing counselor made through its

20  online portal seeking information about the status of their loan modification application

21  sent to SLS.  Dkt. No. 91 at 14; *see also* Donckers decl. at **Ex. 5**.  Nationstar touts its

22  same-day 'response,' but again, misses Plaintiffs' argument, which is that Nationstar

23  waited for the Hunters to identify issues instead of initiating action as is required by

24  law.  By the time the Hunters did inquire about their pending loan modification

25  application, Nationstar had been servicing the loan for nearly two months, yet still it did

26  nothing to move the Hunters' application forward.  Even this prodding from the Hunters'

27  housing counselor was insufficient to motivate Nationstar into action.  Its 'response'

PLAINTIFF'S CONSOLIDATED REPLY AND
OPPOSITION RE: SUMMARY JUDGMENT ON CLAIMS
AGAINST NATIONSTAR AND HSBC - 7
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

consisted merely of a message in the online portal to look elsewhere.  *Id.* ("select Homeowners Assistance from the drop down menu of your Nationstar Mortgage homepage.  Then select…").  This failed to address the query in substance, and belies Nationstar's testimony that it "would" respond to such a request "to the customer directly."  *Id.*  Nationstar never did that here.  It never told the Hunters what was missing, and is doubtful that Nationstar even knew.[2]  This violates requirements to promptly review a loss mitigation application when it is received and to notify the borrower within 5 days what additional information is needed to complete an application.  *See* 12 C.F.R. §1024.41(b)(2)(i)(A)-(B) (5-day notification requirement).  What is clear, and is undisputed, is that the only information Nationstar sent "to the customer directly" regarding their pending application occurred in June, after a lapse of nearly 3 months, when it told the Hunters that some unspecified application had been denied.  Dkt. No. 77-5 at **Ex. 22**.

Again, the Hunters' experience is consistent with general Nationstar's practices.  The Massachusetts Attorney General found that Nationstar denied loan modification applications on the basis that the borrower had not returned sufficient documents but in fact, Nationstar failed to "adequately or timely communicate the requirements to borrowers." Cipollone decl. at ¶10. In New York, regulators similarly found that "Nationstar's document retention and document management processes showed significant flaws."  *Id.* at ¶11.

### 3.   Nationstar failed to identify and consider the Hunters for other modifications that were available.

Nationstar does not dispute that its June 14, 2014 letter does not identify the loan modification programs it had evaluated Plaintiffs for.  Dkt. No. 91 at 14-16.  It

---

[2] An earlier entry in Nationstar's portal dated May 2, 2014 suggests that it believed the Hunters needed to submit additional financial documentation.  Dkt. No. 97 at Ex. 7 at p. 3.  This is unavailing because Nationstar started servicing on April 1, 2014 and this entry – if accurate – shows that Nationstar did not "promptly" review the application when it started servicing and did not notify Plaintiffs what was missing within 5 days of receipt.  12 C.F.R. §1024.41(b)(2)(i)(A)-(B); *see* Cipollone decl. at ¶¶7, 13-17.

PLAINTIFF'S CONSOLIDATED REPLY AND
OPPOSITION RE: SUMMARY JUDGMENT ON CLAIMS
AGAINST NATIONSTAR AND HSBC - 8
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1  argues that it was not obligated to identify which programs were available to the

2  Hunters.  To the contrary, servicers must provide "accurate information regarding

3  which loss mitigation options" are available and identify "with specificity" all options for

4  which a borrower may be eligible. 12 C.F.R. §1024.38(b)(2)(i)-(ii); *see also* 12 C.F.R.

5  §1024.40(b)(1)(i)-(ii).  Nationstar does not raise a genuine dispute about the availability

6  of other loan modification programs and its obligations under them.

7      It claims that the DOJ loan modification program was administered by other

8  parties and the deadline for filing a claim expired in 2013, before it started servicing the

9  loan.  Dkt. No. 91 at 15.  The claim period Nationstar references is irrelevant, it applied

10  only to borrowers who lost their home to foreclosure between 2008 and 2011.

11  Cipollone decl. at ¶20.  The DOJ settlement "expressly required transferee servicers to

12  accept and continue processing loan modification requests from the prior servicer."  *Id.*

13  at ¶20 and **Ex. 7** (citing pp.3-4 at ¶4 "Payments to Foreclosed Borrowers" and pp. A-

14  31-A32 at Section M, "Transfer of Servicing of Loans Pending for Permanent Loan

15  Modification").  Nationstar knew that it had a responsibility to review the Hunters' loan

16  pursuant to the DOJ settlement as a transferee servicer.  *Id.* at ¶21.  Nationstar does

17  not dispute that the Plaintiffs were determined eligible under the DOJ loan modification

18  program in 2012, that they applied for a DOJ loan modification, and that it had a copy

19  of *that* application.  Dkt. No. 91 at 15; *see also* Donckers decl. at **Ex. 6**.  Nor does it

20  dispute that its own servicing notes show that Nationstar was told that SLS had

21  reviewed the Hunters' loan modification application under the DOJ settlement.  Dkt.

22  No. 97 at **Ex. 7** at p.2.  Nationstar simply failed to take action on it, despite its own

23  awareness of the program and its obligations to do so.  Cipollone decl. at ¶21.

24      Nationstar contends that there is no evidence of the "existence" of other loan

25  modification programs, yet Plaintiffs' forensic accountant, Jay Patterson found <u>254</u> loan

26  modifications that were reported from the pool containing the Hunter loan between

27  2008 and 2019.  Dkt. No. 77-3 at **Ex. 7** (Patterson Report) at 20.  These modifications

PLAINTIFF'S CONSOLIDATED REPLY AND
OPPOSITION RE: SUMMARY JUDGMENT ON CLAIMS
AGAINST NATIONSTAR AND HSBC - 9
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1   included term extensions (81), loan forgiveness (on average $248,489.01 but up to

2   $596,766.93), reduced interest rates (a low of 2%), and balance reductions (up to

3   $603,412.10).  *Id.*  Nationstar acknowledges that HSBC had its own loan modification

4   program, the Principal Write-Down or PWD program, and does not dispute that it too

5   was available.  *See* Dkt. No. 78 (Declaration of Brian Carl) and **Ex. 2** (online

6   presentation detailing HSBC's PWD program).  The "existence" of these other options,

7   with favorable terms including extensions, forgiveness, and balance reductions, is not

8   in genuine dispute.  Nationstar did not identify or consider any of them for the Hunters.

9       Nationstar's argument that the Hunters' loan did not qualify for any of these

10   programs is also unavailing.  Plaintiffs had been determined eligible for several loan

11   modifications.  SLS determined that the Hunters' loan modification under the DOJ

12   program was ready for underwriting to finalize.  Donckers decl. at **Ex. 3**.  Nationstar

13   cites to testimony from its representative stating that Plaintiffs "owed much more than

14   what their house was worth," Dkt. No. 91 at 13, but this testimony is contradicted by a

15   Nationstar employee, who, in 2016, did not believe that the Hunter loan was ineligible

16   for the DOJ program and requested help in finding out why it had not already been

17   given to them.  Donckers decl. at **Ex. 7** ("Rcvd req from NATIONSTAR MORTGAGE

18   Just need clarification as to why the DOJ mod was ruled ineligible.").  Nationstar did

19   not fulfill its responsibility as transferee servicer. Cipollone decl. at ¶21.

20       And beyond this, Randall Lowell, an expert with more than 30 years of

21   experience in loan servicing, underwriting, and loss mitigation performed an

22   underwriting analysis and concluded that loan *did* qualify under the DOJ program and

23   that it did so any time between 2014 and 2016.  Dkt. No. 77-7 at **Ex. 37** at pp. 20-22.

24   He calculated, using the Waterfall Process with numerical inputs from Nationstar's own

25   documentation, the terms at which the program should have been offered.  *Id.* at p. 21,

26   fn. 39-42 (citing Nationstar's documents).  Even as late as February 2016, the DOJ

27   program could have been offered; it would have saved the Hunters $886,084.36.  *Id.*

PLAINTIFF'S CONSOLIDATED REPLY AND
OPPOSITION RE: SUMMARY JUDGMENT ON CLAIMS
AGAINST NATIONSTAR AND HSBC - 10
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

### 4.   Nationstar failed to prepare for and participate in FFA mediation in good faith and as required by the DTA.

Nationstar claims that it complied with the requirements of FFA mediation because it ultimately offered Plaintiffs a "favorable" loan modification and while it admits that mistakes may have been made, it claims they were "immaterial."  Dkt. No. 91 at 17-18.  Nationstar fails to grasp the plain language of the FFA and how mediation is conducted under that statute.

Before mediation occurs, the FFA requires the beneficiary to prepare a net present value (NPV) analysis and to bring that to the mediation.  RCW 61.24.163(5)(g) and RCW 61.24.163(9)(b)-(c).  While Nationstar claims, summarily, that its NPV inputs were accurate and at worse, any errors were immaterial, Dkt. No. 91 at 18-19, this is quickly debunked.  Nationstar admits that the input used for the "Current Note Rate" in the January 14, 2016 NPV data model refers to a five-year old interest rate: "the interest rate for the next payment due (the November 1, 2011 payment)[.]"  *Id.* at 18.  It claims the designation was used because the rate on an adjustable loan fluctuates over time, but insists that "the underlying mathematics relating to interest calculations are correct."  *Id.* at 19.  But the NPV inputs are not subject to the whims of a servicer.  Nationstar was required to use the "Current Note Rate" in its calculations but did not.

Nationstar claims that this error, and its failure to obtain a full appraisal or broker price opinion are immaterial.  Dkt. No. 91 at 19.  It claims that it would have made no difference.  *Id.* (the NPV test "does not itself affect the terms of a potential loan modification, rather it informs the underwriter whether the loan is eligible for a loan modification review.").  But this statement is the "complete opposite" of the relationship between eligibility for a loan modification review and the applicability of the NPV test results.  Cipollone decl. at ¶22.  The NPV test results are relied upon to *determine* the terms of a potential modification.  *Id.*  A beneficiary or servicer looks at the terms, as determined by NPV analysis, and then evaluates whether a modification is more beneficial to an investor than going to foreclosure.  *Id.*  Nationstar would not have even

PLAINTIFF'S CONSOLIDATED REPLY AND
OPPOSITION RE: SUMMARY JUDGMENT ON CLAIMS
AGAINST NATIONSTAR AND HSBC - 11
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1  performed a NPV test if it had not determined that the Hunters met basic eligibility

2  requirements for a loan modification.  *Id.* at ¶24.  Nationstar got it backwards, and its

3  failure to use accurate NPV inputs, both for the then-current interest rate and then-

4  current property value, ensured that Nationstar would be unprepared for mediation.

5        The NPV analysis is just one of several strict procedural requirements imposed

6  under the FFA to ensure that both the borrower and beneficiary thoroughly prepare for

7  mediation by investigating what loan modification programs are available, as well as

8  those that are not, and discuss why, so that all possible alternatives to foreclosure are

9  considered.  RCW 61.24.163(5)-(10).  Even before mediation, the beneficiary must

10  transmit the basis for denying a loan modification, forbearance, or "any other

11  alternative to foreclosure in sufficient detail for a reasonable person to understand."

12  RCW 61.24.163(5)(h).  The participants must have appropriate authority to ensure that

13  all possible resolutions are discussed.  RCW 61.24.163(7)(b).  Nationstar does not

14  dispute that it failed to discuss anything specific with HSBC before mediation.  It

15  discussed only a single, temporary loan modification with Wells Fargo and made an

16  even less generous offer than what Wells Fargo had authorized.[3]

17        Nationstar baldly asserts that it offered a "favorable" loan modification.  Dkt. No.

18  91 at 17.  Its expert characterized the modification – which doubled the Hunters'

19  monthly payments from $4,000 per month to $9,000 per month and required a $16,000

20  lump sum payment – as "REASONABLE."  Donckers decl. at **Ex. 8** (Danieli Report) at

21  p. 8 (emphasis in original).  But it was neither favorable nor reasonable because it was

22  not affordable.  Dkt. No. 78 at ¶9 ("This was not a viable option for a homeowner").

23        As explained by Arthur Ortiz, an attorney that has conducted more than 300

24  FFA mediations, "the FFA standard is 'affordability.'"  Donckers decl. at **Ex. 9** at p. 11.

---

[3] Nationstar disputes Plaintiffs' argument that its 2-year offer fails to track the 3-year offer that Wells Fargo actually approved.  NSM's Motion at 18.  But Nationstar's reading of the communication at issue does not heed the plain language, which states that effective March 1, 2018, the interest rate would adjust to 3.375% a lower rate than the 4.25% interest rate the loan would revert to under the 2-year program Nationstar proposed.  Dkt. No. 77-5 at NSM 2025; Patterson Report at p. 16.

PLAINTIFF'S CONSOLIDATED REPLY AND
OPPOSITION RE: SUMMARY JUDGMENT ON CLAIMS
AGAINST NATIONSTAR AND HSBC - 12
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1  Nationstar's characterizations of 'favorability' and 'reasonableness' are entitled to no

2  deference because they offer "no real, non-subjective way to understand what is

3  reasonable." *Id.* In contrast, the Waterfall Process undertaken by Randy Lowell to

4  evaluate the Hunters' loan under the DOJ program facilitate an understanding of

5  affordability "without relying on speculation or supposition." *Id.* Nationstar did not rebut

6  the substance of Mr. Lowell's report, including his conclusion that the Hunter loan was

7  eligible for the DOJ program based on Nationstar's own metrics. NSM's Motion at 16-

8  19. Nationstar's expert, Ms. Danieli, admitted to not having even heard of the DOJ

9  loan modification program and, although Mr. Lowell explained how it applied to

10 Nationstar, she acknowledged that she still did not understand how it worked. Danieli

11 Report at 8. Even though the DOJ program was expressly raised before mediation,

12 there is no dispute that it was not addressed. *Id.*; *see also* Dkt. No. 78 at ¶10.

13       As discussed above, Nationstar would not have performed an NPV test if it had

14 not already determined that the Hunters met criteria for eligibility. Cipollone decl. at

15 ¶24. And there is abundant evidence of multiple options available to save the Hunters

16 in addition to the DOJ program, including HSBC's PWD program and the 254 loan

17 modifications reported from the pool containing the Hunters' loan between 2008 and

18 2019. Why did Nationstar neither consider nor discuss a principal write-down as

19 contemplated under HSBC's program? *See* Dkt. No. 78 (Carl declaration) at ¶12 and

20 **Ex. 2** at p. 5 ("Program #1 Principal Write-Down Modification Program" and

21 subsequent pages discussing terms). Why did Nationstar neither consider nor discuss

22 the term extensions or hundreds of thousands of dollars in forgiveness and balance

23 reductions that were given to other loans in the pool? *See* Patterson Report at 20.

24 Relying exclusively on a temporary modification that was unaffordable shows how

25 short Nationstar fell of meeting its responsibilities. Nationstar ignores that its failure to

26 identify, consider, and discuss all of these issues flouts the FFA and Plaintiffs' rights to

27 be apprised of all available options to avoid foreclosure, including modification,

PLAINTIFF'S CONSOLIDATED REPLY AND
OPPOSITION RE: SUMMARY JUDGMENT ON CLAIMS
AGAINST NATIONSTAR AND HSBC - 13
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1   restructuring the debt, "or some other workout plan."  RCW 61.24.163(9).  To be clear,

2   the beneficiary must address the borrower's "current and future economic

3   circumstances."  RCW 61.24.163(9)(a).  Nationstar failed to do so.

4        Nationstar's approach to mediation was accurately summed up by its own

5   counsel, who demanded that the Hunters' housing counselor "just hand us the keys."

6   Dkt. No. 78 at ¶9.  Under the FFA, this is bad faith.  *See* RCW 61.24.163(10) (listing

7   examples of the type facts supporting bad faith findings, including the failure to produce

8   appropriate documentation and not showing up with adequate authority to "fully settle,

9   compromise or otherwise reach resolution.").  Nationstar's conduct is sufficient to

10  establish both a non per se and per se CPA violation.  *See* RCW 61.24.135(2)(a)

11  (violating the duty of good faith under RCW 61.24.163 is a per se CPA violation).

12  **5.    The FFA mediator did not find Nationstar mediated in good faith; his**
13  **failure to find bad faith does not establish good faith under the law,**
    **or in this Court.**

14       Finally, Nationstar claims that the mediator's failure to find that Nationstar acted

15  in 'bad faith' is binding."  Dkt. No. 91 at 16-19.  This misrepresents Washington law.

16  The statute itself contemplates rebuttal of a bad faith finding in litigation.

17  RCW 61.24.163(14)(a).  And "nothing in the statute suggests that the mediator's

18  certification is conclusive as to whether the parties mediated in good faith."  *Krusee v.*

19  *Bank of Am., N.A.*, 2013 U.S. Dist. LEXIS 107701, *9 (W.D.Wash. July 30, 2013).  As

20  Chief Judge Ricardo Martinez has found, "the opposite is suggested, and it would

21  seem that the mediator's certification only creates a rebuttable presumption."  *Id.*  The

22  only case Nationstar cites to, *Lisson v. Wells Fargo Bank, N.A.*, 2019 Wash. App.

23  LEXIS 2061, *10 (Aug. 6, 2019), an unpublished decision from the Washington Court

24  of Appeals,  did not state that a mediator's good faith certification is "binding" on the

25  issue of whether a servicer participated in FFA mediation in good faith for purposes of

26  litigation, but only that it allows a beneficiary to proceed with foreclosure.  *Lisson* at

27  *29.

PLAINTIFF'S CONSOLIDATED REPLY AND
OPPOSITION RE: SUMMARY JUDGMENT ON CLAIMS
AGAINST NATIONSTAR AND HSBC - 14
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1    In this case, the mediator did *not* certify that Nationstar participated in good

2  faith. *See* Dkt. No. 97 at **Ex. 10**.  The mediator made no findings as to good or bad

3  faith either way.  *Id.*  Even if he had, those findings are rebuttable with evidence.

4  Indeed, the Court has already found that failing to provide accurate information

5  regarding which loss mitigation options are available, or failing to evaluate, discuss, or

6  offer available options, or proposing to double Plaintiffs' monthly payments and pay a

7  large balloon payment "adequately set forth a violation of the duty of good faith under

8  RCW 61.24.163" and "thus adequately plead an 'unfair or deceptive act'" under the

9  CPA.  Dkt. No. 61 at 8-9. The evidence establishes that Nationstar did not prepare for

10 or participate in mediation as required. This is bad faith and violates the CPA.

11    **6.    Nationstar committed other servicing abuses**

12    The NPV analysis Nationstar used in FFA mediation was not the only time it

13 utilized an incorrect interest rate for calculations.  As discussed in Plaintiffs' opening

14 brief, Nationstar's communications with the Hunters are replete with references to the

15 wrong interest rate.  Dkt. No. 77-5 at **Ex. 28**.  There is no reason to conclude that

16 Nationstar's underlying calculations are correct and Nationstar provides no expert

17 analysis to believe otherwise.  Dkt. No. 91 at 19.  Nationstar asserts, conclusorily, that

18 the "mathematics" are "correct" and that Plaintiffs "cannot show otherwise" but this

19 false because Nationstar does not even have "the life of loan transaction history."

20 Cipollone Report at 22; Donckers decl. at **Ex. 2** (excerpt of documents SLS produced).

21 Ms. Cipollone concluded in her report that "Nationstar does not have the ability to attest

22 to the accuracy of the amounts claimed to be due."  Cipollone Report at 22.  This was

23 corroborated when she reviewed SLS's document production.  Cipollone decl. at ¶5.

24    Nationstar also did not respond to evidence showing that it imposed multiple

25 property inspections on the property over the course of a single month.  Dkt. No. 77-6

26 at **Ex. 30**.  It did not respond to Plaintiffs' argument that it failed to conduct sufficient

27 investigation of amounts owed before moving forward with a foreclosure and

PLAINTIFF'S CONSOLIDATED REPLY AND
OPPOSITION RE: SUMMARY JUDGMENT ON CLAIMS
AGAINST NATIONSTAR AND HSBC - 15
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1  demanded amounts owed that it had no ability to attest to the accuracy of.  "Since

2  Nationstar does not have the prior servicer's complete Payment History, Nationstar

3  could not determine the accuracy of the total amount claimed to be due when

4  Nationstar initiated foreclosure and when it issued payoff statements."  Cipollone decl.

5  at ¶6.  The foreclosure was thus wrongful and the Hunters have deposited

6  approximately $150,000 into the Court's registry to prevent it from happening.

**B.  Nationstar's other arguments raise legal issues that have already been rejected by this Court and others.**

    **1.  This Court and others have determined that violations of federal servicing regulations may establish the unfair or deceptive practice prong of the CPA.**

    Nationstar claims there is no private right of action under federal servicing

regulations.  Dkt. No. 91 at 10-11 (citing district court cases from Illinois and Ohio

holding that there is no private right of action under 12 C.F.R. §§1024.38, 1024.40).

While there *is* a private right of action under 12 C.F.R. §1024.41, Nationstar ignores

that Plaintiffs have not pled a cause of action under federal servicing regulations.  They

have alleged that Nationstar's failure to follow federal servicing regulations serve as the

basis for their unfair and deceptive practice claim under the CPA.  *See* Dkt. No. 51 at

¶¶231, 234 (asserting that violating federal regulations and guidelines is "unfair and

deceptive under the Consumer Protection Act, Chapter 19.86 RCW").

    Indeed, Nationstar already made this argument, Dkt. Nos. 56 and 60, and the

Court rejected it.  Dkt. No. 61 at 9 ("Moreover, the Court finds that Plaintiff has

adequately plead violations of federal laws, which could serve as the basis for a CPA

claim."); *see also id.* ("violations of RESPA could serve as the basis for a CPA

violation." (internal citation omitted)).  Other courts applying Washington's CPA have

reached the same conclusion, and they have done so without limitation.  *See Batson v.*

*Deutsche Bank Trust Ams.*, 2017 U.S. Dist. LEXIS 140380, *6 (E.D.Wash. Aug. 30,

PLAINTIFF'S CONSOLIDATED REPLY AND
OPPOSITION RE: SUMMARY JUDGMENT ON CLAIMS
AGAINST NATIONSTAR AND HSBC - 16
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

2017) ("any claim predicated on RESPA violations may proceed"); *Anderson v. Wells Fargo Home Mortgage, Inc.*, 259 F.Supp.2d 1143 (W.D.Wash. 2003).[4]

Even without reference to federal regulations, however, Nationstar's conduct is still unfair and deceptive.  Both terms, as discussed in Plaintiffs' motion, are broadly construed.  Dkt. No. 76 at 15 (citing authority finding that "deceptive" includes misleading or misrepresentative communications and "unfair" includes unethical and unscrupulous conduct).  Plaintiffs have shown misleading and misrepresentative communications and unscrupulous conduct by Nationstar.

### 2.    Nationstar cannot defeat causation and injury.

Nationstar claims that Plaintiffs have not offered any "evidence" to establish that Nationstar's conduct caused Plaintiffs injury.  Dkt. No. 91 at 20-21.  It claims that any interest and charges accruing on the loan are the result of the default that occurred before Nationstar began servicing the loan.  *Id.*  But Plaintiffs have not alleged that Nationstar caused their default; they have alleged that Nationstar failed to follow servicing procedures and protocols that were designed to remedy it.

Plaintiffs identified at least five injuries caused by Nationstar's unfair and deceptive acts.  First, Nationstar deprived Plaintiffs of the chance to obtain a reasonable loan modification, both when the servicing first transferred and when the parties participated in FFA mediation.  The Court has already recognized this as injury. Dkt. No. 61 at p. 10 (internal citation omitted).  Interest and fees have accrued since.

Second, Nationstar forced Plaintiffs to expend hundreds of hours of time trying to get it to agree to a reasonable loan modification.  Declaration of Keith Hunter at ¶¶4-6.  Nationstar's own servicing records also show how much time they spent submitting documents and information in the two years between the time Nationstar began

---

[4] Nationstar's efforts to distinguish the application of these regulations because they merely require it to maintain policies and procedures is unavailing because it produced no policies, despite Plaintiffs' discovery requests for it to do so.  Donckers decl. at ¶18.  It refused to even look for them.  *Id.* at **Ex. 13**. Even if it had compliant policies, Nationstar failed to implement them.  Cipollone decl. at ¶7.

PLAINTIFF'S CONSOLIDATED REPLY AND
OPPOSITION RE: SUMMARY JUDGMENT ON CLAIMS
AGAINST NATIONSTAR AND HSBC - 17
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

servicing the loan in 2014 and when they attended mediations in 2016; their housing counselor estimates that he and the Hunters worked together for "hundreds of hours" in an effort to find an alternative to foreclosure.  Dkt. No. 78 at ¶13.

Third, Nationstar cost the Hunters hundreds of thousands of dollars in investments in the home Nationstar seeks to take from them.  K. Hunter decl. at ¶7. Nationstar is in possession of a series of statements signed by Keith Hunter and sent to Nationstar attesting to the Hunters' investments in the property over the years.. Donckers decl. at **Ex. 10**.  The Hunters made these relying upon having the opportunity to keep their home.  *See* Donckers decl. at **Ex. 10**.  And as Nationstar knows, the Hunters have been required to deposit monthly payments of $3,226.72 into the Court's registry since 2016, all in an effort to halt a foreclosure that Nationstar initiated after delaying and then depriving the Hunters of opportunities to avoid losing their home. The Court's registry currently contains approximately $150,000.  K. Hunter decl. at ¶7.

Fourth, Nationstar imposed improper property inspection fees on Plaintiffs' account, and fifth, it offered no explanation of a payment of $4,390.35 that it refused to credit to Plaintiffs' account.  *See* Dkt. No. 76 at 12 and 16 (discussing improper fees) and 19 ($4,390.35 payment).  Imposing improper fees, even where payment was not made, is injury.  *Panag*, 166 Wn.2d at 62.  None of these are in genuine dispute, and Plaintiffs are entitled to partial summary judgment.[5]

**a.  There is no separate 'standing' element under the CPA**

Nationstar also claims that Plaintiff Keith Hunter lacks "standing" to assert a CPA claim because Mr. Hunter is a "non-party to the Loan" and federal servicing regulations and guidelines do not apply to him.  Dkt. No. 91 at 21-22.  This argument was long ago firmly rejected by the Washington Supreme Court.  In *Panag v. Farmers*

---

[5] The only genuine dispute of fact that may exist is the extent to which Nationstar failed to comply with the terms of the Note by utilizing an incorrect interest rate in its accounting.  But as discussed below, this was not raised in Plaintiffs' motion and will have to wait resolution until the prior servicer produces documents that Nationstar failed to obtain when the loan transferred

PLAINTIFF'S CONSOLIDATED REPLY AND
OPPOSITION RE: SUMMARY JUDGMENT ON CLAIMS
AGAINST NATIONSTAR AND HSBC - 18
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND ᴾᴸᴸᶜ
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

*Ins. Co. of Wash.*, the court refused to adopt "a sixth element" of the CPA that requires "proof of a consumer transaction between the parties, under the guise of a separate standing inquiry."  166 Wn.2d at 38.  Under the plain language of the CPA, it is not necessary to establishing "any" consumer relationship, "direct or implied, between the parties."  *Id.* at 40.  This is because the CPA was not designed to "provide heightened protection only for individuals involved in certain 'protective relationships.'"  *Id.*  The purpose of the CPA is to protect "the public" and clearly, a "plaintiff bringing a CPA action can serve the goal of protecting the public regardless of whether that person is a consumer or in a business relationship with the actor."  *Id.*

        "What is necessary, and does constitute the needed link between the plaintiff and actor, is that the violation cause injury to the plaintiff's business or property as required by RCW 19.86.090."  *Panag* at 39.  Mr. Hunter had rights to the property, had made investments in it, and had applied, along with his mother, for loan modifications that included his and his mothers' income on loan modification applications.  Nationstar knew Mr. Hunter had been given survival rights to the property in 1997 in the event his elderly mother died.  Donckers decl. at **Ex. 11**.  It knew that Mr. Hunter had been helping his mother respond to recurring loan servicing issues and that he lived on the property, operated business out of the home, and heavily invested in it.  *Id.* at **Ex. 12**.  Nationstar admits that it received a letter from Mr. Hunter dated June 27, 2014 requesting an in-person meeting to be evaluated for a modification so that foreclosure could be avoided.  Dkt. No. 91 at 15, n. 3.  Nationstar accepted that request and met with him two months later.  *Id.*  Nationstar's loan servicing file includes Mr. Hunter's name on all of the loan modification applications and it knows that he attended FFA mediation with his mother and Brian Carl.  Keith Hunter's name appears on every check that has been deposited into the Court's registry since 2016.  Any further question about whether Mr. Hunter had acquired an "interest" in the property was resolved in 2019, when Elaine Hunter quit claimed her interest in the property to her

PLAINTIFF'S CONSOLIDATED REPLY AND
OPPOSITION RE: SUMMARY JUDGMENT ON CLAIMS
AGAINST NATIONSTAR AND HSBC - 19
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1    son.  Donckers decl. at **Ex. 14**. Nationstar caused injury to Keith Hunter's business and

2    property, its standing defense is meritless.

3    **C.    Nationstar breached the Note and its duties of good faith and fair dealing.[6]**

4         Nationstar seeks summary judgment on Plaintiff Elaine Hunter's breach of

5    contract and duty of good faith and fair dealing claim.  Dkt. No. 91 at 22-23.  It claims

6    that it is undisputed that Nationstar "properly" adjusted the interest rate and monthly

7    payments on the loan and that the loan was properly "recast" under the terms of the

8    Note.  *Id.*  But whether Nationstar "properly" adjusted the interest rate and monthly

9    payments on the loan is hotly disputed.  Plaintiffs identified a series of documents,

10   spanning over years, showing that Nationstar utilized the incorrect interest rate to

11   calculate amounts owed.  Dkt. No. 77-5 at **Ex. 28**.  Nationstar does not respond to or

12   otherwise explain the false information contained in these documents.

13        Instead, it relies on *other* documents to show the Court that its adjustments and

14   calculations were proper.  Dkt. No. 91 at 22.  But this only begs the question of which

15   documents – if any – were correct.  And it is impossible for Nationstar to argue, with

16   any credibility, otherwise.  Nationstar has yet to even receive all of the documents SLS

17   had in its loan file, including documents that detail the fees and charges that were

18   assessed against the Hunters' loan.  Donckers decl. at **Ex. 2**.  Thus, Plaintiffs' experts

19   have been unable to complete a full assessment of Nationstar's culpability.

20        For instance, forensic accountant, Jay Patterson, noted that, in the time SLS

21   serviced the loan, the escrow balance increased $30,171.08, the late charge balance

22   increased $13,148.31, and $4,390.35 was in suspense.  Patterson Report at 14.

23   "There is no supporting data to show how these balances increased over an 18-month

24   period," and therefore one "cannot rely on the balances and data of Nationstar as

25   accurate since the essential data from SLS is missing from Nationstar's production."

26   _____

27   [6] Plaintiff Elaine Hunter did not move for summary judgment against Nationstar on her breach of contract claim or her claim for violating its duties of good faith and fair dealing.

PLAINTIFF'S CONSOLIDATED REPLY AND
OPPOSITION RE: SUMMARY JUDGMENT ON CLAIMS
AGAINST NATIONSTAR AND HSBC - 20
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1  *Id.*  He found it very "uncommon" for a successor servicer like Nationstar to lack the

2  previous servicer's data, "including payment history, accounting transactions and

3  servicing notes."  *Id.*  Diane Cipollone, agreed: "Nationstar produced a full loan

4  transaction history from BANA but not from SLS."  Cipollone Report at 22.  She

5  concludes: "[w]ithout having, at the very least, the entire life of loan transaction history,

6  Nationstar does not have the ability to attest to the accuracy of the amounts claimed to

7  be due."  *Id.* at 23; *see also* Cipollone decl. at ¶¶4-6.

8       Plaintiffs are in the process of obtaining all documents generated by SLS.

9  Donckers decl. at ¶6.  Plaintiffs' breach of contract claim targets Nationstar's interest

10  rate adjustments and accounting of the loan and the evidence before the Court is

11  clearly insufficient to warrant a finding of summary judgment against Plaintiffs.

12  **D.  Undisputed facts establish the HSBC violated the CPA**

13       **1.  HSBC committed unfair and deceptive acts and practices**

14       HSBC contends that the Court dismissed Plaintiffs' CPA claims against it with

15  the exception of a narrow set of facts pertaining to HSBC's possession of the Note.

16  Dkt. No. 93 at 6-7.  HSBC is wrong.  The Court did not limit Plaintiffs' CPA claims

17  against HSBC to a narrow set of facts.  The Court's order "**DENIES** Defendants

18  Nationstar and HSBC's Motion to Dismiss as to Plaintiffs' CPA claims."  Dkt. No. 61 at

19  12 (emphasis in original).  While the Court discussed specific facts arising out of

20  HSBC's failure to possess the Hunters' note when foreclosure proceedings were

21  initiated, the Court did not limit Plaintiffs' CPA claim to those facts.  *Id.* at 11-12.

22       Plaintiffs' complaint alleges that Nationstar *and* HSBC violated the CPA when

23  they both failed to participate in FFA mediation in good faith.  Dkt. No. 51 at ¶¶241-43

24  (allegations supporting Plaintiffs' CPA claim against HSBC).  This claim was raised in

25  Plaintiffs' response to HSBC's motion to dismiss, Dkt. No. 55 at 16, but HSBC and

26  Nationstar did not reply to it.  *See* Dkt. No. 60 at 9-10.  Here, HSBC claims that it was

27

PLAINTIFF'S CONSOLIDATED REPLY AND
OPPOSITION RE: SUMMARY JUDGMENT ON CLAIMS
AGAINST NATIONSTAR AND HSBC - 21
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1   entitled to rely on Nationstar to appear and participate in FFA mediation on its behalf.

2   Dkt. No. 93 at 7-8.

3       HSBC's argument is contrary to the plain language of the FFA.  If the beneficiary

4   does not attend FFA mediation in person, the FFA requires the beneficiary to ensure

5   that someone with "authority to agree to a resolution" attends on its behalf.

6   RCW 61.24.163(8)(a).  This is to ensure the parties can address any resolution to

7   avoid foreclosure, including reinstatement, loan modification, a restructuring of the

8   debt, or some other workout plan.  RCW 61.24.163(9).  It is undisputed that HSBC not

9   only did not show up, but that it did not prepare Nationstar for FFA mediation.  It failed

10  to advise Nationstar on a response to the DOJ program, discuss HSBC's own loan

11  modification program, or consider any of the other term modifications that were

12  discussed in Mr. Patterson's report.  Dkt. No. 77-5 at Ex. 18 at 7-8 and **Ex. 24**.  This

13  inaction ensured the mediation would fail, is bad faith, and violates the CPA.

14  RCW 61.24.163(10); RCW 61.24.135(2)(a).  It caused injury because, as discussed

15  above, the Hunters were deprived of a reasonable opportunity to obtain a loan

16  modification and incurred expenses in participating in a futile mediation under the FFA,

17  including investigating HSBC's own PWD program.  Dkt. No. 78 at ¶¶12-13; K. Hunter

18  decl. at ¶¶4,6.

19      HSBC next claims that it cannot be held liable under the CPA for its failure to

20  possess the Note because it held the note during 2015 and 2016 foreclosure

21  proceedings.  HSBC's Motion at 6-7.  But foreclosure proceedings were initiated in

22  2012, when BANA told the Hunters their loan would be referred to foreclosure by

23  HSBC.  Dkt. No. 77-5 at **Ex. 17**.  A notice of default was issued a few months later.  *Id.*

24  at **Ex. 18**.  HSBC admits that it has never possessed a physical hard copy of the

25  Hunters' Note, and its agent, Nationstar, did not either until April of 2014, years after

26  BANA referred the loan to foreclosure.  HSBC's Motion at 7.

27

PLAINTIFF'S CONSOLIDATED REPLY AND
OPPOSITION RE: SUMMARY JUDGMENT ON CLAIMS
AGAINST NATIONSTAR AND HSBC - 22
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1    Even now, it is unclear whether Nationstar actually possesses the Note,

2  because it has not been produced.  Donckers decl. at ¶18.  Plaintiffs allege that

3  Nationstar does not have it because it has not been produced, Nationstar has refused

4  to identify the chain of custody, and HSBC refuses to cooperate in providing basic

5  discovery.  *Id.* at **Ex. 13** and ¶7.  This would have been discussed further had HSBC

6  met and conferred with Plaintiffs before hastily bringing this issue before the Court.  *Id.*

7  at ¶18.  In any case, the balance of evidence before the Court supports Plaintiffs' CPA

8  claims against HSBC.  Its cross motion should be denied.

9         **2.    There is no separate 'standing' element under the CPA**

10    HSBC adopts Nationstar's argument that Plaintiff Keith Hunter lacks standing to

11  prosecute a CPA claim because he is a "non-party to the Loan."  Dkt. No. 93 at 10-11.

12  But as discussed above, Mr. Hunter was injured by HSBC's failure to participate in, and

13  prepare Nationstar for, FFA mediation.  Plaintiffs incorporate their argument above.

14  **E.    HSBC is vicariously liable for its servicers' misconduct.**

15    Finally, HSBC declares that it cannot be held vicariously liable for the acts of its

16  agents because there is no case law holding a beneficiary responsible for the acts of

17  its agents.  Dkt. No. 93 at 9.  HSBC claims that Plaintiffs' cases support only binding a

18  beneficiary for the acts of a foreclosure trustee.  *Id.*  This argument confuses the issues

19  before the Court.  Vicarious liability is a legal doctrine that binds a principal to the acts

20  of the principal's agent.  *See Walker v. Quality Loan Service Corp. of Wash.*, 176 Wn.

21  App. 294, 313 (2013).  The doctrine is not distinguishable based on the titles given to a

22  principal or the principal's agent.  *Id.*  That vicarious liability has been found between a

23  beneficiary and a foreclosure trustee supports vicarious liability here because a

24  foreclosure trustee is further removed from a beneficiary than the beneficiary's

25  servicing agent.  HSBC's foreclosure trustee was QLS, but QLS communicated with

26  and took direction from Nationstar.  *See e.g.*, Donckers decl. at **Ex. 15**.  If *Walker*

27

PLAINTIFF'S CONSOLIDATED REPLY AND
OPPOSITION RE: SUMMARY JUDGMENT ON CLAIMS
AGAINST NATIONSTAR AND HSBC - 23
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

supports the imposition of vicarious liability against a beneficiary for the conduct of a foreclosure trustee, it supports vicariously liability against HSBC for Nationstar's.

Ultimately, vicarious liability raises questions of fact regarding the extent of control HSBC, as the beneficiary, had over Nationstar.  The Washington Supreme Court has held that an agency relationship is established where both parties consent to one party subjecting itself to the control over another.  *Bain v. Metro. Mortg. Grp.*, 175 Wn.2d 83, 106-07 (2013).  Nationstar claims that HSBC had no right to control its conduct.  Dkt. No. 93 at 10.  But this argument is nonsensical and contrary to Nationstar's express admission that it is HSBC's servicing agent.  Dkt. No. 77-5 at **Ex. 18** at 8 and 9 (Nationstar is "HSBC's servicing agent").  HSBC offers no *facts* to otherwise discount this admission and it admitted that Nationstar is its servicing agent.  Imposing liability against HSBC for Nationstar's conduct is proper.[7]

## IV.   CONCLUSION

Plaintiffs respectfully request that the Court enter partial summary judgment against Nationstar and HSBC for violating the Consumer Protection Act, reserving the issue of damages for trial.  The Court should deny the motions for summary judgment brought by Nationstar and HSBC.

DATED:  July 13, 2020.

BRESKIN JOHNSON TOWNSEND, PLLC

By:___*s/Brendan W. Donckers*_____
Brendan W. Donckers, WSBA #39406
_*s/Daniel Johnson*_____
Daniel Johnson, WSBA #27848
1000 Second Avenue, Suite 3670
Seattle, WA 98104
Tel: (206) 652-8660
bdonckers@bjtlegal.com
djohnson@bjtlegal.com

---

[7] Plaintiffs attempted to obtain additional information from HSBC but when Plaintiffs served it with a notice of deposition, its counsel objected and stated that a witness from HSBC would not be produced. Donckers decl. at ¶7.  Without waiving the right to conduct a deposition later, Plaintiffs agreed to pursue discovery by serving Requests for Admission on HSBC pursuant to Rule 36.  *Id.*  HSBC cannot rely on any other facts when it has refused to make itself available.

PLAINTIFF'S CONSOLIDATED REPLY AND
OPPOSITION RE: SUMMARY JUDGMENT ON CLAIMS
AGAINST NATIONSTAR AND HSBC - 24
(No. 2:16-cv-01718-RAJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1          *Attorneys for Plaintiffs*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660