HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KEITH HUNTER, an individual, and ELAINE HUNTER, an individual,<br><br>                      Plaintiffs,<br><br>   v.<br><br>BANK OF AMERICA, N.A.; SPECIALIZED LOAN SERVICING, LLC, a Delaware limited liability company; NATIONSTAR MORTGAGE, LLC, a Delaware limited liability company; QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, a Washington corporation; HSBC BANK USA, N.A., as Trustee for Merrill Lynch Mortgage Investors, Inc., Mortgage Investors, Inc., Mortgage Pass-Through Certificates, MANA Series 2007-OAR2; JOHN DOES NO. 1-10,<br><br>                      Defendants. | Case No. 2:16-cv-01718-RAJ<br><br>**MOTION FOR SANCTIONS UNDER RULE 30(d) AND FOR AN ORDER TO SHOW CAUSE WHY BRIAN CARL SHOULD NOT BE HELD IN CONTEMPT UNDER RULE 45(g)**<br><br>**NOTE FOR CONSIDERATION: FEBRUARY 11, 2022**<br><br>**ORAL ARGUMENT REQUESTED** |

MOTION FOR SANCTIONS UNDER RULE 30(d) AND FOR AN ORDER TO SHOW CAUSE WHY BRIAN CARL SHOULD NOT BE HELD IN CONTEMPT UNDER RULE 45(g)
CASE NO. 2:16-cv-01718-RAJ

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

## I. INTRODUCTION

Pursuant to Fed. R. Civ. P. 30(d) and Fed. R. Civ. P. 45, Defendants Nationstar Mortgage, LLC and HSBC Bank USA, N.A. (collectively, "Nationstar") bring this motion against nonparty fact witness Brian Carl—Plaintiffs' housing counselor—to sit for a second, videotaped deposition to be conducted in the presence of a judicial officer, and for an Order to show cause why Mr. Carl should not be held in contempt for his failure to obey a properly issued subpoena.

Mr. Carl's first deposition lasted less than one hour before he unilaterally terminated it. During the deposition, Mr. Carl was hostile, repeatedly insulting and cursing at counsel, and refused to answer at least 35 questions. Mr. Carl's inexcusable behavior warrants a finding of contempt, and sanctions in the form of requiring him to sit for a second deposition in a more formal setting with video and audio recording, fees and costs for the time and expense incurred preparing for, waiting for, and conducting a fruitless deposition, and preparing this motion.

The deadline to note motions related to discovery was January 14, 2022. Nationstar submits that, without altering the case management deadline, the Court may order a new deposition pursuant to Rule 30(d)(1) and Rule 45(g) in order to preserve the fairness of the legal process. Mr. Carl defied the subpoena and frustrated Nationstar's right to "fair examination" of him. But should the Court determine that leave beyond the January 14, 2022 deadline is required, then Nationstar seeks permission to bring this motion to compel the completion of Mr. Carl's deposition. There is good cause here to extend that deadline and hear this motion—the deposition was delayed due to new counsel's need for time to get up to speed in the case, a need for time for plaintiffs to produce Mr. Carl's file, and because the undersigned counsel contracted COVID-19, which necessitated rescheduling the deposition after the discovery motion deadline but before the end of discovery.

## II. STATEMENT OF FACTS

A. **Facts surrounding Elaine Hunter's[1] loan.**

Elaine and her now-deceased husband, Donald, purchased the property at 7022 NE 170th

---

[1] Defendants will refer to the Hunters individually as "Keith" and "Elaine" for the sake of clarity. No disrespect is intended.

MOTION FOR SANCTIONS UNDER RULE 30(D) AND FOR AN ORDER TO SHOW CAUSE WHY BRIAN CARL SHOULD NOT BE HELD IN CONTEMPT UNDER RULE 45(G) - 2
CASE NO. 2:16-cv-01718-RAJ

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Street in Kenmore, Washington (the "Property"). Dkt. #111, p. 2. In December 2006, Elaine obtained a residential mortgage loan (the "Loan") in the amount of $1 million and executed a promissory note (the "Note") with Countrywide Bank, N.A. *Id.* Elaine was the only borrower listed on the Note. *Id.* Keith Hunter is not a borrower on the Loan. *See* Dkts. #51, ¶ 17; #92-1; #92-2.

Elaine defaulted on the Loan in 2011 while Defendant Bank of America ("BANA") was servicing the Loan. Dkt. #111, pp. 3-4. Neither Nationstar nor HSBC caused the Loan to default. *See id.* Nationstar participated in a mediation with Elaine and Keith under Washington's Foreclosure Fairness Act ("FFA"), and offered a loan modification that would have enabled Elaine to cure the default. *Id.*, p. 5.

### B. Nationstar did not have to participate in an FFA mediation with Elaine and Keith.

#### 1. The Property was not "owner-occupied."

Nationstar had no legal obligation to participate in an FFA mediation with Elaine and Keith because the Property was not "owner occupied." The requirements of the FFA are outlined in RCW 61.24.163. According to the statute in effect in 2016: "RCW 61.24.163 applies only to deeds of trust that are recorded against owner-occupied residential real property of up to four units. The property must have been owner-occupied as of the date the initial contact under RCW 61.24.031 was made." H.B. 2723, 63rd Leg., 2014 Reg. Sess. (Wash. 2014), attached as **Exhibit 1** to the Declaration of Michael "Mac" Brown ("Brown Decl.").[2]

"Owner-occupied" is defined as "property that is the principal residence of the borrower." RCW 61.24.005(10). And "borrower" is defined as "a person . . . that is liable for all or part of the obligations secured by the deed of trust under the instrument or other document that is the principal evidence of such obligations . . . ." *Id.* at RCW 61.24.005(3). Under the version of RCW 61.24.165 in effect when Elaine was referred to FFA mediation, Nationstar only had an obligation to participate in the mediation if the Property was Elaine's principal residence. *See* H.B. 2723, 63rd Leg., 2014 Reg. Sess. (Wash. 2014); **Ex. 1**, p. 17. Nationstar participated because the mediation referral prepared by Parkview falsely stated that the Property was owner-occupied. **Ex. 3**, p. 1.

---

[2] All exhibits are attached to the Brown Decl.

MOTION FOR SANCTIONS UNDER RULE 30(D)
AND FOR AN ORDER TO SHOW CAUSE WHY
BRIAN CARL SHOULD NOT BE HELD IN
CONTEMPT UNDER RULE 45(G) - 3
CASE NO. 2:16-cv-01718-RAJ

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

**2.      Plaintiffs admit that Elaine's Primary Residence is in Seattle.**

Plaintiffs do not dispute that Elaine did not occupy the Property—indeed she still does not live there. This is a second home that Elaine financed so Keith could live there. According to Elaine, her principal residence since 1954 has been her home in Seattle, Washington, not at the Property in Kenmore. **Ex. 3**, 48:7-20. This testimony is supported by Keith, who testified at his deposition that Elaine lived at the Property for about two years between 1996 and 1998, and then stayed at the Property "once in a while" after Donald passed away in 2013. **Ex. 4**, 32:17-33:1; 33:11-34:1; 34:20-35:1. Keith further testified that the last time Elaine stayed at the Property was in approximately 2013. *Id.*, 35:11-14.

The fact that the Property is not Elaine's principal residence is further supported by Keith's admissions that his mom took out the $1 million loan on the Property because Keith did not have good enough credit to be approved for a $1 million loan. **Ex. 5**. Keith declared, under penalty of perjury, that "title [to the Property] is in my mother's name because I could not qualify for the substantial mortgage at the time . . . ." *Id.*; **Ex. 4** at 36:24-37:5. Further, in 2003—three-and-a-half years before the Loan was originated—Elaine and Donald declared in their will that the Property "is officially in our names only. It does not belong to us. It is the property of Keith R. Hunter." **Ex. 6**.

**C.      When the Loan went into default, Elaine and Keith contacted Parkview Services.**

When the Loan went into default, Elaine and Keith engaged Parkview Services to assist them with communicating with their loan servicer and to try and obtain a loan modification. Dkt. #78 ¶¶ 1, 3-5, 7. Brian Carl was the Parkview housing counselor who worked primarily with Elaine and Keith. *Id.*

According to Mr. Carl, he began working with Elaine and Keith in late 2012 or early 2013. Dkt. #78, ¶ 4. Mr. Carl has declared under penalty of perjury that he has "spent hundreds of hours" helping Elaine and Keith, and that he "continue[s] today at [his] own expense." *Id.*, ¶ 13. Part of Mr. Carl's work in helping Elaine and Keith included representing them at three separate mediation sessions that took place under the FFA. *See* **Ex. 8**. And Mr. Carl prepared a declaration in support

MOTION FOR SANCTIONS UNDER RULE 30(D)
AND FOR AN ORDER TO SHOW CAUSE WHY
BRIAN CARL SHOULD NOT BE HELD IN
CONTEMPT UNDER RULE 45(G) - 4
CASE NO. 2:16-cv-01718-RAJ

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

of Elaine and Keith at the summary judgment stage. *See* Dkt. #78. The Court relied on Mr. Carl's declaration in denying Nationstar's motion for summary judgment.[3] *See* Dkt. #111, p. 21.

Mr. Carl also pushed Elaine and Keith to sue Nationstar. In April 2016, Mr. Carl emailed one of his colleagues at Parkview, Randy Lowell (who is also one of Plaintiffs' experts in this case), stating that he was unhappy with the loan modification Nationstar offered during the mediation, and that he was requesting "that the mediator provide us with a 'Not in Good Faith' certificate which will provide me with the Consumer Protection Act claim I desire to go along with various other state and federal causes he has already identified in his attorney's complaint." **Ex. 8**.

But Mr. Carl knew that Nationstar was not legally obligated to participate in the FFA mediation, because the Property was not Elaine's primary residence. **Exs. 9-11.** The fact that Parkview through its agents knowingly misrepresented that the Property was owner-occupied, and encouraged this litigation is problematic to say the least. RCW 61.24.160 (housing counselors have a duty to act in good faith when attempting to reach a resolution with the beneficiary of a loan); *accord* 24 C.F.R. § 214.303(f)(3) (requiring housing counselors to "avoid any action that might result in, or create the appearance of . . . providing preferential treatment to any . .. person; or undertaking any action that might compromise the agency's ability to ensure compliance with the requirements of this part and to serve the best interests of its clients.").

Indeed, Mr. Carl is so intertwined with this litigation that counsel for Elaine and Keith objected during Mr. Carl's deposition on the basis of the common interest privilege:

> Q: Okay. Did you talk to Mr. Donckers about this deposition?
>
> Mr. Donckers: Object to the form. Object to the extent it calls for any privileged communications.
>
> Mr. Brown: To the extent it calls for what, Brendan?
>
> Mr. Donckers: Any privileged communications.
>
> Mr. Brown: Is Mr. Carl your client?

---

[3] Prior counsel for Nationstar and HSBC did not assert evidentiary objections in connection with Mr. Carl's declaration. Current counsel reserves their right to assert those objections at the appropriate time.

MOTION FOR SANCTIONS UNDER RULE 30(D)
AND FOR AN ORDER TO SHOW CAUSE WHY
BRIAN CARL SHOULD NOT BE HELD IN
CONTEMPT UNDER RULE 45(G) - 5
CASE NO. 2:16-cv-01718-RAJ

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

>Mr. Donckers: He is not.
>
>Mr. Brown: Okay. So I'm confused how there would be a privilege.
>
>Mr. Donckers: Common interest.

**Ex. 12**, 16:11-24.

D. **Plaintiffs' expert witness relies on Mr. Carl to form opinions against Nationstar.**

One major issue in this lawsuit is whether Elaine was eligible for the so-called "DOJ Modification" that was a result of the National Mortgage Settlement between the Department of Justice and Bank of America in 2012. *See U.S.A. v. Bank of America Corp., et al.*, 1:12-cv-00361-RMC (D.D.C. April 4, 2012), Dkt. #14. Plaintiffs' expert, Randall Lowell, has opined that Nationstar should have offered the "DOJ Modification" to Elaine "anytime between 2014-2016." **Ex. 13**, p. 20. During Mr. Lowell's deposition, he testified that he relied on notes taken by Brian Carl to support this opinion. **Ex. 14**, 161:25-163:14. Another major issue in this case is whether Nationstar continued reviewing a pending loan modification application that was submitted to prior servicer Specialized Loan Servicing ("SLS") but was not finalized before servicing transferred to Nationstar. *See* **Ex. 13**, p. 14. Mr. Lowell again relies on Mr. Carl for this opinion. **Ex. 14**, 190:18-191:10.

E. **Mr. Carl was hostile during his deposition, refused to answer the majority of the questions asked of him, and walked out of the deposition before it was completed.**

1. **Mr. Carl's deposition was rescheduled due to counsel getting COVID-19.**

Nationstar originally subpoenaed Mr. Carl to sit for a deposition on January 11, 2022. **Ex. 15**. Unfortunately, undersigned counsel contracted COVID-19 on or about January 4, 2022, and was unable to depose Mr. Carl on the original date. Brown Decl., ¶ 5. Mr. Carl agreed to accept electronic service of an amended subpoena, and the deposition was reset for January 17, 2022. **Ex. 16**. When counsel for Nationstar asked if Mr. Carl was alright conducting a deposition on a holiday, Mr. Carl informed counsel that he did not "recognize that holiday." Brown Decl., ¶ 6.

After Nationstar served the original subpoena on Mr. Carl, which included a request to produce documents, Plaintiff's counsel informed all the Defendants that he had "learned that any

MOTION FOR SANCTIONS UNDER RULE 30(D)
AND FOR AN ORDER TO SHOW CAUSE WHY
BRIAN CARL SHOULD NOT BE HELD IN
CONTEMPT UNDER RULE 45(G) - 6
CASE NO. 2:16-cv-01718-RAJ

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

responsive documents Mr. Carl had were given to us. You're welcome to inspect what we have or send a service to copy the folders we were given." Brown Decl., ¶ 7. Counsel for Plaintiffs explained to the Defendants that these documents were not produced—even though they had been in Plaintiffs' possession for years—because it was overly burdensome for Plaintiffs to copy the documents and produce them electronically. Brown Decl., ¶ 7.

### 2. Mr. Carl was hostile and refused to answer questions during his deposition.

On the morning of January 17, counsel for Nationstar called Mr. Carl to confirm he would be present at the deposition. Brown Decl., ¶ 8. Mr. Carl informed Nationstar's counsel that he did not have access to a computer and would not be able to participate in a Zoom deposition, and asked whether he could participate by phone. *Id.* Nationstar's counsel told Mr. Carl that, unfortunately, phone participation would not work, because there were several documents that counsel needed to show Mr. Carl during the deposition. *Id.* In a subsequent phone call, Nationstar's counsel was going to offer Mr. Carl a conference room at his firm's office, but Mr. Carl stated that he was going to use a computer at Keith's house and that he would be to the house by the 10 am deposition start time. *Id.*

Mr. Carl finally arrived for his deposition at 11:16 a.m., an hour and sixteen minutes late. **Ex. 12**. During the hour and sixteen minute delay, counsel for Nationstar attempted to contact Mr. Carl several times by phone, but he did not answer those calls. Brown Decl., ¶ 8.

From the beginning of the deposition, Mr. Carl was overtly hostile to Nationstar's counsel. Within the first three questions of the deposition, Mr. Carl was rude and asked whether counsel was "stupid." **Ex. 12**, 4:20-25. Further examples of Mr. Carl's behavior during the deposition include:

- Calling counsel stupid or some derivative (e.g, "stupid fuck") 11 times.

- Calling counsel a "dumbass" twice.

- Told counsel to "shut the fuck up" twice.

- Informing counsel that he could "snap" at counsel "all day."

MOTION FOR SANCTIONS UNDER RULE 30(D) AND FOR AN ORDER TO SHOW CAUSE WHY BRIAN CARL SHOULD NOT BE HELD IN CONTEMPT UNDER RULE 45(G) - 7
CASE NO. 2:16-cv-01718-RAJ

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

- Using at least 8 curse words directed at counsel.

- Refusing to call counsel "Mac" and only referring to him as "Matt."

- Refused to answer questions from counsel unless counsel provided a "yes or no" answer to Mr. Carl's question of whether counsel was stupid.

- Appeared to threaten counsel during the deposition:

> Q: In this deposition do you think your conduct is in good faith?
> A: Yes, of course.
> Q: Okay.
> A: You – we – this is a problem for me. This is a problem for me and it's going to be a problem for you. Do you understand that?

**Ex. 12**.[4]

In addition to this behavior, Mr. Carl refused to answer simple, routine questions about his background that were relevant to his qualifications as a housing counselor, and his potential bias as a witness (such as questions about his prior employment, his work at Parkview, and his education). In total, Mr. Carl refused to answer at least 35 different questions posed by counsel, *see generally* **Ex. 12**, pp. 20, 23-26, and, ultimately, walked out of his deposition:

> Q: . . . Do you see here what I'm showing you now it says –
>
> A: Shut the fuck up.
>
> Q: -- payment advantage fixed adjustable rate note, correct?
>
> A: Shut up. You know, I'm done with you. Let's end this conversation because I'm – I'm done with you. I'm done with you. Okay?
>
> Q: So you're going to – you're going to leave and end the deposition?
>
> A: Yes, I'm – it has no meaningless [sic] purpose, okay? It has no meaningless [sic] purpose. Okay?
>
> Q: Okay. So I mean if you're done, you're done.

---

[4] Rather than cite specific pages and lines for this section, Nationstar has attached the entirety of Mr. Carl's 36-page deposition transcript so that the Court can objectively evaluate the full scope of Mr. Carl's behavior.

MOTION FOR SANCTIONS UNDER RULE 30(D) AND FOR AN ORDER TO SHOW CAUSE WHY BRIAN CARL SHOULD NOT BE HELD IN CONTEMPT UNDER RULE 45(G) - 8
CASE NO. 2:16-cv-01718-RAJ

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

A: I'm done. I'm done. I'm done with you.

Q: Okay.

Mr. Brown: So just for the record, it's 12:10 p.m., Mr. Carl is now on the phone. He has informed us that he is done with this deposition and he's not going to answer any more questions.

A: Good. Do you understand that? Or do I have to, you know, give you Braille?

**Exhibit 12**, 33:1-33:21.

F.  **Nationstar has been diligent in seeking discovery.**

Despite being diligent in conducting discovery under the unique facts of this case, Nationstar could not meet the motion deadline as to Mr. Carl. Lane Powell PC was retained to defend Nationstar after its prior counsel withdrew through no fault of Nationstar. Brown Decl., ¶ 9. Since Lane Powell's substitution, the parties worked diligently and cooperatively to complete discovery. *Id.* Even with Lane Powell's limited time to get up to speed on this case, and during a COVID-19 surge and the winter holidays, the parties accommodated Plaintiffs' request to reopen depositions of defendants' 30(b)(6) witnesses. *Id.* Plaintiffs also deposed Nationstar's expert and one fact witness, Wells Fargo Bank. *Id.* Defendants took depositions of Plaintiffs' three experts, and deposed two more fact witnesses. *Id.* Both Plaintiffs and Nationstar supplemented document discovery. *Id.* . Nationstar served subpoenas, including upon Parkview Services and Mr. Carl. *Id.* . Nationstar also timely sought to depose Mr. Carl. *Id.* The deposition had to be rescheduled after the deadline to note motions related to discovery because Nationstar discovered that Plaintiffs' attorney possessed Mr. Carl's file concerning the Loan but had not yet produced it, and Nationstar's counsel, Mac Brown and his family members contracted COVID-19. *Id.*

### III.  MEET AND CONFER

Nationstar attempted to meet and confer with Mr. Carl by telephone and email before filing this Motion. Mr. Carl declined to speak with counsel and did not respond to email. Nationstar conferred with plaintiffs' counsel about this Motion. He advised that he could not take a position on the matter until after he reviewed the Motion.(Brown Decl., 2-4, **Ex. 17**.

MOTION FOR SANCTIONS UNDER RULE 30(D) AND FOR AN ORDER TO SHOW CAUSE WHY BRIAN CARL SHOULD NOT BE HELD IN CONTEMPT UNDER RULE 45(G) - 9
CASE NO. 2:16-cv-01718-RAJ

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

## IV. ISSUES

1. Should this Court enter a show cause order in order for Mr. Carl to appear and explain why he should not be held in contempt?

2. Should this Court enter a sanction requiring Mr. Carl to appear and sit for a second deposition by video and in the presence of the Court?

3. If leave to bring all or part of this Motion is required, does good cause exist to entertain it and grant the limited relief sought?

## V. ARGUMENT

**A. Good cause exists under Local Rule 16(b)(6) to allow this motion to be heard.**

Pursuant to Local Rule 16(b)(6), a case scheduling order may be modified for "good cause." *See* LCR 16(b)(6). "Good cause" exists where the existing case schedule "cannot reasonably be met with the diligence of the party seeking the extension." *Hamilton v. United States Dep't of Veterans Affairs*, No. C19-5948-JCC, 2021 WL 1857038, at *2 (W.D. Wash. Apr. 6, 2021) (finding good cause to extend deadlines for non-party depositions due to unavailability of non-party, scheduling issues, and non-party's desire to retain counsel).

Here, the deadline to note motions related to discovery was January 14, 2022. Dkt. #127. Good cause exists to grant Nationstar relief from the Case Scheduling Order because Nationstar could not reasonably meet the deadline with regard to Mr. Carl. Lane Powell PC was not retained in this case until mid-November 2021, five years after litigation in this case commenced. Dkt. #120. Once Lane Powell PC was retained, Nationstar originally sought a continuance of the trial and all pretrial dates, *see id.*, but ultimately negotiated with all other parties to just extend the discovery cut off, the date to file discovery motions, the *Daubert* motion deadline, and the deadline for motions in limine. *See* Dkt. #127.

With the discovery deadline continued 45 days, new counsel acted with utmost diligence. It reviewed thousands of pages of documents (e.g., pleadings, orders, productions by the parties, responses to discovery) in order to get up to speed. Counsel then took the depositions of three of Plaintiffs' expert witnesses, deposed two fact witnesses, and obtained documents from three

MOTION FOR SANCTIONS UNDER RULE 30(D) AND FOR AN ORDER TO SHOW CAUSE WHY BRIAN CARL SHOULD NOT BE HELD IN CONTEMPT UNDER RULE 45(G) - 10
CASE NO. 2:16-cv-01718-RAJ

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

nonparties through subpoenas. Counsel also defended a second deposition of Nationstar and the deposition of its expert, served additional discovery on Plaintiffs, participated in the deposition of non-party Wells Fargo, and the second deposition of BANA, and received additional discovery from Plaintiffs. Brown Decl. at ¶¶ 9-10.

Counsel was on track to meet the Court's deadlines. Mr. Carl's deposition was originally scheduled to take place on January 11, 2022, but ultimately had to be rescheduled to January 17, 2022 (the discovery cut off) because undersigned counsel and his family members contracted COVID-19 a few days before the original January 11th deposition date. What's worse, Nationstar could not have anticipated the need to file this particular motion, which is based on Mr. Carl's defiance of the subpoena.

In addition to the good cause supplied by Nationstar's inability to reasonably meet the deadline to file this motion, courts in the Ninth Circuit have held that where, as here, a party is forced to retain new counsel due to circumstances outside that party's control, there is good cause to amend a case scheduling order. *See, e.g., Export-Import Bank of Korea v. ASI Corp.*, CV 16-2056-MWF, 2018 WL 2717845 (C.D. Cal. 2018) (finding good cause to amend the case scheduling order when a party's attorney was forced to withdraw as the result of an ethical conflict); *Langston v. T Mobile US, Inc.*, CV18-01972-JAK, 202 WL 10817761 (C.D. Cal. 2020) (same finding when plaintiff's attorney had to withdraw for "ill health").[5]

### B.    The Court may sanction Mr. Carl under Rule 30(d).

Rule 30 governs depositions by oral examination, and sets forth a detailed protocol governing the conduct of parties, counsel, and deponents. Fed. R. Civ. P. 30(c)(1). The rule provides that "examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence . . . ." Fed. R. Civ. P. 30(c)(1). Pursuant Rule 30(d)(2): "The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees

---

[5] If the Court concludes that there is no good cause to hear this motion past the deadline to note discovery motions, Nationstar reserves the right to seek other remedies in the form of evidence exclusion at the motion in limine stage based on its inability to depose this key witness.

MOTION FOR SANCTIONS UNDER RULE 30(D) AND FOR AN ORDER TO SHOW CAUSE WHY BRIAN CARL SHOULD NOT BE HELD IN CONTEMPT UNDER RULE 45(G) - 11
CASE NO. 2:16-cv-01718-RAJ

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Rule 30(d) applies to both parties and non-parties. *Clockwork IP, LLC v. Aladdin One Hour HVAC, Inc.*, 2:12-cv-01532-MMD-PAL. 2015 WL 2450195, at *5 (D. Nev. May 22, 2015).

Here, the sanction of an additional deposition, conducted with a judicial officer present and while being audio- and video-recorded is appropriate. Mr. Carl is a key witness in this case. He signed a declaration that the Court relied on in denying Nationstar's motion for summary judgment. *See* Dkt. #111, p. 21. Plaintiffs' experts have relied on Mr. Carl's notes from FFA mediations and correspondence with loan servicers to support Plaintiffs' causes of action against Nationstar. Mr. Carl is so intertwined with the Plaintiffs in this litigation that he attempted to obtain a "Not in Good Faith" certificate from the FFA mediator "which will provide [him] with the Consumer Protection Act claim [he] desire[s] to go along with various other state and federal causes he has already identified in his attorney's complaint." **Ex. 8**. Indeed, Plaintiffs' counsel asserted the common-interest privilege over his communications with Mr. Carl. Mr. Carl was the Plaintiffs' advocate and authorized agent during the three FFA mediation sessions with Nationstar. His testimony as to the circumstances surrounding the initiation of mediation, what happened at the mediation, and his notes regarding the same are critical to Nationstar's right to mount a fair defense.

The deposition Nationstar took of Mr. Carl is substantively worthless. He refused to answer more than 35 questions, and otherwise provided testimony that was evasive or incomplete. Mr. Carl was angry, hostile, and rude during the deposition. He cursed at counsel multiple times, called counsel stupid multiple times, and was trying to command the way the deposition process was going to proceed. At one point before Mr. Carl unilaterally ended his deposition, counsel informed Mr. Carl that if he continued proceeding in the manner he was that counsel would file a motion to compel his continued deposition:

> Q: Okay. Well, I can tell you this, sir: These are all questions that I am able to ask you and I am entitled to get responses to and I'm just going to let you know –
>
> A: Do it in court. Do it in court.

MOTION FOR SANCTIONS UNDER RULE 30(D) AND FOR AN ORDER TO SHOW CAUSE WHY BRIAN CARL SHOULD NOT BE HELD IN CONTEMPT UNDER RULE 45(G) - 12
CASE NO. 2:16-cv-01718-RAJ

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Q: Okay. We will – if the deposition –

A: Do it in court.

Q: If the deposition continues this way we'll be filing a motion to compel an additional deposition from you.

A: Do it in court. Do it in court.

Brown Decl., **Exhibit 12**, 21:9-19.

These facts support a motion to compel Mr. Carl to attend a deposition. *See Biovail Labs., Inc. v. Anchen Pharm., Inc.*, 233 F.R.D. 648 (C.D. Cal. 2006) (granting motion to compel deposition of nonparty under Rule 30(d)(2) where non-party's counsel unreasonably, prematurely terminated deposition, thereby delaying and frustrating the fair examination of the non-party deponent). Rule 30(d)(2) also allows this Court to impose monetary sanctions on Mr. Carl for his failure to cooperate with the deposition. If the Court allows awards monetary sanctions, Nationstar will submit a separate brief in support of the award.

C. **Nationstar moves for an order to show cause why Mr. Carl should not be held in contempt.**

In addition to Rule 30(d), Rule 45(g) permits the court issuing a subpoena to "hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." A rule 45 subpoena "obligates the nonparty to appear at the scheduled deposition at pain of being held in contempt." *Sali v. Corona Regional Med. Ctr.*, 884 F.3d 1218, 1224 (9th Cir. 2018).

Here, Mr. Carl's first deposition was tantamount to not appearing for his deposition. Under these circumstances, the Court should issue an Order to show cause why Mr. Carl should not be held in contempt and should further sanction him by requiring him to appear for the requested second deposition. *See Stanaford v. Bruce Genovese*, 2:15-MC-0013-JTR, 2015 WL 7888793 (E.D. Wash. Dec. 1, 2015) (granting order to show cause why nonparty deponent should not appear for deposition).

V. **CONCLUSION**

For the forgoing reasons, Nationstar's motion should be granted.

MOTION FOR SANCTIONS UNDER RULE 30(D)
AND FOR AN ORDER TO SHOW CAUSE WHY
BRIAN CARL SHOULD NOT BE HELD IN
CONTEMPT UNDER RULE 45(G) - 13
CASE NO. 2:16-cv-01718-RAJ

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

1  DATED: January 27, 2022

2                                            LANE POWELL PC

3

4

5                                  By:   *s/ Michael M. Brown*
                                             Pilar C. French, WSBA No. 33300
                                             Michael "Mac" Brown, WSBA No. 49722
6                                               1420 Fifth Avenue, Suite 4200
                                             P.O. Box 91302
7                                               Seattle, Washington 98111-9402
                                           Telephone:  206.223.7000
8                                               frenchp@lanepowell.com
9                                               brownm@lanepowell.com

10  Attorneys for Defendants Nationstar Mortgage, LLC and HSBC Bank USA, N.A.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

MOTION FOR SANCTIONS UNDER RULE 30(D) AND FOR AN ORDER TO SHOW CAUSE WHY BRIAN CARL SHOULD NOT BE HELD IN CONTEMPT UNDER RULE 45(G) - 14
CASE NO. 2:16-cv-01718-RAJ

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107